**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| LARRY KLAYMAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 20-CV-03109-RDM |
| v. | ) | |
| | ) | |
| JULIA PORTER, HAMILTON P. FOX, III, | ) | |
| LAWRENCE K. BLOOM, | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' MOTION FOR AN INJUNCTION
<u>AGAINST VEXATIOUS LITIGATION BY PLAINTIFF</u>**

Pursuant to this Court's inherent power and 28 U.S.C. § 1651, Movants Julia Porter, Hamilton Fox, III, and Lawrence K. Bloom (the "Movants"), hereby move the Court for an injunction prohibiting Plaintiff Larry Klayman from (a) filing any civil claim in which one or any of them are named as a party, (b) filing any civil claim in which their employer, the Office of Disciplinary Counsel of the District of Columbia Bar, or any of its former or current employees, is named as a party, (c) filing any civil claim in which a D.C. Bar official is named as a party, or (d) serving or causing to be served one or any of the Movants with a subpoena or any other instrumentality of civil discovery as a third party in any other legal proceeding in which Mr. Klayman is a party without first seeking and obtaining leave of this Court and the court where the litigation is proposed to be filed.  Since July 2018, Mr. Klayman has (i) repeatedly filed and sought to litigate meritless and frivolous legal claims, (ii) sought to pursue third-party civil discovery against the Movants in unrelated civil litigation, and (iii) employed tactics—including filing multiple claims regarding the same underlying facts in far flung jurisdictions—all for the purpose

1

of harassment and disruption of the official, professional, and personal lives of the Movants.  *See* Bloom Decl. (Ex. 1); Porter Decl. (Ex. 2); Fox Decl. (Ex. 3).

For these reasons, and the reasons stated in the Movants' accompanying Memorandum in Support, the Movants respectfully move the Court to enjoin Mr. Klayman from (1) filing any new action, complaint, or claim for relief against Movants, their employer, the Office of Disciplinary Counsel, and current and former employees of the Office of Disciplinary Counsel, the Board of Professional Responsibility, or any D.C. Bar officials in any federal court, state court, or any other forum and (2) serving or causing to be served one or any of the Movants with a subpoena or any other instrumentality of civil discovery as a third party in any other legal proceeding in which Mr. Klayman is a party, without first making application to and receiving the consent of this Court and any other court where the litigation is proposed to be filed.

Pursuant to Local Rule 7(m), the Movants have conferred with Mr. Klayman, who has objected to this motion.

Dated: February 25, 2021

Respectfully submitted,

*/s/ Mark J. MacDougall*
Mark J. MacDougall (D.C. Bar No. 398118)
Samantha Block (D.C. Bar No. 1617240)
Caroline L. Wolverton (D.C. Bar No. 496433)
AKIN GUMP STRAUSS HAUER & FELD LLP
2001 K Street, NW
Washington, DC 20006-1037
Tel:  (202) 887-4000
Fax:  (202) 887-4288
mmacdougall@akingump.com
samantha.block@akingump.com
cwolverton@akingump.com

*Counsel for Defendants*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| LARRY KLAYMAN, | ) |
| | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No. 20-CV-03109-RDM |
| v. | ) |
| | ) |
| JULIA PORTER, HAMILTON P. FOX, III, | ) |
| LAWRENCE K. BLOOM, | ) |
| | ) |
| Defendants. | ) |

**DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION FOR
AN INJUNCTION AGAINST VEXATIOUS LITIGATION**

# TABLE OF CONTENTS

PRELIMINARY STATEMENT............................................................................................1

BACKGROUND ...........................................................................................................5

    A.    The Parties ......................................................................................5

    B.    June 11, 2020 Suspension of Mr. Klayman's License to Practice Law in the District of Columbia...............................................................6

    C.    Mr. Klayman's Litigious History ..............................................6

        1.    Mr. Klayman's First Related Lawsuit in this Court...................................7

        2.    Mr. Klayman's Second Related Lawsuit in this Court .............................8

        3.    Mr. Klayman's D.C. Superior Court Lawsuit .............................9

        4.    Mr. Klayman's Northern District of Texas Lawsuit .................................10

        5.    The Instant Civil Suit.....................................................10

        6.    Mr. Klayman's California Lawsuit ...........................................10

LEGAL STANDARD....................................................................................................12

ARGUMENT ...............................................................................................................13

    A.    Mr. Klayman's Lawsuits Unnecessarily Burden the Movants and the Court........13

    B.    Mr. Klayman is the Embodiment of a Vexatious Litigant ....................................16

CONCLUSION.............................................................................................................18

## TABLE OF AUTHORITIES

**CASES:**

*Abdah v. Bush*,
   No. Civ. A. 04-1254, 2005 WL 711814 (D.D.C. Mar. 29, 2005)............................................12

*Baldwin Hardware Corp. v. FrankSu Enter. Corp.*,
   78 F.3d 550 (Fed. Cir. 1996)...............................................................................................4

*Chambers v. NASCO, Inc.*,
   501 U.S. 32 (1991)............................................................................................................12

*Davis v. United States*,
   569 F. Supp. 2d 91 (D.D.C. 2008).....................................................................................16

*F.D.I.C. v. Bank of N.Y.*,
   479 F. Supp. 2d 1 (D.D.C.)................................................................................................18
   508 F.3d 1 (D.C. Cir. 2007)..............................................................................................18

*Gharb v. Mitsubishi Elec. Corp.*,
   148 F. Supp. 3d 44 (D.D.C. 2015).....................................................................................16

*Harbison v. U.S. Senate Comm. on Foreign Relations*,
   839 F. Supp. 2d 99 (D.D.C. 2012).....................................................................................16

*Harrelson v. United States*,
   613 F.2d 114 (5th Cir. 1980) ............................................................................................17

*In re Klayman*,
   228 A.3d 713 (D.C. 2020) ..................................................................................................6

*In re Martin-Trigona*,
   737 F.2d 1254 (2d Cir. 1984)............................................................................................12

*In re Powell*,
   851 F.2d 427 (D.C. Cir. 1988) ..........................................................................................13

*Justice v. Koskinen*,
   109 F. Supp. 3d 142 (D.D.C. 2015)...................................................................................13

*Kaempfer v. Brown*,
   872 F.2d 496 (D.C. Cir. 1989) ..........................................................................................13

*Klayman v. City Pages*,
   No. 13-cv-143-OC-22PRL, 2015 WL 1546173 (M.D. Fla. Apr. 3, 2015) ................................3

*Klayman v. DeLuca*,
   712 F. App'x 930 (11th Cir. 2017).................................................................................3, 17

*Klayman v. Fox*,
   No. CV 18-1579 (RDM), 2019 WL 2396538 (D.D.C. June 5, 2019) ........................... *passim*
   No. CV 18-1579 (RDM) 2019 WL 3752773 (D.D.C. Aug. 8, 2019).......................................2

*Klayman v. Lim*,
   No. 18-2209, 2019 WL 2396539 (D.D.C. June 5, 2019).............................................1, 3, 9, 17
   830 F. App'x 660 (D.C. Cir. 2020)................................................................................2, 3, 8

*Klayman v. Porter*
   No. 2020 CA 000756 B (D.C. Super. Ct. Oct. 1 2020) .............................................1, 3, 9, 17

*MacDraw, Inc. v. CIT Grp. Equip. Fin., Inc.*,
   994 F. Supp. 447 (S.D.N.Y. 1997) ......................................................................................4
   138 F.3d 33 (2d Cir. 1998).................................................................................................4

*Mikkilineni v. Penn Nat. Mut. Cas. Ins. Co.*,
   271 F. Supp. 2d 142 (D.D.C. 2003) ...................................................................................12

*SEC v. Vision Commc'ns, Inc.*,
   74 F.3d 287 (D.C. Cir. 1996) ...........................................................................................13

*Smith v. Scalia*,
   44 F. Supp. 3d 28 (D.D.C. 2014) ......................................................................................13
   No. 14-5180, 2015 WL 13710107 (D.C. Cir. Jan. 14, 2015) .................................................13

*Sparrow v. Reynolds*,
   646 F. Supp. 834 (D.D.C. 1986) ......................................................................................16

*Stich v. United States*,
   773 F. Supp. 469 (D.D.C. 1991) ......................................................................................12
   976 F.2d 1445 (D.C. Cir. 1992) .......................................................................................12

*Unitronics (1989) (R″G) Ltd. v. Gharb*,
   85 F. Supp. 3d 118 (D.D.C. 2015) ...................................................................................13

*Urban v. United Nations*,
   768 F.2d 1497 (D.C. Cir. 1985) ..................................................................................12, 16

**STATUTES:**

28 U.S.C.
   § 1332.............................................................................................................................5
   § 1651(a) ...................................................................................................................12, 15

42 U.S.C.
   § 1983.............................................................................................................................8

**OTHER AUTHORITIES:**

D.C. Bar R. XI

§ 4.................................................................................................................5

§ 4(e)(2) .......................................................................................................6

§ 5(a) ...........................................................................................................5

§ 6.................................................................................................................5

§ 6(a) ...........................................................................................................5

§ 9(g) ...........................................................................................................1

§ 19(a) .........................................................................................................9

D.C. Super. Ct. Civ. R. 11 cmt. ....................................................................9

Local Civ. R. 5.1(c)(1) .................................................................................5

## PRELIMINARY STATEMENT

Plaintiff Larry Klayman has established a longstanding history of vexatious and abusive litigation.  Mr. Klayman is not the typical *pro se* litigant.  He practices law as a solo practitioner and is a member of the District of Columbia Bar with over 40 years of experience.[1]  He also has an extensive history of unsuccessfully prosecuting actions *pro se*.  This is Mr. Klayman's sixth serial lawsuit filed against lawyers employed by the Office of Disciplinary Counsel and other officials of the D.C. Bar in (a) this Court, (b) the Superior Court of the District of Columbia, (c) the U.S. District Court for the Northern District of Texas, (d) the U.S. District Court for the Western District of Texas, and (e) the U.S. District Court for the Northern District of California.  *See* Compl.; *Klayman v. Fox* ("*Klayman I*"), No. 18-1579 (RDM), 2019 WL 2396538, at *4–5 (D.D.C. June 5, 2019) (Ex. 5); *Klayman v. Lim* ("*Klayman II*"), No. 18-2209 (RDM), 2019 WL 2396539 (D.D.C. June 5, 2019) (Ex. 6); slip op., *Klayman v. Porter* ("*Klayman III*"), No. 2020 CA 000756 B (D.C. Super. Ct. Oct. 1 2020) (Ex. 7); *Klayman v. Kaiser*, No. 20-cv-09490 (N.D. Cal. Dec. 31, 2020) (Ex. 8); *Klayman v. Porter*, No. 20-cv-2526 (N.D. Tex) (Aug. 26, 2020) (Ex. 9).[2]  Currently,

---

[1] During the disciplinary proceedings at issue in this case, the Office of Disciplinary Counsel commenced a disciplinary action against Mr. Klayman, which is ongoing.  On January 7, 2021, the D.C. Court of Appeals suspended Mr. Klayman on an interim basis pursuant to D.C. Bar R. XI, § 9(g), pending a final resolution of the Board on Professional Responsibility's (the "Board's") October 2, 2020 recommendation of an 18-month suspension with a requirement that he demonstrate a fitness to practice law before he is reinstated.  *See* D.C. Court of Appeals Bd. of Pro. Resp., R. & R. (2020), available at *https://www.dcbar.org/ServeFile/ GetDisciplinaryActionFile?_fileName=LarryEKlayman17BD063.pdf* (Ex. 4).  The Board determined that Mr. Klayman "engaged in numerous serious Rule violations that strike at the heart of the attorney-client relationship."  *Id.* at 32.  In its Report and Recommendation, the Board concluded that Mr. Klayman was pursuing his client romantically, and, contrary to Mr. Klayman's assertion that his client "imagines that people are sexually coming on to her," Mr. Klayman's client was not lying about Mr. Klayman's romantic advances.  *Id.* at 31–32 (noting that Mr. Klayman "appears not to appreciate the seriousness" of his misconduct).

[2] To avoid inundating the Court, just the complaints and motions without exhibits are attached.

Mr. Klayman has also signaled his intent to compel the deposition by oral examination of each of the Movants in a case in which they are not even parties and that is pending in the Circuit Court of the Fifteenth Judicial Circuit of Florida.  *See Klayman v. Politico LLC*, No. 50-2020-CA-011868 (Fla. Palm Beach County Ct. 2020) (Ex. 10); Notice of Intent to Serve Subpoena, *Klayman v. Politico LLC*, No. 50-2020-CA-011868 (Fla. Palm Beach County 2020) (Ex. 11).

Mr. Klayman's allegations in the instant action will not be unfamiliar to this Court.  In his complaint, Mr. Klayman accuses the Movants of engaging in "the equivalent of a partisan politically based agenda" and "in effect a jihad" against Mr. Klayman to have him removed from the practice of law.  Compl. ¶ 10.  Despite interchanging some individual defendants, the action relies on the same allegations that have been the basis for all of his civil suits filed against the Movants since 2018—the basic assertion that Mr. Klayman's professional disciplinary proceedings are without merit and are due to his conservative political views and the bias of the Movants in their official actions.  *See* Compl. ¶ 14 (characterizing the Office of Disciplinary Counsel's actions as "politically based selective prosecutions"); *Klayman I*, No. CV 18-1579 (RDM), 2019 WL 2396538, at *9 (D.D.C. June 5, 2019), *reconsideration denied*, No. CV 18-1579 (RDM), 2019 WL 3752773 (D.D.C. Aug. 8, 2019), and *aff'd sub nom. Klayman v. Lim*, 830 F. App'x 660 (D.C. Cir. 2020) ("The 'crux' of Plaintiff's claim of bad faith is that [the Movants] are pursuing disciplinary charges against him because they disagree with his political beliefs and 'conservative public advocacy.'").

After filing six successive civil suits in five different courts in the span of less than 30 months, Mr. Klayman's latest complaint against the Movants is nothing more than harassment. His claims have remained essentially unchanged and have repeatedly been held to be meritless. This Court, the D.C. Circuit, and the D.C. Superior Court all have already held that Office of

Disciplinary Counsel attorneys are protected from suit by absolute judicial immunity.  *See Klayman v. Lim* ("*Klayman I and II*"), 830 F. App'x 660 (D.C. Cir. 2020) (Ex. 12) (affirming district court's holding that individual Disciplinary Counsel employees are "entitled to the protection of absolute immunity"); *Klayman I*, No. 18-1579 (RDM), 2019 WL 2396538, at *4–5 (D.D.C. June 5, 2019) (Ex. 5); *Klayman II*, 18-2209 (RDM), 2019 WL 2396539 (D.D.C. June 5, 2019) (Ex. 6).  Klayman must establish that the Movants—lawyers and employees of the Office of Disciplinary Counsel—are not entitled to absolute immunity.  *See Klayman I*, 2019 WL 2396538 at *11 n.3, *aff'd* 830 F. App'x at 661; *Klayman III*, No. 2020 CA 000756 B (D.C. Super. Ct. Oct. 1 2020) (Ex. 7) (sanctioning Mr. Klayman for his "improper" conduct in persisting in his use of civil litigation against Disciplinary Counsel personnel despite notice his claims were precluded by their "clear immunity").  Mr. Klayman has chosen to ignore and thereby disrespect each of these Courts and has filed serial lawsuits in U.S. District Courts across the United States for the sole and obvious purpose of harassing and abusing Office of Disciplinary Counsel.

Mr. Klayman is infamous for his vexatious and abusive tactics in civil litigation.  In *Klayman v. City Pages*, then Chief Judge for the United States District Court for the Middle District of Florida, Anne C. Conway, noted that "when [Mr. Klayman] receives unfavorable rulings, he often plunges into a tirade against whomever he feels has wronged him."  No. 13-cv-143-OC-22PRL, 2015 WL 1546173, at *17 (M.D. Fla. Apr. 3, 2015) (Ex. 13).  He has been admonished repeatedly by federal courts with regard to his pattern of filing vexatious litigation.  *See, e.g.*, *Klayman v. DeLuca*, 712 F. App'x 930, 933 (11th Cir. 2017) (Ex. 14) (noting "Klayman's vexatious history"); *City Pages*, 2015 WL 1546173, at *17 (Ex. 13) (entering judgment against Mr. Klayman in defamation suit, noting his "approach to this litigation has been quite suspect, to say the least").  On May 18, 2016, the United States District Court for the Southern District of Florida issued an

injunction against Mr. Klayman (similar to the relief sought by the Movants in this case), preventing him from filing any *pro se* action in federal court, state court, or any other forum against the law firm Baker & Hostetler LLP and its attorneys arising out of Mr. Klayman's Ohio custody dispute with his former spouse.  *See Klayman v. Deluca*, No. 15-cv-80310-KAM (S.D. Fla. May 18, 2016), ECF No. 46 (Ex. 15).  The Court explained that "[e]ven outside the context of the Ohio custody dispute, Klayman has a history of vexatious conduct in this District and in other courts." *Id.* at 3 n.2 (citing *Baldwin Hardware Corp. v. FrankSu Enter. Corp.*, 78 F.3d 550 (Fed. Cir. 1996) (affirming monetary sanctions and barring Mr. Klayman from appearing pro hac vice before the trial judge for failure to comply with local rules and for "unreasonably and vexatiously multiplying the proceedings"); *MacDraw, Inc. v. CIT Grp. Equip. Fin., Inc.*, 994 F. Supp. 447, 460 (S.D.N.Y. 1997) (Chin, J.) (revoking Mr. Klayman's pro hac vice status and noting that any future applications to appear pro hac vice would be denied based on Mr. Klayman having "engaged in significant abuse, unreasonable conduct, and acts of bad faith"), *aff'd*, 138 F.3d 33 (2d Cir. 1998)). This well-documented public history not withstanding, Mr. Klayman continues to file meritless lawsuits that impose a substantial personal and professional burden on (a) the Movants in the conduct of their official duties, (b) the Office of Disciplinary Counsel, and (c) this Court.

To avoid future waste associated with Mr. Klayman's vexatious tactics, the Movants request that this Court enjoin Mr. Klayman from filing further actions, complaints, or claims against the Movants, without first seeking and obtaining a pre-filing order granting leave to file, against these Movants or their employer, the Office of Disciplinary Counsel, current and former employees of the Office of Disciplinary Counsel, the Board of Professional Responsibility, or any D.C. Bar officials in any federal court, state court, or any other forum.  The Movants also request that the Court enjoin Mr. Klayman from serving or causing to be served one or any of the Movants

with a subpoena or any other instrumentality of civil discovery as a third party in any other legal proceeding in which Mr. Klayman is a party, without first making application to and receiving the consent of this Court and any other the court where the litigation is proposed to be filed.  An injunction against vexatious litigation, of the kind that has previously been upheld under similar circumstances by the U.S. Court of Appeals for the D.C. Circuit, would not unduly burden any proper attempts by Mr. Klayman to seek relief through good faith civil litigation by requiring that he first seek and obtain leave of this Court before filing any such claim.

## BACKGROUND

### A.     The Parties

Plaintiff Larry Klayman is an attorney who allegedly resides at 7050 West Palmetto Park Road, Boca Raton, Florida, 33433.[3]  Compl. p. 1.  Mr. Klayman also maintains a law office in the District of Columbia at 2020 Pennsylvania Avenue, NW, Suite 345, Washington, D.C. 20006. *Larry Klayman*, https://www.larryklayman.com (last visited Jan. 19, 2021).

The Office of Disciplinary Counsel, created by the D.C. Court of Appeals, serves as the chief prosecutor for disciplinary matters involving attorneys subject to the disciplinary jurisdiction of the D.C. Court of Appeals.[4]  *See* D.C. Bar R. XI, §§ 4, 6.  The Office of Disciplinary Counsel is responsible for investigating attorney misconduct and prosecuting disciplinary matters before Board-appointed Hearing Committees, the Board, and the D.C. Court of Appeals.  D.C. Bar R. XI,

---

[3] The Background is drawn mainly from the allegations of the Complaint which, except where otherwise indicated, Movants accept as true solely for the purposes of this motion.  This address at which Mr. Klayman lists as his place of residence is a UPS store located in the "Garden Shops of Boca" in Boca Raton.  *See* LCvR 5.1(c)(1);  *The UPS Store*, https://locations.theupsstore.com/fl/boca-raton/7050-w-palmetto-park-rd (last visited Jan. 10, 2021).  Accordingly, it is difficult to ascertain where Mr. Klayman lives for purposes of diversity jurisdiction.  *See* 28 U.S.C. § 1332.

[4] The District of Columbia Bar has no supervisory authority over or role in the disciplinary system of the Office of Disciplinary Counsel.

§§ 5(a), 6(a).  Julia Porter is a Deputy Disciplinary Counsel at the Office of Disciplinary Counsel in the District of Columbia.  Compl. ¶ 4.  Hamilton Fox, III is the Disciplinary Counsel for the District of Columbia.  *Id.* ¶ 5.  Lawrence K. Bloom is a Staff Attorney at the Office of Disciplinary Counsel in the District of Columbia.  *Id.* ¶ 6.  Disciplinary Counsel serve at the pleasure of the Board and are subject to the oversight authority of the D.C. Court of Appeals.  *See* D.C. Bar R. XI, § 4(e)(2).

### B.   June 11, 2020 Suspension of Mr. Klayman's License to Practice Law in the District of Columbia

On June 11, 2020, the D.C. Court of Appeals ordered a 90-day suspension of Mr. Klayman's license to practice law in the District of Columbia.  Compl. ¶ 17; *In re Klayman*, 228 A.3d 713, 720 (D.C. 2020) (Ex. 16).  The Court accepted the findings of the D.C. Board on Professional Responsibility that Mr. Klayman violated the conflict-of-interest provision of Rule 1.9 of the D.C. Rules of Professional Conduct (as well as an analogous Florida rule) by representing individual clients in three lawsuits against Judicial Watch, all of which concerned matters in which Mr. Klayman had represented Judicial Watch in his former role as its general counsel.  *In re Klayman*, 228 A.3d at 715–17 (Ex. 16).  On October 2, 2020, Mr. Klayman filed a complaint in this court alleging that the Movants sent letters to courts in which Mr. Klayman is admitted or licensed to practice, which informed those courts of Mr. Klayman's suspension "as part of their scheme to severely and irreparably harm and damage Klayman."[5]  Compl. ¶¶ 12, 21.

### C.   Mr. Klayman's Litigious History

As this Court has observed, the underlying dispute relates to Mr. Klayman's disciplinary proceedings involving the practice of law.  In its prior judgments, this Court has already

---

[5] Mr. Klayman filed this action in the Western District of Texas, and on October 29, 2020, that court granted the Movants' Motion to Transfer the Case to this district.  Order, *Klayman v. Porter,* et al., 20-cv-1014 (W.D. Tex. Oct. 29, 2020), ECF No. 13.

addressed—and repeatedly rejected—Mr. Klayman's attempts to circumvent the legal immunity conferred on the Office of Disciplinary Counsel and its lawyers.  Mr. Klayman's vexatious litigation against the Movants must come to an end.

Mr. Klayman also has a demonstrated record of filing baseless motions accusing judges, including this Court, of "bias and prejudice" when they do not order the relief he seeks.  Plaintiff's Mot. for Recons. of the Ct.'s Order Granting Mot. to Dismiss and for Recusal or Disqualification at 8, *Klayman II*, 2019 WL 2396539, ECF No. 25 (Ex. 17); *see also* Plaintiff's Mot. for Leave to File Surreply and Proposed Reply at 2, *Klayman I*, 2019 WL 2396538, ECF No. 16 (Ex. 18) (assuming that the only reason the court could have temporarily stayed discovery is because the judge "lack[ed] impartiality toward[s] Plaintiff, and instead partiality in favor of the Defendants"); *Klayman v. Judicial Watch, Inc.*, No. 06-cv-670 (D.D.C.), ECF Nos. 298, 345, 414, and 606 (filing motions to recuse or disqualify Judge Kollar-Kotelly after she imposed monetary and evidentiary sanctions); *Klayman v. City Pages*, 2015 WL 1546173, ECF. No. 139.  On February 17, 2021, Mr. Klayman filed a lawsuit in federal court attacking thirteen judges on the D.C. Court of Appeals. *See Klayman v. Blackburne-Rigsby,* et al., No. CV 21-00409 (D.D.C. Feb. 17, 2021) (Ex. 19).  Mr. Klayman's complaint accuses the thirteen sitting D.C. Court of Appeals judges of imposing an unconstitutional and "malicious" interim suspension while determining whether to suspend him for 18 months for professional misconduct.  *Id.*; *see also supra* note 1; D.C. Court of Appeals Bd. of Pro. Resp., R. & R. (2020) (Ex. 4).  Mr. Klayman's federal lawsuit also names the appellate court's clerk as a defendant.  *Id.*

### 1.     Mr. Klayman's First Related Lawsuit in this Court

On July 3, 2018, Mr. Klayman filed his first *pro se* lawsuit in this Court against two of the Movants and the Office of Disciplinary Counsel, alleging that the Office of Disciplinary Counsel "has [] engaged in a pattern and practice of abusing and exceeding its position of authority … and

intentionally violate[d] Klayman's constitutional and other rights by selectively prosecuting Klayman because of his political activism, free speech, and gender." Compl. ¶ 40, *Klayman I*, 2019 WL 2396538 (Ex. 20). This case was filed against the D.C. Bar and the Office of Disciplinary Counsel—as well as Disciplinary Counsel Hamilton P. Fox, III (named in this action), Deputy Disciplinary Counsel Julia L. Porter (named in this action), former Deputy Disciplinary Counsel Elizabeth A. Herman, and then-Assistant Disciplinary Counsel H. Clay Smith, III[6], in their individual capacities. *Klayman I*, 2019 WL 2396538, at \*4–5 (Ex. 20).

## 2.    Mr. Klayman's Second Related Lawsuit in this Court

Less than three months later, on September 24, 2018, Mr. Klayman filed his second case, also in this Court, against the same defendants—Ms. Porter, Mr. Fox, Ms. Herman, Mr. Smith, the Office of Disciplinary Counsel, and the D.C. Bar—adding (then-incumbent) President of the D.C. Bar Esther Lim. *Klayman II,* 2019 WL 2396539. Mr. Klayman again alleged that the D.C. Bar and the Office of Disciplinary Counsel—as well as the attorneys employed by the Office of Disciplinary Counsel in their individual capacities—violated Mr. Klayman's "constitutional and other rights by selectively prosecuting [him] because of his political activism, free speech, and gender." Compl. at 16, *Klayman II,* 2019 WL 2396539 (Ex. 21). Mr. Klayman continued to assert with respect to "All Defendants" two common law tort claims of abuse of process and malicious prosecution. *See id.* at 17–18 (Ex. 21). Like the first lawsuit, Mr. Klayman sought relief against the Individual Defendants, asserting two federal causes of action under 42 U.S.C. § 1983 for alleged equal protection and First Amendment violations. *See id.* at 18–20 (Ex. 21). Finally, Mr. Klayman added a fifth cause of action for "fraud" against an unspecified collection of defendants. *See id.* at 20 (Ex. 21).

---

[6] Mr. Smith retired on February 1, 2021.

This Court dismissed both actions.  The legal bases for these dismissals were (a) the doctrine of abstention under *Younger* as to Mr. Klayman's claims for injunctive relief, and (b) absolute immunity under D.C. Bar XI, § 19(a) as to Mr. Klayman's damages claims.  *Klayman I,* 2019 WL 2396538 (Ex. 5); *Klayman II,* 2019 WL 2396539 (Ex. 6).[7]  The D.C. Circuit affirmed both dismissals in a single *per curium* order.  *Klayman I and II*, 830 F. App'x 660 (D.C. Cir. 2020) (Ex. 12).

### 3.    Mr. Klayman's D.C. Superior Court Lawsuit

Having his first two claims dismissed by this Court, on January 31, 2020, Mr. Klayman filed his third civil suit in D.C. Superior Court against Movant Julia Porter, the Office of Disciplinary Counsel, and Mr. Klayman's former client who had filed a complaint against him with the Office of Disciplinary Counsel.  *See Klayman III*, No. 2020 CA 000756 B at 9 (Ex. 7); Compl., *Klayman III*, No. 2020 CA 000756 B (Ex. 22).  The Court dismissed the claims against Ms. Porter and the Office of Disciplinary Counsel and granted summary judgment in favor of Mr. Klayman's former client.  *Id.* at 10, 12.  The Court squarely rejected the legal basis for Mr. Klayman's claims and held that "Plaintiff Klayman may not seek civil action against either defendants Porter or [the Office of Disciplinary Counsel] for conduct occurring in their official capacities." *Id.* at 9.

In the same order, the D.C. Superior Court sanctioned Mr. Klayman pursuant to Superior Court Rule of Civil Procedure 11[8].  *Id.*  The Court explained that sanctions were appropriate because Mr. Klayman filed his complaint in that action even though this Court had twice dismissed

---

[7] In *Klayman II*, this court also dismissed Mr. Klayman's claims against the D.C. Bar and its former president Esther Lim for failure to state a claim.  *Klayman II*, 2019 WL 2396539 at *5 (Ex. 6).

[8] D.C. Superior Court Rule of Civil Procedure 11 is "identical" to Federal Rule of Civil Procedure 11.  D.C. Super. Ct. Civ. R. 11 cmt.

similar claims and put him on notice that his claims against Ms. Porter and the Office of Disciplinary Counsel were precluded by their "clear immunity." *Id.* at 12–14. The D.C. Superior Court awarded Ms. Porter and the Office of Disciplinary Counsel court costs and expenses. *See id.* 14–15.

### 4.    Mr. Klayman's Northern District of Texas Lawsuit

On August 26, 2020, Mr. Klayman filed a fourth lawsuit, this time in the U.S. District Court for the Northern District of Texas. *See* Compl., *Klayman v. Porter*, No. 20-cv-2526 (N.D. Tex. Aug. 26, 2020) (Ex. 9). Like this action, Mr. Klayman's Northern District of Texas suit (a) names as defendants Ms. Porter, Mr. Fox and Mr. Bloom and bases his claims on (b) issuance of written notice to the U.S. District Court—where Mr. Klayman was representing a party in a pending case—that Mr. Klayman's D.C. Bar license had been suspended. Transfer Order, *Klayman v. Porter*, No. 20-cv-2526 (N.D. Tex. Dec. 7, 2020), ECF No. 22 (Ex. 23). Defendants' Motion to Transfer that case to this Court was granted on December 7, 2020. *Id.*; *see also Klayman v. Porter*, No. 20-cv-3579 (D.D.C. Dec. 14, 2020).

### 5.    The Instant Civil Suit

On October 2, 2020, Mr. Klayman filed the instant Complaint in the U.S. District Court for the Western District of Texas, recycling his previous allegations that Defendants violated Mr. Klayman's civil rights by "selectively prosecuting" him because of his political beliefs. Compl. ¶ 14. This action, which is substantially identical to the suit Mr. Klayman filed less than six weeks earlier in the Northern District of Texas, was subsequently transferred to this Court on Defendants' motion. ECF No. 14.

### 6.    Mr. Klayman's California Lawsuit

On December 30, 2020, Mr. Klayman filed a sixth civil complaint naming Ms. Porter, Mr. Bloom, and Mr. Fox as defendants, in the U.S. District Court for the Northern District of

California.  *See* Compl., *Klayman v. Kaiser*, No. 20-cv-09490 (N.D. Cal. Dec. 31, 2020), ECF No. 1 (Ex. 8).[9]  The Northern District of California action, like this action, challenges the Office of Disciplinary Counsel's notice to other courts that Mr. Klayman's license to practice in the District of Columbia had been suspended.  *Id.*

Upon learning that Mr. Klayman had filed another suit over the New Year holiday, counsel for Messrs. Fox and Bloom and Ms. Porter twice communicated to Mr. Klayman that counsel would accept service of the summons and complaint by electronic mail.  Mr. Klayman ignored those communications—which would have saved both time and expense—and caused Ms. Porter, Mr. Bloom, and Mr. Fox to be personally served at their homes—for the unmistakable purpose of harassing them and their families at their places of residence.  *See* Porter Decl. ¶ 11 (Ex. 2) (explaining that Mr. Klayman's insistence on serving Ms. Porter at her home has "caus[ed]" continued disruption to [her] household and embarrassment to [her] in the presence of [her] neighbors"); Bloom Decl. ¶ 7 (Ex. 1) (describing the process servers repeated unauthorized access to his secure condominium); Fox Decl. ¶ 6 (Ex. 3) (stating that Mr. Klayman's refusal to comply with his attorney's request has forced his wife to accept service on his behalf).

The factual allegations and legal claims in the two pending U.S. District Court of the District of Columbia cases, as well as the Northern District of California case, are identical in all substantive respects.  In each complaint, Mr. Klayman alleges that: (a) the D.C. Court of Appeals ordered a 90-day suspension of Mr. Klayman's license to practice law in the District of Columbia, (b) defendants, all employees of the Office of Disciplinary Counsel, notified other jurisdictions where Mr. Klayman is licensed or admitted (including admissions *pro hac vice*) of the suspension, and (c) defendants' actions were motivated by their opposition to Mr. Klayman's political views.

---

[9] Mr. Kaiser is the Chair of the District of Columbia Board on Professional Responsibility.

Compl. ¶¶ 17, 20–22, 45; Compl., *Klayman v. Porter*, No. 20-cv-2526 (Ex. 9); Compl., *Klayman v. Kaiser*, No. 20-cv-09490 (Ex. 8).   As explained in the Movants' Motion to Dismiss, Mr. Klayman's contention that the D.C. Rules of Professional Conduct do not expressly authorize notification of his suspension to other courts is inapposite.   *See* Mot. to Dismiss, ECF No. 18; Compl. ¶ 22.   On December 14, 2020, the Court ordered that Mr. Klayman respond to the Movants' Motion to Dismiss by January 29, 2020.   *See* Order, ECF No. 19.   Mr. Klayman, however, has failed to respond to the Movants' motion by the court-ordered deadline.

## LEGAL STANDARD

The Court has the power to protect itself from litigants who abuse the judicial process.   *See Stich v. United States*, 773 F. Supp. 469, 470 (D.D.C. 1991), *aff'd*, 976 F.2d 1445 (D.C. Cir. 1992). Federal courts have the "inherent power and the constitutional obligation to protect their jurisdiction from conduct which impairs their ability to carry out Article III functions."   *Id.* (quoting *In re Martin-Trigona*, 737 F.2d 1254, 1261 (2d Cir. 1984)).   This power extends to protecting federal courts and opposing litigants against frivolous filings.   *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 43–46 (1991); *Urban v. United Nations*, 768 F.2d 1497, 1499–500 (D.C. Cir. 1985).   A district court's power to protect its jurisdiction includes the ability to enjoin a dissatisfied party so long as the court "take[s] great care not to 'unduly impair a litigant's constitutional right of access to the court.'"   *Urban*, 768 F.2d at 1500.   A court may enjoin a vexatious plaintiff when he files complaints or motions that are "frivolous, harassing, or duplicative of prior filings." *Mikkilineni v. Penn Nat. Mut. Cas. Ins. Co.*, 271 F. Supp. 2d 142, 148 (D.D.C. 2003) (citing *Urban*, 768 F.2d at 1500)).

The All Writs Act, 28 U.S.C. § 1651, also "empowers a district court to issue injunctions to protect its jurisdiction."   *Abdah v. Bush*, No. Civ. A. 04-1254, 2005 WL 711814, at *6 (D.D.C.

Mar. 29, 2005) (quoting *SEC v. Vision Commc'ns, Inc.*, 74 F.3d 287, 291 (D.C. Cir. 1996)).  A court has the power to grant a writ under the All Writs Act whenever it calculates that such action is needed "to achieve the ends of justice entrusted to it."  *Id.*

Three criteria must be met to enjoin a litigious plaintiff: (1) the plaintiff must receive notice and an opportunity to be heard, (2) the court should create an adequate record for review, and (3) "the court must make substantive findings as to the frivolous or harassing nature of the litigant's actions."  *Unitronics (1989) (R''G) Ltd. v. Gharb*, 85 F. Supp. 3d 118, 130 (D.D.C. 2015) (quoting *In re Powell*, 851 F.2d 427, 431 (D.C. Cir. 1988)); *see also Kaempfer v. Brown*, 872 F.2d 496 (D.C. Cir. 1989); *Justice v. Koskinen*, 109 F. Supp. 3d 142, 150 (D.D.C. 2015); *Smith v. Scalia*, 44 F. Supp. 3d 28, 46 (D.D.C. 2014), *aff'd*, No. 14-5180, 2015 WL 13710107 (D.C. Cir. Jan. 14, 2015). The procedure for satisfying the first two criteria are left to the Court's discretion.  The facts of this case amply support findings that Mr. Klayman's actions are frivolous and harassing, as explained below.

## ARGUMENT

As illustrated above, the absence of merit in any of Mr. Klayman's claims against these Movants demonstrates that his actions are both frivolous and harassing.

### A.    Mr. Klayman's Lawsuits Unnecessarily Burden the Movants and the Court

Mr. Klayman, an attorney, should know his complaints have no legal merit.  As an attorney proceeding *pro se*, these lawsuits cost Mr. Klayman only the filing fee.  However, the Movants and their attorneys are forced to expend tremendous time and resources to secure dismissals of Mr. Klayman's vexatious lawsuits.  *See* Block Decl. (Ex. 24); Porter Decl. ¶ 7(Ex. 2); Bloom Decl. ¶ 9 (Ex. 1); Fox Decl. ¶ 5 (Ex. 3).  Since 2018—when Mr. Klayman filed his first civil suit in this saga—Akin Gump has spent $28,990 in out-of-pocket expenses and devoted over 1,062 professional hours to the pro bono representation of the Bar, the Office of Disciplinary Counsel,

and the individual lawyers named by Mr. Klayman in his various lawsuits.  *See* Block. Decl. ¶ 8 (Ex. 24).  Although Mr. Klayman's complaints are substantively the same, the Movants must dedicate significant time reviewing pleadings and related documentation and consulting with counsel.  *See* Porter Decl. ¶ 7 (Ex. 2); Bloom Decl. ¶ 9 (Ex. 1); Fox Decl. ¶ 5 (Ex. 3).  That time and those resources have been and continue to be necessarily diverted from the many other impoverished or underserved individuals and groups, charities, and public interest groups that require pro bono legal services but cannot afford them.  *See* Block Decl. (Ex. 23).  In other words, the other unnamed victims of Mr. Klayman's vexatious litigation, whose interests must be considered, are those other pro bono clients who would otherwise have had the benefit of the professional resources that have been and continue to be directed toward defending against Mr. Klayman's serial (and duplicative) lawsuits and efforts to take third-party discovery.  *Id.*

Moreover, Mr. Klayman's serial lawsuits extract a substantial personal toll on the Movants and their families.  *See, e.g.*, Fox Decl. ¶ 7 (Ex. 3) (describing Mr. Klayman's serial lawsuits as "difficult and distressing"); Porter Decl. ¶ 11 (Ex. 2) ("Mr. Klayman's barrage of lawsuits, and the scurrilous allegations that he has made in each of his complaints, has been noticed by my friends, family, and professional colleagues."); Bloom Decl. ¶ 8–9 (Ex. 1) (detailing the "significant stress and anxiety" caused by Mr. Klayman's persistent lawsuits).

On multiple occasions, Mr. Klayman's process server has harassed the Movants and ignored COVID-19 protocols.  *See, e.g.*, Porter Decl. ¶ 10 (Ex. 2); Bloom Decl. ¶ 7–8 (Ex. 1.). The process server fails to take measures to protect against infection and refuses to wear a mask or comply with social distancing protocols, ignoring the recommended practices for process servers during the ongoing COVID-19 pandemic and putting the Movants and their families at risk.  *See, e.g.*, Porter Decl. ¶ 10 (Ex. 2) ("Despite the risk associated with the COVID-19

pandemic, Mr. Klayman's process servers do not wear masks or adhere to social distancing norms—placing my husband and myself at heightened risk of infection.").  Mr. Klayman's process server also continues to unlawfully gain access Mr. Bloom's condominium—where most residents are older individuals and young families—at night and beats on his door with the obvious aim of harassing and embarrassing Mr. Bloom.  *See* Bloom Decl. ¶ 7–8 (Ex. 1) ("When I requested that the process server stop entering my building without calling, he ignored my request and walked away.").

Further, as detailed *infra*, in a naked effort to shop for a more favorable court, Mr. Klayman has consistently filed meritless motions seeking recusal and disqualification of judges who dismiss his claims or otherwise disagree with his legal assertions. *See, e.g.*, *Klayman I,* 2019 WL 2396538, ECF No. 4 (Ex. 25); *Id.*, ECF No. 16 (Ex. 18); *Klayman II*, 2019 WL 2396539, ECF No. 25 (Ex. 17); *Klayman v. City Pages*, 2015 WL 1546173, ECF. No. 139 (Ex. 26).  Mr. Klayman's serial motions include baseless and egregious accusations, including the specious assertion that this Court issued "orders based not on the law or facts presented, but instead in an act of protectionism towards his fellow Democrats and…leftists at the Office of Bar Disciplinary Counsel."  Plaintiff's Mot. for Recons. of the Ct.'s Order Granting Mot. to Dismiss and for Recusal or Disqualification at 1, *Klayman II*, 2019 WL 2396539, ECF No. 25 (Ex. 17).

Mr. Klayman has demonstrated disrespect and contempt for this Court—(in one pleading calling Judge Moss "clueless[]")—and the other courts in which he has sought to litigate his serial specious claims. *Klayman v. Fox*, No. CV 18-1579 (D.D.C. June 5, 2019), ECF No. 35 at 5 (Ex. 27).  The injunction in the instant Motion is necessary to aid the Court's jurisdiction, and is clearly "agreeable to the usage and principles of law."  28 U.S.C. § 1651(a).  Indeed, by continuing to file lawsuits and pursue litigation based on a legal theory that has been held to be meritless by trial and

appellate courts, Mr. Klayman has shown complete disregard for his ethical obligations and the judicial process.  Mr. Klayman should "no longer escape penalty for wasting resources that could have been devoted to rendering justice."  *Sparrow v. Reynolds*, 646 F. Supp. 834, 839 (D.D.C. 1986).  The requested injunction will serve to protect the integrity of this Court's process and jurisdiction, as well as the enforceability of prior judgments rendered by both federal and state courts all of which continues to be placed at risk by Mr. Klayman's actions. *See Urban*, 768 F.2d at 1500.

### B.    Mr. Klayman is the Embodiment of a Vexatious Litigant

The number and content of Mr. Klayman's related filings alone provide sufficient basis for injunctive relief.  *See Gharb v. Mitsubishi Elec. Corp.*, 148 F. Supp. 3d 44, 56 (D.D.C. 2015) (*three* "overwhelmingly similar" complaints justified injunction); *Harbison v. U.S. Senate Comm. on Foreign Relations*, 839 F. Supp. 2d 99, 111 (D.D.C. 2012) (same*, noting plaintiff "already had his day in court"); *Davis v. United States*, 569 F. Supp. 2d 91, 93, 98–99 (D.D.C. 2008) (*four* identical suits justified injunction because "repetitive presentation of essentially identical claims wastes limited judicial resources").  Mr. Klayman has filed six prior lawsuits, each with substantially similar allegations that uniformly assert that the D.C. Bar and the Office of Disciplinary Counsel have selectively prosecuted him because of his political ideology.  This pattern of serial, duplicative civil claims demonstrates Mr. Klayman's bad faith and abuse of civil legal process to vex, harass, and upset the defendants—who are all lawyers in service to the Bar, the Court, and the public—who are doing their duty.  Mr. Klayman has not successfully prosecuted any claim against the Movants or the Office of Disciplinary Counsel.  Rather, as set forth above, three of Mr. Klayman's lawsuits have been dismissed on preliminary motion, with the third dismissal by the D.C. Superior Court accompanied by an order of sanctions against Mr. Klayman.  *See Klayman I*,

2019 WL 2396538, at *4–5 (Ex. 5); *Klayman II*, 2019 WL 2396539 (Ex. 6); *Klayman III*, No. 2020 CA 000756 B, slip op. at 8 (Ex. 7).

Despite efforts to vary the structure or language of his claims, Mr. Klayman's legal theories and the gravamen of his complaints are substantially identical. For the reasons explained above, his substantive arguments are without merit. With no sign of stopping, unless Mr. Klayman is enjoined from filing any new action involving the D.C. Bar and the Office of Disciplinary Counsel and its officials, the Movants will be required to continue to expend resources litigating previously-resolved claims and will surely continue to be subjected to harassment and abuse by Mr. Klayman.

This is not the first time that victims of Mr. Klayman's abuse have sought and obtained protection from a U.S. District Court. On November 27, 2017, the U.S. Court of Appeals for the Eleventh Circuit affirmed the U.S. District Court for the Southern District of Florida's injunction against Mr. Klayman's vexatious litigation practices in the context of his personal child custody dispute with his ex-wife. *See DeLuca,* 712 F. App'x 930 (Ex. 14). The Eleventh Circuit explained that under the All Writs Act, a district court has the power "to enjoin litigants who are abusing the court system by harassing their opponents." *Id.* at 933 (quoting *Harrelson v. United States*, 613 F.2d 114, 116 (5th Cir. 1980) (per curiam)). The Court detailed Mr. Klayman's history of "vexatious conduct," which included eight lawsuits against defendants and "*pro se* lawsuits against the Ohio judges and magistrates involved with the custody proceeding as well as news organizations that reported on his cases."[10] *Id.* at 932 n.4 (Ex. 14); *see also id.* at 931-932; Mot. to Dismiss at 6, *Klayman v. Deluca,* No. 15-cv-80310-KAM (S.D. Fla. Apr. 30, 2015) (Ex. 28). All of the factors cited by the court in the Southern District of Florida in its decision to enjoin Mr.

---

[10] Mr. Klayman's lawsuits against the judges were dismissed at the pleadings stage and summary judgment was entered against Mr. Klayman in his lawsuits against the media outlets. *See DeLuca*, No. 15-cv-80310-KAM at 4 n.4 (Ex. 14).

Klayman's vexatious conduct—serial substantially identical civil claims, lawsuits naming as defendants judges of the courts where his cases are filed, and litigation against news organizations whose coverage of his cases are not to his liking—are present in this case.  Mr. Klayman should not be allowed to continue to execute his odious playbook against these lawyers—the Movants— who dedicate their careers to public service and the rule of law.

Finally, Mr. Klayman will suffer no harm if this Court issues an injunction merely "preventing [him] from relitigating an issue that [he] already had a full and fair opportunity to litigate before this Court." *F.D.I.C. v. Bank of N.Y.*, 479 F. Supp. 2d 1, 19 (D.D.C.), *aff'd*, 508 F.3d 1 (D.C. Cir. 2007).  Therefore, the Court should enjoin Mr. Klayman from attempting to relitigate and effectively nullify this Court's judgment.

## <u>CONCLUSION</u>

For the foregoing reasons, the Movants respectfully move the Court to enjoin Mr. Klayman from (a) filing any new action, complaint, or claim for relief against the Movants, their employer, the Office of Disciplinary Counsel, and current and former employees of the Office of Disciplinary Counsel, the Board of Professional Responsibility, or any D.C. Bar officials in any federal court, state court, or any other forum and (b) serving or causing to be served one or any of the Movants with a subpoena or any other instrumentality of civil discovery as a third party in any other legal proceeding in which Mr. Klayman is a party, without first making application to and receiving the consent of this Court and any other court where the litigation is proposed to be filed.

Dated: February 25, 2021                                      Respectfully submitted,

                                                                            */s/ Mark J. MacDougall*
                                                                            Mark J. MacDougall (D.C. Bar No. 398118)
                                                                            Samantha Block (D.C. Bar No. 1617240)
                                                                            Caroline L. Wolverton (D.C. Bar No. 496433)

AKIN GUMP STRAUSS HAUER & FELD LLP
2001 K Street, NW
Washington, DC 20006-1037
Tel:  (202) 887-4000
Fax:  (202) 887-4288
mmacdougall@akingump.com
samantha.block@akingump.com
cwolverton@akingump.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 25, 2021, a copy of the foregoing document was filed electronically and served pursuant to this Court's ECF Filing System, upon counsel of record.

Dated: February 25, 2021

*/s/ Mark J. MacDougall*
Mark J. MacDougall (D.C. Bar No. 398118)
