IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| LARRY KLAYMAN<br><br>            Plaintiff,<br>v.<br><br>JULIA PORTER,  HAMILTON FOX III, and LAWRENCE BLOOM<br><br><br>            Defendants. | **CASE NO: 20-cv-3109** |

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

Date: May 10, 2021

Respectfully submitted,

 */s/ Larry Klayman*
Larry Klayman
7050 W. Palmetto Park Rd
Boca Raton, FL, 33433
Tel: (561)-558-5336
Email: leklayman@gmail.com

Plaintiff Pro Se

1

**TABLE OF CONTENTS**

INTROUCTION AND STATEMENT OF RELEVANT FACTS ..................................................1
LEGAL STANDARD..................................................................................................................7
THE LAW.....................................................................................................................................7
    Texas Substantive Law Governs This Action...................................................................7
    Even Under District of Columbia Law, Defendants Do Not Have Absolute Immunity .....9
    Mr. Klayman Has Properly Pled Causes of Action ..........................................................12
        Tortious Interference...............................................................................................12
        Abuse of Process.....................................................................................................13
        Injunctive Relief......................................................................................................14
CONCLUSION ...........................................................................................................................16

# TABLE OF AUTHORITIES

*Cases*

*Ashcroft v. Iqbal*, 556 U.S. 662 (U.S. 2009) ...................................................................................7

*Cullen v. Fliegner*, 18 F.3d 96 (2d Cir. 1994) ................................................................................15

*Gordon v. United States Capitol Police*, 778 F.3d 158, 163 (D.C. Cir. 2015 ................................7

*Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258  (2014) ................................................9

*Hensler v. District Four Grievance Committee*, 790 F.2d 390  (5th Cir.1986). ............................15

*JMM Corp. v. District of Columbia*, 363 U.S. App. D.C. 160 (2004) ...........................................15

*Lewellen v. Raff*, 843 F.2d 1103 (8th Cir. 1988) ............................................................................15

*Livingston v. Guice*, 1995 U.S. App. LEXIS 29238 (4th Cir. Oct. 18, 1995) ................................11

*Moten v. Hatch*, 2011 U.S. Dist. LEXIS 97661 (D.D.C. Aug. 25, 2011) .......................................11

*Pulliam v. Allen*, 466 U.S. 522 (1984) ...........................................................................................12

*Richardson v. District of Columbia*, 711 F. Supp. 2d 115 (D.D.C. 2010) .....................................10

*Robert Half Int'l Inc. v. Billingham*, 315 F. Supp. 3d 419 (D.D.C. 2018) .....................................12

*Scott v. Dist. of Columbia,* 101 F.3d 748 (D.C. Cir. 1996) ............................................................13

*Sprint Communs., Inc. v. Jacobs*, 571 U.S. 69 (2013) ...................................................................14

*Teltschik v. Williams & Jensen, PLLC*, 683 F. Supp. 2d 33 (D.D.C. 2010). ..................................12

*Wilder-Mann v. United States*, 1993 U.S. Dist. LEXIS 9166 (June 27, 1993) ................................9

*Williams v. City Stores Co*., 192 A.2d 534 (D.C. 1963) ................................................................14

*Statutes*

D.C. Bar Rule XI § 19(a) ..............................................................................................................8, 9

Fed. R. Civ. P. 8(a) .........................................................................................................................7

D.C. Code § 22-1831 .....................................................................................................................13

**MEMORANDUM OF LAW**

Plaintiff Larry Klayman ("Mr. Klayman") hereby responds to Defendants Julia Porter, Hamilton Fox, III, and Lawrence Bloom's ("ODC Defendants") Motion to Dismiss, ECF No. 18, and, by extension, the ODC Defendants' Motion to Dismiss pertaining to case number 20-cv-3579, which was consolidated into this case and simply reincorporates the arguments of their original motion to dismiss. Thus, there is only one substantive motion to dismiss for Mr. Klayman to respond to—ECF No. 18.[1] This brief should be read and digested in conjunction with Plaintiff's Opposition to Motion for Injunction Against Vexatious Litigation by Plaintiff, contemporaneously also filed by Plaintiff Mr. Klayman today.

## I. INTRODUCTION AND STATEMENT OF RELEVANT FACTS

Defendants, each of whom are employed by Office of Disciplinary Counsel ("ODC") have personally engaged in a partisan, politically and vindictively based agenda to have Mr. Klayman removed from the practice of law, despite Mr. Klayman having been a member continuously in good standing of the District of Columbia Bar for 40 years. W.D. Comp. ¶ 10. Other conservative and Republican lawyers have also been in Defendants' partisan crosshairs and sights.

For instance, especially during the Trump years in particular, ethics complaints were filed, accepted and initiated against Trump White House Counsellor Kellyanne Conway[2] over

---

[1] *Klayman v. Porter et al*, 20-cv-1014 (W.D. Tx.), which was originally filed in the U.S. District Court for the Western District of Texas, was transferred to this Court as 20-cv-3109, and serves as the lead case after consolidation with *Klayman v. Porter et al*, 20-cv-2526 (N.D. TX.), which was originally filed in the U.S. District Court for the Northern District of Texas and transferred to this Court as 20-cv-3579. For the purposes of this motion, when referring to the case originally in the Western District of Texas, Mr. Klayman will use W.D. and he will use N.D. for the case originally in the Northern District of Texas.
[2] https://www.washingtonpost.com/politics/law-professors-file-misconduct-complaint-against-kellyanne-conway/2017/02/23/442b02c8-f9e3-11e6-bf01-d47f8cf9b643_story.html

1

remarks she made on cable news, against former Trump Attorney General William Barr[3] (the complaint was outrageously and incredibly filed by all prior presidents of the bar as well as a former senior bar counsel) for withdrawing the indictment of General Mike Flynn and for remarks he made on Fox News, Senators Ted Cruz[4] and Josh Hawley[5] over their role in advocating for President Trump in the last election, and of course former U.S. Attorney Rudy Giuliani[6] over his representation of President Trump, to name just a few. To the contrary, when a complaint was filed against fellow leftist Democrat lawyer David Kendall of Williams & Connolly over his admitted involvement in the destruction of Hillary Clinton's 33,000 emails illegally retained on a private server, which complicity is not even in dispute, ODC summarily and quickly rejected a complaint filed by conservative lawyer and public interest advocate Ty Clevenger, who ODC has also attempted to disbar, until they drove him into submission due to the cost of defending himself, and he simply resigned.[7] Plaintiff Klayman has no such intention, as he will not be bullied.

These partisan anti-conservative and Republican "witch hunts" run contrary to ODC's

---

[3] https://thehill.com/regulation/court-battles/508489-more-than-two-dozen-dc-bar-members-urge-disciplinary-probe-of-ag

[4] https://www.texasstandard.org/stories/lawyers-law-students-officially-file-grievances-seeking-to-disbar-senator-ted-cruz/

[5] https://thehill.com/homenews/state-watch/534783-attorneys-urge-missouri-supreme-court-to-probe-hawleys-actions

[6] https://www.law.com/newyorklawjournal/2021/03/03/nyc-bar-details-complaints-calling-for-full-attorney-discipline-investigation-of-giuliani/#:~:text=Under%20the%20New%20York%20state,censured%20or%20receive%20no%20punishment.

[7] Ty Clevenger, State bar prosecutors are flouting the law, protecting Hillary Clinton and her lawyers, LawFlog, available at: https://lawflog.com/?p=1389

own mission statement, which was publicly available until recently on their website, which provided:

> In this capacity, the Office of Disciplinary Counsel has and claims and admits to have a dual function: to protect the public and the courts from unethical conduct by members of the D.C. Bar and to protect members of the D.C. Bar from unfounded complaints. W.D. Comp. ¶ 9.

Defendants have admitted their improper, extra- legal, and unethical motivation to target Mr. Klayman openly, as Defendant Porter admitted as much at a hearing in a disciplinary matter where they could not even obtain a preliminary non-binding finding by a Board of Professional Responsibility Ad Hoc Hearing Committee that Mr. Klayman had violated any ethical rule of the bar. W.D. Comp. ¶ 11. At the hearing, Defendant Porter openly on behalf of herself and ODC incredibly proclaimed and admitted that it was her and ODC's position that Plaintiff Klayman "should not continue to have the privilege of being a lawyer." W.D. Comp. ¶ 11. Respectfully this is not for ODC to decide. Defendant Porter and her co-Defendants are to fairly litigate the claims before them, while protecting members of the District of Columbia Bar from unfounded complaints and their own biases and prejudices. What they have done instead is allow their partisan and thus personal disdain towards Mr. Klayman to wage a "jihad" against Mr. Klayman, as they have other conservative and Republican legal activists and lawyers, with the goal to have these lawyers removed from the practice of law.

As part of their scheme to severely and irreparably harm and damage Mr. Klayman by attempting to remove him from the practice of law, Defendants have chosen to use the tactic of harassing and financially harming Plaintiff Klayman, if not bankrupting him, by a series of bar proceedings most of which are or would be time-barred in other jurisdictions and which lack merit, but which incur huge attorney time, resources and monies to defend. *See* <u>Plaintiff's Opposition to Motion for Injunction Against Vexations Litigation by Plaintiff</u>, which should be

3

read in conjunction herewith. Thus, even when they fail in their attempts to have Mr. Klayman disbarred, they are attempting to accomplish the same purpose by destroying his legal practice and he, his colleagues and his family's well-being financially and emotionally by having to defend, at huge cost in terms of legal fees, costs and time, their frivolous attempts, at District of Columbia taxpayer expense but not their own, to have him removed from the practice of law in the District of Columbia. W.D. Comp. ¶ 12.

Indeed, Mr. Klayman has been left with no possible recourse but to the subject file these cases now assigned to this honorable Court in order to protect his rights, as he has no other remedy at law. He has asked the Board on Professional Responsibility and the District of Columbia Bar to conduct internal reviews of Defendants' ongoing crusade against Mr. Klayman but they have refused. He has no choice but to turn to the Courts and this honorable Court to protect his rights, reputation, and his ability to provide for himself, his colleagues and family.

Specifically, here, on June 11, 2020, the District of Columbia Court of Appeals ("DCCA") issued a 90-day suspension order against Mr. Klayman regarding an alleged conflict of interest that occurred over a decade ago, a more than incredible twelve years ago to be exact. W.D. Comp. ¶ 17. Crucially, this disciplinary action would be time barred under the laws of Texas. W.D. Comp. ¶ 17. Thus, there was no basis to contact this jurisdiction even if it was within Defendants purview of powers – which it is clearly not -- particularly since it was done in secret and ex-parte. Because Mr. Klayman believed and asserted that the DCCA had issued the suspension order in error, he decided to challenge it via a Petition for Rehearing by the Panel as well as Petition for Rehearing En Banc, and at all material times, Defendants were aware that these challenges were ongoing. W.D. Comp. ¶ 18-19.

However, as part of their "jihad" against Mr. Klayman, his colleagues and his family,

4

Defendants set out in secret to vindictively to tortuously interfere with Mr. Klayman's profession as a conservative public interest attorney by secretly sending out *ex parte* letters, without authority to do so, to various courts and other jurisdictions – where they are not involved -- all around the country notifying them about the DCCA order, which was not even fully adjudicated at the time. W.D. Comp. ¶ 20. These *ex parte* letters were sent in secret without even copying Mr. Klayman with the correspondence to the Western District of Texas and the Northern District of Texas, where Mr. Klayman had client matters pending at the time and was admitted.

Indeed, Defendants concede that there is no legal authority for them to have sent out these secretive *ex parte* communications, writing in their Motion for Injunction Against Vexatious Litigation By Plaintiff: "….Mr. Klayman's contention that the D.C. Rules of Professional Conduct to not expressly authorize notification of his suspension to other courts is inapposite." ECF No. 21 at 19 The key word is "inapposite" in the context Defendants' tortious interference with Mr. Klayman's representation of his clients in other jurisdictions which do not concern them, its use is simply meaningless and only an incoherent dodge to try to legitimize a bogus argument that has no legal basis. In short, Defendants admit that they have no legal jurisdictional authority to have contacted and intervene in these courts; rather it is obvious that they only did so to vindictively interfere tortiously in Mr. Klayman's practice there on behalf of his clients.

Lastly, on numerous occasions, Mr. Klayman asked the Defendants to provide copies of these secretive *ex parte* letters and communications, but they always flatly refused to do so, strongly evidencing that even Defendants knew what they were doing was wrong and had something to hide. There is still no telling exactly what was communicated to these other courts and jurisdictions, where Defendants had no authority to "butt in." To the extent that notification

of any suspension was required for other jurisdictions, this was for Mr. Klayman to undertake, rather than the unsolicited business of the partisan Defendants. Thus, once again, he was left with no recourse but to file these cases.

### A. *Klayman v. Porter et al*, 20-cv-2526 (N.D. TX.) Transferred as 20-cv-3579

At the time, Mr. Klayman was Plaintiffs' counsel in had a class action lawsuit titled *Buzz Photo v. People's Republic of China*, 3:20-cv-656 (N.D. Tx.). Mr. Klayman was also representing Sargent Demetrick Pennie in a defamation case titled *Pennie v. Martin et al*, 3:19-cv-1945 (N.D.Tx.) which was on appeal before the U.S. Court of Appeals for the Fifth Circuit. As a result of the *ex parte* letter sent by the Defendants, N.D. Comp. Ex. 5, the Honorable Jane Boyle of the Northern District ordered Mr. Klayman's electronic filing privileges be removed and that he not file any more cases before the Court. N.D. Comp. ¶ 27-28.

### B. *Klayman v. Porter et al*, 20-cv-1014 (W.D. TX.) Transferred as 20-cv-3109

At the time, Mr. Klayman was involved in a case styled *Corsi v. Infowars et al*, 1:20-cv-298, where Mr. Klayman was a Plaintiff representing himself *pro se*, and the other Plaintiff, Dr. Jerome Corsi, also Mr. Klayman's client in other cases, was also litigating his claims of defamation and related causes of action. W.D. Comp. ¶ 32. As a result of Defendants' secretive *ex parte* letter, Mr. Klayman's electronic filing privileges were removed by the Western District of Texas, and he was informed that it was due to *ex parte* communications by Defendants. This again severely impacted him ability to participate in the litigation. W.D. Comp. ¶36.

### C. *Klayman v. Kaiser et al*, 1:21-cv-965 (D.D.C.)

In addition to tortuously interfering with him before the Northern District of Texas and the Western District of Texas, Defendants also sent out *ex parte* communications to the Ninth Circuit, going so far as to inform them about confidential ongoing disciplinary proceedings

which are still pending before the DCCA. This is truly extraordinarily harmful behavior by Defendants. This is the subject of a case originally filed in the Northern District of California and transferred to the District of Columbia as *Klayman v. Kaiser et al*, 1:21-cv-965 (D.D.C).

In sum, Mr. Klayman had no choice but to file these cases in order to (1) defend himself from the gross misconduct of Defendants resulting in tortious interference and abuse of process, and (2) to prevent any further harm by Defendants in the form of more *ex parte* communications to other Courts.

## II. LEGAL STANDARD

Fed. R. Civ. P. 8(a)(2) states that a pleading need only include "a short and plain statement of the claim showing that the pleader is entitled to relief." When reviewing a Fed. R. Civ. P. 12(b)(6) motion to dismiss, the court must "accept the complaint's allegations as true and draw all reasonable inferences in favor of the non-moving party*." Gordon v. United States Capitol Police*, 778 F.3d 158, 163-164 (D.C. Cir. 2015).

A complaint "does not require detailed factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (U.S. 2009) (internal quotations omitted). To survive a motion to dismiss, a complaint need only "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id*. (internal quotations omitted). As such, a motion to dismiss at this stage must be decided solely on what Mr. Klayman has plead in his complaint, taken as true.

## III. THE LAW

### A. Texas Substantive Law Governs This Action

In a transparent attempt to apply their self-conferred "absolute immunity," which in any event does not apply as set forth below, Defendants argue that the District of Columbia substantive law governs this action. However, an actually applications of the four factors shows

that it is, in fact, Texas substantive law that governs. As set forth by the Defendants, Texas law applies the four factors outlined in the *Restatement* to determine which state's substantive law applies: 1) where the alleged injury occurred, (2) where the conduct causing the alleged injury occurred, (3) "the domicil[e], residence, nationality, place of incorporation and place of business of the parties, and" (4) the place where any relationship between the parties is centered.

Here, it is indisputable that the first factor – injury to Mr. Klayman – occurred solely in Texas, as the Defendants' tortuously interfered with Mr. Klayman's ability to practice law and represent himself in the state of Texas, where they lacked any authority to act. The second factor –"where the conduct causing the alleged injury occurred"- also points to Texas, not the District of Columbia. This is because the secret *ex parte* letters that were sent by Defendants were not tortious or injurious to Mr. Klayman until they were received and read by the Texas courts. There is therefore no "conduct causing alleged injury" if, for instance, Defendants mailed out letters, and they were lost in the mail. Only once the Texas courts received and read the secretive *ex parte* letters and communications did any injury occur. Thus, the second factor also must point to Texas. The third factor does not solely favor the District of Columbia either, contrary to Defendants' assertions. Mr. Klayman is a citizen of the state of Florida. His public interest group Freedom Watch, Inc. maintains a mail drop in the District of Columbia, but does not have a permanent physical presence there otherwise personally. Lastly, the fourth factor is completely inapplicable, as there is no relationship between the parties. Thus, the majority of the factors point to Texas substantive law being applicable.

This is especially crucial, as under Texas law, the self-conferred "absolute immunity" that Defendants assert, as provided under D.C. Bar Rule XI § 19(a) is clearly not applicable.

Accordingly, under this choice of law analysis, Defendants do not enjoy "absolute immunity" for their tortious conduct.

### B. Even Under District of Columbia Law, Defendants Do Not Have Absolute Immunity

As set forth above, Texas substantive law should be applied to this case, and as such, Defendants' self-conferred ultra-vires "absolute immunity" provided to themselves through the District of Columbia Bar Rules, is inapplicable. However, even if District of Columbia substantive law were to apply, Defendants would still not enjoy absolute immunity for their tortious conduct.

*First and foremost*, the source of the "absolute immunity" cited by this Court, as well as the District Court, is the District of Columbia Bar Rules ("Bar Rules"). *See* D.C. Bar R. XI § 19(a). However, the Preamble of the Bar Rules sets forth that (1) the District of Columbia Bar is created by the District of Columbia Court of Appeals as an "official arm of the Court" and (2) the District of Columbia Court of Appeals promulgated the Bar Rules itself. Thus, the District of Columbia Court of Appeals has granted itself "absolute immunity."

This flies in the face of well-established precedent that it is not a court's duty much less right to create law, but only to interpret it. "To begin with, it is inappropriate to give weight to Congress' unenacted opinion when construing judge-made doctrines, because doing so allows the Court to create law and then effectively codif[y] it based only on Congress' failure to address it. **Our Constitution, however, demands that laws be passed by Congress and signed by the President**. Art. I, §7." *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 299 (2014) (emphasis added) (internal citation and quotations omitted). *See also Wilder-Mann v. United States*, 1993 U.S. Dist. LEXIS 9166, at *3 (June 27, 1993) ("The Court doubts that it has the

9

power to create law for the District of Columbia and thereby create jurisdiction for itself under the FTCA.").

Here, the District of Columbia Court of Appeals has simply decided that it enjoys absolute immunity on its own. This "absolute immunity" was not legislated by Congress or District of Columbia legislators. This is not the function of a court and is wholly improper.

Indeed, this is actually the express role of the District of Columbia City Council, as set forth on their website:

> As the central and chief policy-making body for the District of Columbia, the Council's mission is to provide strong, innovative and effective leadership for the benefit of residents across the city. **The Council's central role as a legislative body is to make laws**. However, its responsibilities also include oversight of multiple agencies, commissions, boards and other instruments of District government. Led by the Council Chairman, the members of the Council are working to improve the quality of life in District neighborhoods by ensuring safer streets, furthering education reform, developing a vibrant economy, and implementing groundbreaking programs. Working with the Mayor and the executive branch, the Council also plays a critical role in maintaining a balanced budget and the fiscal health of the District of Columbia government. (emphasis added).[8]

Thus, by in effect "legislating" absolute immunity for itself, the D.C Court of Appeals, through the Office of Disciplinary Counsel and the D.C. Bar., have usurped the role of the D.C. City Council.

*Secondly,* even if the District of Columbia Court of Appeals' self-granted "absolute immunity" were proper – again, it is not, as set forth above – it does not apply to the allegations set forth in the Complaint. The Court in *Richardson v. District of Columbia*, 711 F. Supp. 2d 115 (D.D.C. 2010), expressly found this grant of immunity only applies to conduct taken "in the course of [Bar officials'] official duties." Here, the sending of *ex parte* letters to other Courts in other jurisdictions, where Defendants have no jurisdiction, for the sole obvious purpose of

---

[8] https://dccouncil.us/about-the-council/

tortuously interfering with Mr. Klayman's legal practice in Texas courts, not within the jurisdiction or authority of the Defendants, is clearly outside the scope of any of Defendants' duties as District of Columbia ODC prosecutors. Mr. Klayman's claims against Defendants do not invoke their investigative or prosecutorial duties at all. To the extent that Defendants cite ABA Model Rule for Lawyer Disciplinary Enforcement 22 as evidence of their "duty" to provide notice to other courts, it is important to note that Defendants cited a non-binding model rule, only meant as a guide, to justify their conduct. Furthermore, an important distinction is the fact that Defendants sent out secretive *ex parte* letters despite knowing that Mr. Klayman was still challenging the DCCA order at the tie through Petitions for Rehearing En Banc. Thus, they were notifying other courts of what in effect was a non-final order, which is evidence that Defendants were intending to tortuously interfere with Mr. Klayman, and not following any model rule, as they now assert *ex post facto* as justification. This occurred not only in the Western District of Texas and the Northern District of Texas, but also the Ninth Circuit as set forth above, where Defendants also sent out *ex parte* communications to the Ninth Circuit, going so far as to gratuitously inform them about ongoing disciplinary proceedings which are still pending before the DCCA. This is a clear violation of Mr. Klayman's constitutional due process rights, as he has been deprived of any meaningful opportunity to defend himself before these jurisdictions due to the secret *ex parte* nature of Defendants' conduct.

*Third*, it is clear that even judicial immunity, much like prosecutorial immunity, does not apply to claims for injunctive relief. Numerous courts have made this finding, including the Lower Court. "…[J]udicial immunity is not a bar to prospective injunctive relief against a judicial officer acting in her judicial capacity," *Moten v. Hatch*, 2011 U.S. Dist. LEXIS 97661, at *3 (D.D.C. Aug. 25, 2011). *See also Livingston v. Guice*, 1995 U.S. App. LEXIS 29238 (4th

11

Cir. Oct. 18, 1995) ("Equally clear, however, is the principle that judges are not absolutely immune from suits for prospective injunctive relief. *Pulliam v. Allen*, 466 U.S. 522, 536-543, 80 L. Ed. 2d 565, 104 S. Ct. 1970 (1984). "Absolute" immunity, therefore, is only absolute insofar as it limits claims for *damages* brought against judges.") *Id*. at 10.

Mr. Klayman has asked for injunctive relief in his Complaint, and accordingly, it is clear that any grant of "absolute immunity," at a bare minimum, should not have applied to those claims.

Accordingly, even if District of Columbia substantive law was applicable, which it is not, Defendants simply do not enjoy absolute immunity for their conduct here.

### C. Mr. Klayman Has Properly Pled Causes of Action

#### 1. Tortious Interference

The elements of a claim for tortious interference with contractual relationship are the (1) existence of a valid contractual or other business relationship; (2) the defendant's knowledge of the relationship; (3) the defendant's intentional interference with that relationship; and (4) resulting damages." *Robert Half Int'l Inc. v. Billingham*, 315 F. Supp. 3d 419, 436 (D.D.C. 2018). Similarly, the elements of a claim for tortious interference with prospective economic advantage are substantially the same, except the Plaintiff must show "the existence, knowledge, and intentional procurement of a breach of a prospective advantageous business transaction." *Teltschik v. Williams & Jensen, PLLC*, 683 F. Supp. 2d 33, 56 (D.D.C. 2010).

Here, Mr. Klayman had business relationships with his clients in Texas, as well as with the courts in Texas. It is also clear that Defendants knew of these relationships and Mr. Klayman's admissions before these courts, as that is the only possible reason for them to have sent out secretive *ex parte* letters to the Northern District of Texas and the Western District of

12

Texas. If they did not have knowledge of these relationships, then why would they have sent these secretive *ex parte* communications? The Complaint also expressly alleges interference with these relationships in the form of these *ex parte* letters. N.D. Comp. ¶ 16; W.D. Comp. ¶ 17. Lastly, the Complaint also specifically alleges damage suffered by Mr. Klayman. With regard to his business relationships with the Courts, he was deprived of the ability to e-file, which is clearly a non-performance. With regard to his clients, Mr. Klayman specifically alleged injury as well. N.D. Comp. ¶ 35; W.D. Comp. ¶ 36. It is easy to see how this is the case, as being deprived of the ability to e-file suddenly in the middle of a case would obviously cause an interrupted representation of Mr. Klayman's clients, among other aspects of the tortious interference. However, if the Court requires more specificity in this regard, Mr. Klayman respectfully requests leave to amend.

Accordingly, as shown above, Mr. Klayman has more than "plausibly" pled the elements of a claim for tortious interference against Defendants as required under *Twombly* - (1) existence of a valid contractual or other business relationship; (2) the defendant's knowledge of the relationship; (3) the defendant's intentional interference with that relationship; and (4) resulting damages - and their motion to dismiss in this regard must be denied.

### 2. Abuse of Process

Abuse of process is use of the legal system to accomplish some end which is without the regular purview of the process, or which compels the party against whom it is used to do some collateral thing which he could not legally and regularly be required to do.' *Scott v. Dist. of Columbia,* 101 F.3d 748, 755 (D.C. Cir. 1996). This is codified in D.C. Code § 22-1831 states that abuse of process "means the use or threatened use of law or legal process, whether administrative, civil, or criminal, in any manner or for any purpose for which the law was not

designed, to exert pressure on another person to cause that person to take some action or refrain from taking some action." *See also Williams v. City Stores Co.*, 192 A.2d 534, 537 (D.C. 1963) ("The action will lie even though the process has been validly issued, and regardless of whether there was probable cause for its issuance, or whether a prior proceeding has terminated in favor of the present plaintiff.") As the tort of abuse of process has been clearly recognized by District of Columbia common law, and even codified by the District of Columbia, there can simply be no argument that absolute immunity applies.

Here, Defendants have abused process by sending out secretive *ex parte* communications to Courts around the country for the sole purpose of tortuously interfering with Mr. Klayman's practice of law in other jurisdictions. The "ulterior motive" is shown by the fact that Defendants chose to send out these *ex parte* communications while they were aware that Mr. Klayman was still challenging the June 11 DCCA order through Petitions for Rehearing, and therefore the June 11, DCCA order was not effectively final, and could be reversed. The only possible justification for the timing of these *ex parte* communications—where Defendants could not even wait for a final adjudication—clearly evidences their ulterior motive to harm Mr. Klayman and his clients through the process of sending notice to other jurisdictions of the June 11 DCCA order.

### 3. Injunctive Relief

Defendants argue that the Court should deny Mr. Klayman injunctive relieve under the *Younger* abstention doctrine. However, the Supreme Court in *Sprint Communs., Inc. v. Jacobs*, 571 U.S. 69 (2013) limited the application of the *Younger* abstention doctrine to only three situations: (1) intrusion into ongoing state criminal prosecutions, (2) certain "civil enforcement proceedings" and (3) pending "civil proceedings involving certain orders…uniquely in furtherance of the state court's ability to perform their judicial functions." *Id*. Given the very

14

limited nature of this doctrine, particularly as applied to the facts of the two cases now assigned to this honorable Court, it is clear that Courts should not strain to find that it is applicable.

Furthermore, it is indisputable that there exists a "bad-faith" exception to the *Younger* doctrine, which this Court has defined as "where 'the pending state action was brought in bad faith or for the purpose of harassing' the federal plaintiff…." *JMM Corp. v. District of Columbia*, 363 U.S. App. D.C. 160, 170 (2004). Furthermore, other courts have found:

> A showing that a prosecution was brought in retaliation for or to discourage the exercise of constitutional rights "will justify an injunction regardless of whether valid convictions conceivably could be obtained." *Fitzgerald v. Peek*, 636 F.2d 943, 945 (5th Cir.1981). The state does not have any legitimate interest in pursuing such a prosecution; "[p]erhaps the most important comity rationale of Younger deference—that of respect for the State's legitimate pursuit of its substantive interests—is therefore inapplicable." *Wilson v. Thompson*, 593 F.2d 1375, 1383 (5th Cir.1979).

*Lewellen v. Raff*, 843 F.2d 1103, 1109–10 (8th Cir. 1988). "When, however, a state bar acts in bad faith or to retaliate against First Amendment protected activity, the courts should not abstain." *Hensler v. District Four Grievance Committee*, 790 F.2d 390, 391 (5th Cir.1986). "Abstention would serve no purpose because a state cannot have a legitimate interest in discouraging the exercise of constitutional rights, or, equally, in continuing actions otherwise brought in bad faith, thereby reducing the need for deference to state proceedings." *Cullen v. Fliegner*, 18 F.3d 96, 104 (2d Cir. 1994).

Here, the conduct of Defendants is textbook bad faith, as their sole intent was to vindictively harass and interfere with Mr. Klayman's legal practice in other jurisdictions. *See also* Plaintiff's Opposition to Motion for Injunction Against Vexatious Litigation by Plaintiff, which should be read in conjunction with this instant brief as well. Sending out "notice" of a non- fully adjudicated disciplinary order simply cannot be construed any other way. Even if Defendants really believed that they had the right to send notice of the June 11 DCCA order to

15

other courts, they could have simply waited for Mr. Klayman to exhaust his legal remedies and for the order to be fully adjudicated via Petitions for Rehearing. By preemptively sending out secret *ex parte* notices, Defendants clearly intended to harm and prejudice Mr. Klayman's standing with other courts regardless of the final outcome of the June 11 DCCA order. This is bad faith, plain and simple.

Finally, Plaintiff Klayman respectfully requests and respectfully is entitled as a matter of law to an evidentiary hearing, trial and at a minimum discovery on his complaint and request for preliminary injunction under Rule 65. Injunctions and Restraining Orders and LcvR65.1.

## IV.   CONCLUSION

Based on the foregoing, Defendants' Motion to Dismiss must be denied and this matter proceed to an evidentiary hearing, trial or at a minimum discovery forthwith. Plaintiff incorporates by reference his Opposition to Motion for Injunction Against Vexatious Litigation by Plaintiff, also filed today.

Date: May 10, 2021                                              Respectfully submitted,

                                                                */s/ Larry Klayman*
                                                                Larry Klayman
                                                                7050 W. Palmetto Park Rd
                                                                Boca Raton, FL, 33433
                                                                Tel: (561)-558-5336
                                                                Email: leklayman@gmail.com

                                                                Plaintiff Pro Se

## CERTIFICATE OF SERVICE

I, Larry Klayman, hereby certify that on this day, May 10, 2021 a copy of the foregoing was filed via this Court's e-filing system and served upon all parties and/or counsel of record through Notices of Electronic Filing.

>                                              */s/ Larry Klayman*_____
>                                              Larry Klayman