# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

LARRY KLAYMAN

        Plaintiff,

v.

JULIA PORTER, HAMILTON FOX III, and
LAWRENCE BLOOM

        Defendants.

**Case Bo.: 20-cv-3109, consolidated with Case No. 20-cv-3579 (DLF)**

## PLAINTIFF'S REPLY TO OPPOSITION TO REQUEST FOR EVIDENTIARY HEARING OR TRIAL, AND CROSS MOTION FOR SANCTIONS UNDER 28 U.S.C. § 1927 AND THE COURT'S INHERENT AUTHORITY

Date: May 26, 2021

Respectfully submitted,

*/s/ Larry Klayman*
Larry Klayman
7050 W. Palmetto Park Rd
Boca Raton, FL, 33433
Tel: (561)-558-5336
Email: leklayman@gmail.com

Plaintiff Pro Se

1

**MEMORANDUM OF LAW**

Plaintiff Larry Klayman ("Mr. Klayman") hereby submits the following in reply to responds to Defendants Lawrence Bloom, Hamilton Fox, and Julia Porter's ("ODC Defendants") Opposition to Plaintiff's Cross-Motion for Sanctions and Evidentiary Hearing. ECF No. 51.

## I.      INTRODUCTION

The District of Columbia Bar Disciplinary Counsel ("ODC") showed its hand in its brief, stating that "[p]laintiff's attempt to shift blame to Defendants for his serial lawsuits against them that stem from his disciplinary proceedings is reprehensible." This evidences the vitriol and animus that Defendants have openly exhibited against Mr. Klayman throughout past few years in their never-ending quest to either have Mr. Klayman disbarred or bankrupt him as a form of *de facto* disbarment. Defendant Porter brazenly admitted as much during the Hearing Committee phase in ODC's most recent attack on Mr. Klayman, stating publicly that Mr. Klayman "should not continue to have the privilege of being a lawyer," even when the Hearing Committee could find no ethics violation. Exhibit 1. This is not for Defendant Porter or her cohorts at ODC to decide. Instead, what Defendant Porter and her ODC colleagues are tasked to do is to "to protect members of the D.C. Bar from unfounded complaints." W.D. Comp ¶ 9. ODC Defendants have clearly not done so.

What they have done, instead, is engage in what amounts to a "political jihad" against Mr. Klayman, as well as other conservative and Republican attorneys in the District of Columbia. During the Trump years in particular, ethics complaints were filed, accepted and

initiated against Trump White House Counsellor Kellyanne Conway[1] over remarks she made on cable news, against former Trump Attorney General William Barr[2] (the complaint was outrageously and incredibly filed by all prior presidents of the bar as well as a former senior bar counsel) for withdrawing the indictment of General Mike Flynn and for remarks he made on Fox News, Senators Ted Cruz[3] and Josh Hawley[4] over their role in advocating for President Trump in the last election, and of course former U.S. Attorney Rudy Giuliani[5] over his representation of President Trump, to name just a few. To the contrary, when a complaint was filed against fellow leftist Democrat lawyer David Kendall of Williams & Connolly over his admitted involvement in the destruction of Hillary Clinton's 33,000 emails, many classified, and illegally retained on a private server, which complicity is not even in dispute, ODC summarily and quickly rejected a complaint filed by conservative lawyer and public interest advocate Ty Clevenger, who was also pursued by ODC with the goal of disbarring him as well.[6]

With regard to Mr. Klayman, ODC has entertained meritless complaint after meritless

---

[1] https://www.washingtonpost.com/politics/law-professors-file-misconduct-complaint-against-kellyanne-conway/2017/02/23/442b02c8-f9e3-11e6-bf01-d47f8cf9b643_story.html

[2] https://thehill.com/regulation/court-battles/508489-more-than-two-dozen-dc-bar-members-urge-disciplinary-probe-of-ag

[3] https://www.texasstandard.org/stories/lawyers-law-students-officially-file-grievances-seeking-to-disbar-senator-ted-cruz/

[4] https://thehill.com/homenews/state-watch/534783-attorneys-urge-missouri-supreme-court-to-probe-hawleys-actions

[5] https://www.law.com/newyorklawjournal/2021/03/03/nyc-bar-details-complaints-calling-for-full-attorney-discipline-investigation-of-giuliani/#:~:text=Under%20the%20New%20York%20state,censured%20or%20receive%20no%20punishment.

[6] Ty Clevenger, State bar prosecutors are flouting the law, protecting Hillary Clinton and her lawyers, LawFlog, available at: https://lawflog.com/?p=1389

3

complaint, forcing him to expend hundreds, if not thousands by now, of hours to defend, as well has hundreds of thousands of dollars in fees, costs, and lost time. ODC knows that even if it does not succeed via the formal method of disbarment via court ruling, it can and will still permanently destroy Mr. Klayman's ability to practice law by bankrupting him by forcing him to defend meritless complaint after meritless complaint. This is the only "reprehensible" behavior here.

To the extent that the numbers presented in ODC's brief are even accurate—allegedly "over $28,000 in out-of-pocket costs and over 1000 professional hours of pro bono representation"—it is Akin Gump's decision to expend those costs and hours on behalf of ODC at no cost to them. They can choose not to if they did not want to, and they likely would not be doing so if not for a *quid pro quo* of some kind from ODC. It is difficult to put anything past this current regime at ODC, which has shown itself to be highly politicized and prone to using their authority to further their personal interests.

This is in stark contrast to ODC of the past, under the leadership of the honest and now retired Bar Disciplinary Counsel Wallace "Gene" Shipp. Interestingly enough, this is evidenced through Defendants attempts to smear Mr. Klayman with a decades-old irrelevant cases in Defendant's Motion for An Injunction Against Vexatious Litigation by Plaintiff (hereinafter "Defendants' PI Motion"). Under the "old" and honest ODC, Mr. Klayman was expeditiously cleared of any wrongdoing by ODC with regard to these cases. Exhibit 2. There is no doubt that under the current regime, and the current leftist and anti-conservative and anti-Trump dominated political climate in the nation's capital, Defendants would have aggressively pursued the same charges against Mr. Klayman, despite knowing that they were meritless, simply to force him to expend his limited time and resources.

Mr. Klayman had been engaged in the legal practice in good standing for nearly forty-five (45) years in his home state of Florida and until only recently in the District of Columbia. He has been sanctioned by judges during this time, as almost all aggressive and litigators do, but he had never had any run ins with DC bar disciplinary counsel for his litigation conduct until this current ODC regime. As just one example, during the O.J. Simpson criminal trial, both Deputy District Attorney Marcia Clark and Johnnie Cochran were sanctioned multiple times by Judge Ito during this one trial.[7] Aggressive lawyers who zealously represent their clients, as they are supposed to do, sometimes lock horns with judges. Judges, unlike lawyers, have the ability to sanction attorneys, while the latter have no means to sanction jurists and write opinions about them when they stray from judicial ethics and the law.

## II.     THE LAW

### A.     The Court Should Sanction Defendants Pursuant to 28 U.S.C. § 1927 and/or its Inherent Authority

Contrary to ODC's baseless assertions, Mr. Klayman has more than set forth grounds for sanctions against Defendants and their counsel pursuant to 28 U.S.C. § 1927:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

28 U.S.C. § 1927. Indeed, any attorney who "so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess of costs, expenses, and attorneys' fees reasonably incurred because of such conduct." *Id*. The purpose of 28 U.S.C. § 1927 is to allow the Court "to access attorney's fees against an attorney

---

[7] https://www.nytimes.com/1995/03/04/us/judge-fines-two-lawyers-for-simpson.html; https://archive.seattletimes.com/archive/?date=19950721&slug=2132604

5

who frustrates the progress of judicial proceedings." *United States v. Wallace*, 964 F.2d 1214, 1218 (D.C. Cir. 1992).

Defendants and their counsel's bad faith and frivolous filing of this PI Motion is precisely the kind of vexatious misconduct 28 U.S.C. § 1927 seeks to protect against. Here, all the elements are met. Defendants and their counsel acted unreasonably and vexatiously when they strategically filed their PI Motion which they knew or had reason to know is contrary to law. Undoubtedly, the PI Motion "multiplie[d] the proceedings[.]" 28 U.S.C. § 1927.

In addition to the powers deriving from 28 U.S.C. § 1927, it is well established in the D.C. Circuit that when "rules alone do not provide courts with sufficient authority to protect their integrity and prevent abuses of the judicial process," courts have an inherent power to impose sanctions for abusive litigation practices. *Shepherd v. American Broad. Cos.*, 62 F.23d 1469, 1474 (D.C. Cir. 1995). Courts also have inherent authority to sanction litigation misconduct when a party and his or her counsel has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Alyeska Pipeline Service Co. v. Wildnerness Society*, 421 U.S. 240, 258-59 (1975).[8] Such power is government "by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 42 (1991). The Court's inherent authority is most commonly invoked when there is no court order in place regarding the conduct at issue. *See, e.g., Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 106-07 (2d Cir. 2002) ("[e]ven in the absence of a discovery order, a court may impose sanctions on a party for misconduct in discovery under its inherent power to manage its own affairs").

---

[8] Importantly, Plaintiff Klayman has engaged in no alleged litigation misconduct in the two related cases before this Court.

6

Bad faith "may be found, not only in the actions that led to the lawsuit, but in the conduct of the litigation." *Hall v. Cole*, 412 U.S. 1, 4 (1973); *see also Am. Hosp. Ass'n v. Sullivan*, 938 F.2d 216, 219-20 (D.C. Cir. 1991) (bad faith includes "the filing of a frivolous complaint or meritless motion, or discovery-related misconduct").

Here, when Defendants and their counsel multiplied the pleadings herein that were unnecessary and non-meritorious – and contrary to fact and law – requiring Plaintiff Klayman, acting *pro se*, to spend a considerable amount of time and financial resources preparing a response, Defendants and their counsel acted in bad faith for strategic reasons. Defendants' do not mind forcing Mr. Klayman to expend still more time and expense, in order to attempt to drive him and his legal practice, if not family's well-being, into virtual bankruptcy.

Furthermore, Defendants and their counsel must be sanctioned, and judgment entered for Mr. Klayman, for putting forth false and perjurious affidavits concerning the service of process of the underlying complaint in an attempt to smear Mr. Klayman before this Court. Tellingly, Defendants appear to take issue with the affidavit of Brandon Snesko, falsely dismissing it as the "second-hand account of the owner of the company that employs the process server hired by the plaintiff…." Yet, Defendants present not a single affidavit to actually rebut Mr. Snesko for the simple reason that they cannot do so. This shows the false, fraudulent, and perjurious nature of their original affidavits sworn to under oath by the Defendants. On the other hand, Mr. Klayman is attaching and incorporating by reference the affidavit of Kion Lathan, the actual process server involved in the service of the ODC Defendants. Exhibit 3. This conclusively shows that the ODC Defendants have put forth falsified perjurious affidavits, and that they and their counsel knowingly, or a minimum recklessly, provided them to the Court. This is conduct which requires a severe sanction of judgment being entered against Defendants. *Young v. Office of the United*

*States Senate Sergeant at Arms,* 217 F.R.D. 61, 70 (D.D.C. 2003) ("Furthermore, dismissal is the appropriate sanction where a party manufactures evidence which purports to corroborate its substantive claims….Dismissal is particularly appropriate where a plaintiff seeks to enhance the merits of her case with fabricated evidence and fictionalized testimony.") This conduct also necessitates a referral ironically to the District of Columbia Bar Disciplinary Bar Counsel, which *ipso facto* creates also creates a huge conflict of interest for the ODC Defendants' counsel in continuing to represent them. This outrageous, unethical, perjurious and frankly criminal conduct by Defendants and their counsel is a clear violation of District of Columbia Rule of Professional Conduct 3.3(a), which provides:

> (a) A lawyer shall not knowingly:
>    (1) Make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer, unless correction would require disclosure of information that is prohibited by Rule 1.6;
>    (2) Counsel or assist a client to engage in conduct that the lawyer knows is criminal or fraudulent, but a lawyer may discuss the legal consequences of any proposed course of conduct with a client and may counsel or assist a client to make a good-faith effort to determine the validity, scope, meaning, or application of the law…

Defendants and their lawyers are licensed members of the District of Columbia Bar and must be held to account to and under the same ethical and legal standards as other members of the bar.

### B. An Evidentiary Hearing or at a Minimum Discovery is Needed As a Matter of Due Process

Rule 65 of the Federal Rules of Civil Procedure contemplates an evidentiary hearing when substantial constitutional rights are implicated, such by abridging Plaintiff's right to file suit pro se under the Sixth Amendment to the Constitution. And, in granting such an evidentiary hearing, the Court may in fact accelerate the final adjudication of the case, saving valuable resources for itself and the parties. For instance, subpart (a) (2) to Rule 65 provides:

> Consolidating the Hearing with the Trial on the Merits. Before or after the beginning the hearing on a motion for a preliminary injunction, the court may advance the trial on the merits and consolidate it with the hearing. Even when consolidation is not ordered, evidence that is received on the motion and that would be admissible at trial becomes part of the trial record and need not be repeated at trial. But the court must preserve any party's right to a jury trial."

Subpart (c) to Rule 65, which would be applicable in the unlikely event this honorable Court overrides Mr. Klayman's constitutional rights, provides:

> SECURITY. The court may issues a preliminary injunction only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained. The United States, its officers, and its agencies are not required to give security.

As Defendants herein are not the "United States, its officers, and its agencies," they must give security for the projected costs and damages to Mr. Klayman in the unlikely event that a preliminary injunction restraining his sacrosanct constitutional rights is entered.

The right to a full hearing, under these circumstances, in a preliminary injunction action is well-established under the Federal Rules of Civil Procedure and binding common law. This is even further amplified when the movant seeks a permanent injunction, as is the case here. As a matter of course, no permanent injunction can issue without first a preliminary injunction, and/or a full trial.

The Court in *Manzanita Band of the Kumeyaay Nation v. Wolf*, 2020 U.S. Dist. LEXIS 192507 found:

> A court can grant a preliminary injunction "based on less formal procedures and on less extensive evidence than in a trial on the merits, but if there are genuine issues of material fact raised in opposition to a motion for a preliminary injunction, an evidentiary hearing is required.

*See also Cobell v. Norton*, 391 F.3d 251, 261 (D.C. Cir. 2004) ("A preliminary injunction may be granted based on less formal procedures and on less extensive evidence than in a trial on the

9

merits, but if there are genuine issues of material fact raised in opposition to a motion for a preliminary injunction, an evidentiary hearing is required. Particularly when a court must make credibility determinations to resolve key factual disputes in favor of the moving party, it is an abuse of discretion for the court to settle the question on the basis of documents alone, without an evidentiary hearing."); *see also Page Communications Engineers, Inc. v. Froehlke*, 475 F.2d 994 (D.C. Cir.); *NOW v. Operation Rescue*, 747 F. Supp. 772 (D.D.C.); *DSE, Inc. v. United States*, 169 F.3d 21 (D.C. Cir.).

There are numerous fact-intensive issues that must be resolved, and which can only be done so via an evidentiary hearing.

First, there are numerous questions of fact that need to be resolved with regard to the numerous old cases that Defendants have brought to the Court's attention in their 400 plus page PI, which are not relevant to this instant matter in any event. If Defendants are relying on these old cases as part of their request for injunctive relief, Mr. Klayman must also be allowed an evidentiary hearing to fully flush out and make a factual record concerning these old cases. The ODC Defendant's argument that no hearing is necessary simply because Mr. Klayman is familiar with these cases is unavailing. It is not Mr. Klayman's familiarity that matters. It is the Court's.

Second, numerous questions of fact pervade this instant action, as Defendants have gratuitously sent out *ex parte* secret letters and conducted secret communications – without the authority or jurisdiction to do so -- to numerous courts all around the country with no notice to Mr. Klayman in order to tortiously interfere with him. An evidentiary hearing or trial is needed to fully develop exactly why Mr. Klayman had no choice but to file these instant actions. The ODC Defendants assert that there is no hearing necessary because this conduct is covered by "absolute immunity." However, as set forth previously by Mr. Klayman, the District of

Columbia Court of Appeals' self-granted "absolute immunity" does not apply to the allegations set forth in the Complaint. The Court in *Richardson v. District of Columbia*, 711 F. Supp. 2d 115 (D.D.C. 2010), expressly found this grant of immunity only applies to conduct taken "in the course of [Bar officials'] official duties." An evidentiary hearing and, at a minimum, discovery is necessary to determine the exact details of the ODC Defendants' conduct, so as to determine whether each action was taken "in their course of their official duties." It is highly presumptuous and arrogant to simply assert that they are covered by absolute immunity without an evidentiary hearing and discovery. Defendants do not have an unbridled right to do as they please without legal recourse to their victims, the latest of which is Mr. Klayman.

Third, an evidentiary hearing or trial is necessary with regard to Defendants' falsified affidavits, which have been unmasked as false and perjurious by Mr. Snesko's affidavit, as well as Mr. Lathan's affidavit. If it is the ODC Defendants' tact to attack the credibility of Mr. Snesko, then Mr. Snesko can be made to testify so that the Court can have an opportunity to judge demeanor and see that he is 100% honest in person. The same applies to Mr. Lathan. On the other hand, Mr. Klayman must be allowed to put the ODC Defendants on the stand as well, since it is their credibility that is actually under question, after having been shown to have egregiously put forth falsified and perjurious affidavits through their counsel.

### III.     CONCLUSION

Based on the foregoing, Mr. Klayman respectfully requests that the Court enter sanctions against the ODC Defendants for both submitting falsified and perjurious affidavits to the Court as well as vexatiously multiplying the pleadings. Mr. Klayman respectfully requests that the Court summarily deny both Defendants' Motion to Dismiss and their Motion for Injunction

Against Vexatious Litigation by Plaintiff on these grounds and enter judgement in favor of Mr. Klayman.

If a judgment against Defendants is not entered as a sanction for their egregious misconduct, the Court must at a minimum hold an evidentiary hearing after allowing discovery on these issues.

Lastly, the Court must also refer the false and perjurious affidavits presented to the Court by the ODC Defendants, through their counsel at Akin Gump, to the District of Columbia Bar Counsel, the very parties they represent, to open disciplinary proceedings against them. *See* District of Columbia Rule of Professional Conduct 3.3(a), 8.4.

Date: May 26, 2021                                               Respectfully submitted,

                                                                                     */s/ Larry Klayman*
                                                                                    Larry Klayman
                                                                                    7050 W. Palmetto Park Rd
                                                                                     Boca Raton, FL, 33433
                                                                                     Tel: (561)-558-5336
                                                                                     Email: leklayman@gmail.com

                                                                                    Plaintiff Pro Se

## **CERTIFICATE OF SERVICE**

I, Larry Klayman, hereby certify that on this day, May 26, 2021 a copy of the foregoing was filed via this Court's e-filing system and served upon all parties and/or counsel of record through Notices of Electronic Filing.

                                                      */s/ Larry Klayman*_____
                                                      Larry Klayman