**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| LARRY KLAYMAN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case Nos. 20-3109, 21-3579, 21-965 |
| v. | ) |
| | ) |
| MATTHEW KAISER, JULIA PORTER, HAMILTON P. FOX, III, LAWRENCE K. BLOOM, | ) |
| | ) |
| | ) |
| Defendants. | ) |
| | ) |

## DEFENDANTS' JOINT MOTION TO DISMISS

Defendants Julia Porter, Hamilton Fox, III, Lawrence K. Bloom, and Matthew Kaiser, all of whom are lawyers employed by the District of Columbia Bar's Office of Disciplinary Counsel or are members of the District of Columbia Board on Professional Responsibility, respectfully move the Court to dismiss with prejudice these consolidated actions pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for the reasons set forth in the accompanying Memorandum in Support of Defendants' Joint Motion to Dismiss. A proposed order is filed with this motion.

Dated: November 19**,** 2021

Respectfully submitted,

*/s/ Mark J. MacDougall*
Mark J. MacDougall (D.C. Bar No. 398118)
Caroline L. Wolverton (D.C. Bar No. 496433)
Samantha J. Block (D.C. Bar No. 1617240)
AKIN GUMP STRAUSS HAUER & FELD LLP
2001 K Street, NW
Washington, DC 20006-1037
Tel: (202) 887-4000
Fax: (202) 887-4288

1

mmacdougall@akingump.com
cwolverton@akingump.com
samantha.block@akingump.com

*Counsel for Defendants Julia Porter,*
*Hamilton Fox, III, Lawrence K. Bloom*


*/s/ Preston Burton*
Benjamin B. Klubes (Bar No. 428842)
Preston Burton (Bar No. 426378)
BUCKLEY LLP
2001 M Street, NW, Suite 500
Washington, DC 20036
(202) 349-8000
bklubes@buckleyfirm.com
pburton@buckleyfirm.com

*Counsel for Defendant Matthew Kaiser*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| LARRY KLAYMAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case Nos. 20-3109, 21-3579, 21-965 |
| v. | ) | |
| | ) | |
| MATTHEW KAISER, JULIA PORTER, HAMILTON P. FOX, III, LAWRENCE K. BLOOM, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
THEIR JOINT MOTION TO DISMISS**

# TABLE OF CONTENTS

INTRODUCTION...................................................................................................................1

BACKGROUND...................................................................................................................2

    I.      The Office of Disciplinary Counsel and Board on Professional
           Responsibility ...............................................................................................2

    II.     Factual Background ......................................................................................3

LEGAL STANDARD.............................................................................................................7

ARGUMENT........................................................................................................................7

    I.      Plaintiff's Claims Are Precluded by Defendants' Absolute Immunity ............7

    II.     Plaintiff's Claim for Injunctive Relief Should Be Dismissed ........................11

    III.    The Complaints Should Be Dismissed on *Res Judicata* Grounds ...................13

    V.    District of Columbia Substantive Law Governs This Action ..........................14

          A.    California Choice-of-Law Rules Provide for D.C. Law to Apply........15

          B.    Texas Choice-of-Law Analysis ..........................................................18

    IV.   Failure to State a Claim for Relief ...............................................................20

          A.    The Complaints Fail to State a Claim for Tortious Interference........21

          B.    The Complaints Fail to State a Claim for Abuse of Process .............23

    CONCLUSION ......................................................................................................27

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A.I. Trade Fin., Inc. v. Petra Int'l Banking Corp.*,
    62 F.3d 1454 (D.C. Cir. 1995) ........................................................................21, 25

*In re APA Assessment Fee Litig.*,
    766 F.3d 39 (D.C. Cir. 2014) ..........................................................................21, 24

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)...............................................................................7, 17, 20

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)...........................................................................................7

*Blue Goose Growers, Inc. v. Yuma Groves, Inc.*,
    641 F.2d 695 (9th Cir. 1981) .............................................................................20

*Bown v. Hamilton*,
    601 A.2d 1074 (D.C. 1992) ...............................................................................18

*Boyd v. Pacifica Found.*,
    No. 13-CV-03672-JCS, 2013 WL 5979180 (N.D. Cal. Nov. 8, 2013)...................20

*Brown v. Carr*,
    503 A.2d 1241 (D.C. 1986) ...............................................................................14

*Casco Marina Dev., LLC v. D.C. Redevelopment Land Agency*,
    834 A.2d 77 (D.C. 2003) ...................................................................................14

*Competitive Techs. v. Fujitsu Ltd.*,
    286 F. Supp. 2d 1118 (N.D. Cal. 2003) .............................................................21

*Connors, Fiscina, Swartz & Zimmerly v. Rees*,
    599 A.2d 47 (D.C. 1991) ...................................................................................15

*Cooper v. Tokyo Elec. Power Co. Holdings, Inc.*,
    960 F.3d 549 (9th Cir. 2020) .......................................................................22, 23

*Cunningham v. District of Columbia*,
    584 A.2d 573 (D.C. 1990) ...................................................................................8

*Matter of Dallas Roadster, Ltd.*,
    846 F.3d 112 (5th Cir. 2017) .............................................................................20

*eDrop-Off Chi. LLC v. Burke*,
   No. CV 12-4095 GW, 2013 WL 12131186 (C.D. Cal. Aug. 9, 2013) ...........................21, 22

*Gifford v. Nat'l Enquirer, Inc.*,
   23 Media L. Rep. 1016 (C.D. Cal 1993) ...............................................................22

*Gutierrez v. Collins*,
   583 S.W.2d 312 (Tex. 1979)...............................................................................25

*Hall v. Hollywood Credit Clothing Co.*,
   147 A.2d 866 (D.C. 1959) .................................................................................18

*Hammervold v. Blank*,
   No. 4:20-CV-165, 2020 WL 4535914 (E.D. Tex. Aug. 6, 2020)....................................24, 25

*Harlow v. Fitzgerald*,
   457 U.S. 800 (1982) .....................................................................................9, 10

*Henry Schein, Inc. v. Stromboe*,
   102 S.W.3d 675 (Tex. 2002)..........................................................................24, 25, 26

*Houlahan v. World Wide Ass'n of Specialty Programs and Schools*,
   677 F. Supp. 2d 195 (D.D.C. 2010) ........................................................................18

*IMP Int'l, Inc. v. Zibo Zhongshi Green Biotech Co.*,
   No. EDCV141339JGBDTBX, 2015 WL 13357602 (C.D. Cal. Mar. 20, 2015) ....................20

*Innovatel Servs. Inc. v. First Bridge Merch. Sols., LLC*,
   No. 220CV07681SBAGRX, 2021 WL 3415218 (C.D. Cal. Mar. 19, 2021) ........................16

*Khanna v. State Bar of Cal.*,
   505 F. Supp. 2d 633 (N.D. Cal. 2007) ....................................................................21

*Klayman v. Fox*,
   No. 18-1579 (RDM), 2019 WL 2396538 (D.D.C. June 5, 2019)...................................*passim*

*Klayman v. Kaiser*,
   No. 1:21-cv-00965 (N.D. Cal. Dec. 30, 2020).....................................................*passim*

*Klayman v. Lim*,
   No. 18-2209 (RDM), 2019 WL 2396539 (D.D.C. June 5, 2019)...................................*passim*

*Klayman v. Lim*,
   Nos. 19-7099, 19-7100, 2020 WL 6038713 (D.C. Cir. Oct. 6, 2020) ...........................*passim*

*Klayman v. Porter*,
   No. 1:20-cv-03109 (W.D. Tex. Oct. 2, 2020)......................................................*passim*

*Klayman v. Porter*,
  No. 1:20-cv-03579 (N.D. Tex. Aug 26, 2020)..................................................... *passim*

*In re Klayman*,
  228 A.3d 713 (D.C. 2020) ....................................................................................3

*In re Klayman*,
  228 A.3d at 715–17...............................................................................................3

*Kugler v. Helfant*,
  421 U.S. 117 (1975)............................................................................................11

*Lamb v. Millennium Challenge Corp.*,
  No. 19-589 (RDM), 2020 WL 6484489 (D.D.C. Nov. 3, 2020) ...........................7

*Love v. Associated Newspapers, Ltd.*,
  611 F.3d 601 (9th Cir. 2010) ..............................................................................21

*Marsh v. Burrell*,
  850 F. Supp. 1493 (N.D. Cal. 1992) ....................................................................21

*MGE UPS Sys., Inc. v. Fakouri Elec. Eng'g, Inc.*,
  422 F. Supp. 2d 724 (N.D. Tex. 2006) ................................................................16

*Michaels v. NCO Fin. Sys., Inc.*,
  No. CV 16-01339 (TFH), 2020 WL 2800664 (D.D.C. May 29, 2020)..................18

*Middlesex Cty. Ethics Comm. v. Garden State Bar Ass'n*,
  457 U.S. 423 (1982)............................................................................................11

*Morowitz v. Marvel*,
  423 A.2d 196 (D.C. 1980) ...................................................................................18

*Motschenbacher v. R.J. Reynolds Tobacco Co.*,
  498 F. 2d 821 (9th Cir.) 1974 ..............................................................................22

*In re Nace*,
  490 A.2d 1120 (D.C. 1985) ...................................................................................9

*Nat'l Ass'n of Home Builders v. EPA*,
  786 F.3d 34 (D.C. Cir. 2015)...............................................................................13

*Newmyer v. Sidwell Friends Sch.*,
  128 A.3d 1023 (D.C. 2015) ...................................................................14, 15, 16

*Nwachukwu v. Rooney*,
  362 F. Supp. 2d 183 (D.D.C. 2005)......................................................................8

v

*Onyeoziri v. Spivok*,
44 A.3d 279 (D.C. 2012) ...............................................................................14, 15

*Pac. Gas & Elec. Co. v. Bear Stearns & Co.*,
50 Cal. 3d 1118 (1990) ........................................................................................16

*Robert Half Int'l Inc. v. Billingham*,
315 F. Supp. 3d 419 (D.D.C. 2018) ......................................................................14

*Scott v. District of Columbia*,
101 F.3d 748 (D.C. Cir. 1996) ..............................................................................18

*Simons v. Bellinger*,
643 F.2d 774 (D.C. Cir. 1980) .........................................................................8, 10

*In re Spikes*,
881 A.2d 1118 (D.C. 2005) .....................................................................................9

*Taylor v. Sturgell*,
553 U.S. 880 (2008)..............................................................................................13

*Teltschik v. Williams & Jensen, PLLC*,
683 F. Supp. 2d 33 (D.D.C. 2010).................................................................14, 16

*UMC Dev., LLC v. District of Columbia*,
401 F. Supp. 3d 140 (D.D.C. 2019) ......................................................12, 13, 14

*Van Dusen v. Barrack*,
376 U.S. 612 (1964)........................................................................................21, 24

*Waggoner v. Snow, Becker, Kroll, Klaris & Krauss*,
991 F.2d 1501 (9th Cir. 1993) ..............................................................................23

*In re Yagman*,
796 F.2d 1165 (9th Cir. 1986) .............................................................21, 22, 23

*Younger v. Harris*,
401 U.S. 37 (1971)................................................................................... *passim*

*Zuza v. Off. of the High Representative*,
857 F.3d 935 (D.C. Cir. 2017) ..............................................................................17

**Statutes**

D.C. Bar R. XI .........................................................................................................2

§ 4.........................................................................................................2, 17

§ 6............................................................................................................2

§ 6(a)(1) .............................................................................................................17

§ 4(e)(2) ..............................................................................................................2

§ 5(a) ...................................................................................................................2

§ 6(a) ...................................................................................................................2

§ 11(b) ...............................................................................................................19

§ 17(c) ...............................................................................................................17

§ 19(a) .......................................................................................................3, 7, 8, 9

**Other Authorities**

9th Cir. Local R. 46(c) .....................................................................................19

9th Cir. Local R. 46-2(c) ..................................................................................19

ABA Model Rule for Lawyer Disciplinary Enforcement .............................10, 19

BLACK'S LAW DICTIONARY (10th ed. 2014) ....................................................17

N.D. Tex. Local Civ. R. 83.8(d) ......................................................................19

*Restatement (Second) of Conflict of Laws* ..........................................24, 25, 26

RESTATEMENT (SECOND) OF TORTS .................................................................18

W.D. Tex. Local R. AT-7(e) ............................................................................19

## **INTRODUCTION**

The Defendants in these three consolidated cases, Julia Porter, Hamilton Fox, III, Lawrence K. Bloom, and Matthew Kaiser[1], are all lawyers employed by the District of Columbia Bar's Office of Disciplinary Counsel or are members of the District of Columbia Board on Professional Responsibility.  For the reasons stated herein, Defendants respectfully move the Court to dismiss with prejudice these consolidated actions pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

These three actions are yet another series of collateral attacks by Plaintiff Larry Klayman on official actions by members of the D.C. Office of Disciplinary Counsel and Board on Professional Responsibility relating to ongoing investigative proceedings as well as Plaintiff's suspension from the practice of law as ordered by the District of Columbia Court of Appeals.  Judge Moss rejected two prior collateral challenges as meritless, and the D.C. Circuit affirmed.  The D.C. Superior Court recently rejected Plaintiff's third collateral attack as baseless and sanctioned Plaintiff, under that court's equivalent of Rule 11 of the Federal Rules of Civil Procedure.

As each of these courts has ruled, D.C. Bar rules confer absolute immunity on officials who participate in D.C. Bar disciplinary proceedings for their official actions.  That immunity applies to each of the Defendants—Office of Disciplinary Counsel personnel (the Disciplinary Counsel for the D.C. Bar, Deputy Disciplinary Counsel and a Staff Attorney) and the Chair of the D.C. Board on Professional Responsibility.  The immunity conferred by the D.C. Court Rules establishing these enforcement components of the Bar precludes Plaintiff's claims here, claims based on the Office of Disciplinary Counsel's notice of Plaintiff's suspension to other courts where

---

[1] Mr. Kaiser is only a defendant in one of the three cases, Klayman v. Kaiser, Case No. 1:21-cv-00965.

1

Plaintiff is admitted to practice.  Even absent the immunity bar, Plaintiff's complaints – each of which assert essentially the same claims for tortious interference with contractual relations and abuse of process – fail to state a claim because they do not allege sufficient supporting facts.

Like Plaintiff's prior collateral attacks concerning his suspension, these actions should be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  The requests for unspecified injunctive relief in these complaints also must be dismissed based on the doctrine of *Younger* abstention to the extent it is directed to any of Defendants' actions with regard to Plaintiff's disciplinary proceedings.

## **BACKGROUND**

### I.  **The Office of Disciplinary Counsel and Board on Professional Responsibility**

The D.C. Court of Appeals established the D.C. Board on Professional Responsibility (the "Board") and the Office of Disciplinary Counsel ("ODC"), which serves as the chief prosecutor for disciplinary matters involving attorneys subject to the disciplinary jurisdiction of the D.C. Court of Appeals.  *See* D.C. Bar R. XI, §§ 4, 6.  The Board has authority to appoint "Disciplinary Counsel, Special Disciplinary Counsel, and such assistant disciplinary counsel and staff as may be required to perform the duties and functions of that office." *Id.* § 4(e)(2).  Disciplinary Counsel serve at the pleasure of the Board and are subject to the oversight authority of the D.C. Court of Appeals.  *See id.*  The Office of Disciplinary Counsel is responsible for investigating attorney misconduct and prosecuting disciplinary matters before Board-appointed Hearing Committees, the Board and the D.C. Court of Appeals.  *Id.* §§ 5(a), 6(a).

The D.C. Bar Rules grant members of the Office of Disciplinary Counsel, as well as members of the Board and Hearing Committees, absolute immunity:

> Members of the Board, its employees, members of Hearing Committees, Disciplinary Counsel, and all assistants and employees of Disciplinary Counsel, all persons engaged in counseling, evaluating or monitoring other attorneys pursuant to a Board or Court order or a diversion agreement, and all assistants or employees of persons engaged in such counseling, evaluating or monitoring *shall be immune from disciplinary complaint under this rule and from civil suit for any conduct in the course of their official duties.*

D.C. Bar Rule XI, § 19(a) (emphasis added).

## II.    Factual Background

On June 11, 2020, the D.C. Court of Appeals ordered a 90-day suspension of Plaintiff's license to practice law in the District of Columbia.  Compl., *Klayman v. Kaiser*, No. 1:21-cv-00965 (N.D. Cal. Dec. 30, 2020) ("965 Compl.") ¶ 20; Compl., *Klayman v. Porter*, No. 1:20-cv-03109 (W.D. Tex. Oct. 2, 2020) ("3109 Compl.") ¶ 17; Compl., *Klayman v. Porter*, No. 1:20-cv-03579 (N.D. Tex. Aug 26, 2020) ("3579 Compl.") ¶ 17; *In re Klayman*, 228 A.3d 713, 720 (D.C. 2020). That court accepted the findings of the D.C. Board on Professional Responsibility that Plaintiff violated the conflict-of-interest provision of Rule 1.9 of the D.C. Rules of Professional Conduct (as well as an analogous Florida rule) by representing individual clients in three lawsuits against Judicial Watch, all of which concerned matters in which Plaintiff had represented Judicial Watch in his former role as its general counsel.  *In re Klayman,* 228 A.3d at 715–17.  Following the suspension order, the Office of Disciplinary Counsel notified other courts in which Plaintiff is admitted or licensed to practice that he had been suspended.  3109 Compl. ¶ 20.  Plaintiff then began filing a series of lawsuits against Office of Disciplinary Counsel personnel, including three of the Defendants here, in different jurisdictions across the country.

On June 25, 2020, Plaintiff petitioned the D.C. Court of Appeals for rehearing of his suspension order.  Respondent Larry Klayman's Pet. for Reh'g, No. 18-BG-0100 (D.C. Jun. 25, 2020).  On July 6, 2020, the D.C. Court of Appeals denied that petition.  Order No. 18-

BG-0100 (D.C. July 6, 2020).  The appellate court denied Plaintiff's subsequent petition for rehearing *en banc* as untimely.  Order No. 18-BG-0100 (D.C. July 31, 2020).  At the same time, the D.C. Court of Appeals denied Plaintiff's motion to have the petition deemed timely filed along with his motion for reconsideration of that denial.  Orders, No. 18-BG-0100 (D.C. July 31, 2020 and Nov. 12, 2020).

The complaints before this Court allege that after Plaintiff's suspension, Defendants sent notices to courts in which Plaintiff is admitted or licensed to practice informing them of Plaintiff's suspension.  965 Compl. ¶ 28; 3109 Compl. ¶ 20; 3579 ¶ Compl. 20.   The complaints allege that Plaintiff was not copied on the notices to courts of Plaintiff's suspension.  *Id.*  The complaints state that Plaintiff became aware of them after the U.S. District Court for the Northern District of Texas posted one on its docket.  965 Compl. ¶ 29; 3109 Compl. ¶ 21; 3579 ¶ Compl. 21.

Plaintiff maintains that Defendants have deviated from the mission of the Office of Disciplinary Counsel and D.C. Bar and engaged in "the equivalent of a partisan politically based agenda" and "in effect a 'jihad'" against Plaintiff to have him removed from the practice of law.  965 Compl. ¶ 13; 3109 Compl. ¶ 10; 3579 Compl. ¶ 10.  Plaintiff alleges in these actions, as in his other collateral lawsuits against Defendants, that he is being targeted for professional discipline due to his political views.  965 Compl. ¶¶ 16–18; 3109 Compl. ¶¶ 13–15; 3579 Compl. ¶¶ 13–15;  *Klayman v. Fox ("Klayman I"),* No. 18-1579 (RDM), 2019 WL 2396538, \*4–5 (D.D.C. June 5, 2019) (quoting amended complaint in that action).

Plaintiff has now filed six serial lawsuits against lawyers employed by the Office of Disciplinary Counsel and/or the Chair of the Board on Professional Responsibility relating to substantially the same set of facts.  Plaintiff filed the first two suits in this Court.  One case was

filed against the Office of Disciplinary Counsel and four of its members, including Ms. Porter and Mr. Fox who are named in the actions before this Court. *Klayman I,* 2019 WL 2396538. The second case was filed against the same defendants plus former president of the D.C. Bar Esther Lim. *Klayman v. Lim*, No. 18-2209 (RDM), No. 2019 WL 2396539 (D.D.C. June 5, 2019) (*"Klayman II"*). Judge Moss dismissed both actions based on (a) the *Younger* abstention doctrine as to Plaintiff's claims for injunctive relief and (b) absolute immunity under D.C. Bar XI, § 19(a) as to Plaintiff's damages claims. *Klayman I,* 2019 WL 2396538; *Klayman II,* 2019 WL 2396539.[2] The D.C. Circuit affirmed both dismissals in a single *per curium* order. *Klayman v. Lim,* Nos. 19-7099, 19-7100, 2020 WL 6038713 (D.C. Cir. Oct. 6, 2020) (*"Klayman I and II"*).

On January 31, 2020, Plaintiff filed his third suit in D.C. Superior Court against Ms. Porter, the Office of Disciplinary Counsel and a former client of Plaintiff who had filed a complaint against Plaintiff with the Office of Disciplinary Counsel. *See* slip op., *Klayman v. Porter,* No. 2020 CA 000756 B (D.C. Super. Ct. Oct. 1 2020) (*"Klayman III"*). On October 1, 2020, the D.C. Superior Court dismissed the claims against Ms. Porter and the Office of Disciplinary Counsel, and granted summary judgment in favor of Plaintiff's former client. *Id.* at 10, 12. In the same order, the D.C. Superior Court sanctioned Plaintiff pursuant to Superior Court Rule of Civil Procedure 11,[3] based on its finding that Mr. Klayman filed his complaint in that action even though the courts had twice dismissed similar claims and put him on notice that his claims against Ms. Porter and the Office of Disciplinary Counsel were precluded by their "clear immunity." *Id.* at 12–14.

[2] In *Klayman II*, Judge Moss also dismissed Plaintiff's claims against the D.C. Bar and its former president Esther Lim for failure to state a claim. *Klayman II*, 2019 WL 2396539, at *5.

5

On August 26, 2020, Plaintiff filed yet another lawsuit—this time in the U.S. District Court for the Northern District of Texas—that, like this action, challenged the Office of Disciplinary Counsel's notice to other courts that Plaintiff had been suspended and names Ms. Porter, Mr. Fox and Mr. Bloom as defendants.  *See* Transfer Order, *Klayman v. Porter,* No. 20-cv-2526 (N.D. Tex. Dec. 7, 2020), ECF No. 22.  Defendants' motion to transfer that case to this district was granted on December 7, 2020. *Id.*  In this District, this case is numbered 20-cv-03579.

In *Klayman v. Porter*, No. 1:20-cv-1014 (W.D. Tex.), Plaintiff recycled his allegations that Disciplinary Counsel Ms. Porter, Mr. Bloom, and Mr. Fox acted improperly in notifying other jurisdictions where Mr. Klayman is admitted to practice that he had been suspended from practice in the District of Columbia.  Like the Northern District of Texas, the Western District of Texas found that the private and public interests "weigh heavily in favor of transfer to the District of Columbia" and transferred the case to this district.  Order, *Klayman v. Porter*, No. 1:20-cv-1014 at 2 (W.D. Tex. Oct. 29, 2020).  In this District, this case is numbered 20-cv-3109.

Plaintiff filed an additional complaint on December 31, 2020 in the Northern District of California. *See* Compl., *Klayman v. Kaiser*, No. 20-cv-09490 (N.D. Cal. Dec. 31, 2020), ECF No. 1.  Like the two cases filed in Texas, this case was transferred to this District. Order, *Klayman v. Kaiser*, No. 20-cv-09490 (N.D. Cal. Feb. 22, 2021).  On April 13, 2021, this case – numbered in this District as 20-cv-00965 – was assigned to Judge Moss after Judge Mehta, who was on the Disciplinary Panel for this District Court that imposed reciprocal discipline upon Plaintiff arising out of the same suspension, recused himself.  ECF. No. 35.

On March 23, 2021, Judge Moss issued an order consolidating Case Nos. 20-cv-03109 and 20-cv-03579.  *See* Case No. 20-cv-3109, ECF No. 29 (D.D.C. Mar. 23, 2021).  On November 2, 2021, this Court consolidated those two cases with case 21-cv-00965.  *See* Case No. 21-cv-00965, ECF No. 38 (D.D.C. Nov. 2, 2021).

## LEGAL STANDARD

Where a claim is not supported by factual allegations sufficient to make it facially plausible, it should be dismissed under Federal Rule of Civil Procedure 12(b)(6).  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Lamb v. Millennium Challenge Corp.*, No. 19-589 (RDM), 2020 WL 6484489, at *3 (D.D.C. Nov. 3, 2020).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)); *accord, e.g.*, *Lamb*, 2020 WL 6484489, at *3.  While the court accepts the complaint's well-pleaded facts as true, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555); *see also Lamb*, 2020 WL 6484489, at *3 ("Although 'detailed factual allegations' are not required, the complaint must contain 'more than an unadorned, the-defendant-unlawfully-harmed-me allegation.'") (quoting *Iqbal*, 556 U.S. at 678).  In addition to the immunity conferred upon defendants by the D.C. Court of Appeals rules establishing the professional responsibility entities for which they work, Plaintiff's allegations do not satisfy the standards articulated in *Iqbal*.

## ARGUMENT

### I.    Plaintiff's Claims Are Precluded by Defendants' Absolute Immunity

As members of the Office of Disciplinary Counsel and D.C. Bar Board on Professional Responsibility, each Defendant is entitled to absolute immunity from Plaintiff's claims.  As Judge

Moss and the D.C. Superior Court recognized, D.C. Bar Rule XI, § 19(a) expressly confers absolute immunity from suit on the Disciplinary Counsel and members of that office for actions taken in the course of their official duties. *Klayman I*, 2019 WL 2396538, at *11 n.3, *aff'd* 2020 WL 6038713, at *1; *Klayman III*, slip op. at 8; *see also* D.C. Bar R. XI, § 19(a), quoted *supra* at 2–3. As Judge Moss and the D.C. Circuit also recognized, D.C. Bar disciplinary proceedings are judicial proceedings and it is a well-established rule that the officials participating in them are engaged in judicial acts that are entitled to absolute judicial immunity. *Klayman I and II*, 2020 WL 6038713, at *1 (quoting *Simons v. Bellinger*, 643 F.2d 774, 782 (D.C. Cir. 1980)), *Klayman I*, 2019 WL 2396538, at *11–12 (citing authorities); *Klayman II*, 2019 WL 2396539, at *4–5. This applies with equal force to claims against Mr. Kaiser, as the D.C. Bar's rules regarding attorney discipline explicitly grant immunity from civil liability to members of the Board on Professional Responsibility, as well as employees of the Office of Disciplinary Counsel, for acts taken in the course of their official duties: "Members of the Board…and employees of Disciplinary Counsel…shall be immune from disciplinary complaint under this rule and from civil suit for any conduct in the course of their official duties." D.C. Bar R. XI, § 19(a). Moreover, absolute judicial immunity protects from liability judges and other public officials, who perform quasi-judicial functions as long as their conduct (1) was not taken in the "clear absence of all jurisdiction" and (2) involves "a judicial act." *Nwachukwu v. Rooney*, 362 F. Supp. 2d 183, 192 (D.D.C. 2005) (citing *Cunningham v. District of Columbia*, 584 A.2d 573, 576 (D.C. 1990)). These protections extend not only to judges but to "other officers of government whose duties are related to the judicial process." *Id.*

Based on these authorities, Judge Moss dismissed Plaintiff's claims for damages against the Office of Disciplinary Counsel personnel named as defendants in *Klayman I* and *Klayman II*

on grounds of absolute immunity.  *Klayman I*, 2019 WL 2396538, at *11-12[3]; *Klayman II*, 2019 WL 2396539, at *4–5.  The D.C. Circuit affirmed.  *Klayman I and II*, 2020 WL 6038713, at *1.  Similarly, the D.C. Superior Court dismissed Plaintiff's claims against Ms. Porter and the Office of Disciplinary Counsel in *Klayman III* based D.C. Bar R. XI, § 19(a).  *Klayman III,* slip op. at 8–10 (explaining that "there is both an explicit rule which shields liability for parties in exactly the same position as [the defendants], as well as long followed legal precedent which instructs the Court to dismiss the instant action") (quoting D.C. Bar R. XI, § 19(a) and citing *In re Spikes*, 881 A.2d 1118, 1123-24 (D.C. 2005), and *In re Nace*, 490 A.2d 1120, 1124 (D.C. 1985)).

Plaintiff's latest lawsuits against essentially the same members of the Office of Disciplinary Counsel and now the Chair of the Board on Professional Responsibility should be dismissed for the same reasons.  Plaintiff alleges no facts that would support a reasonable inference that any of the Defendants acted other than in their official duties in connection with the notices of Plaintiff's suspension from the D.C. Bar.  The complaints allege no facts supporting Plaintiff's assertion that Mr. Fox, Ms. Porter, or Mr. Kaiser had any role in sending the notice, let alone that they acted outside the scope of their duties.  Plaintiff's assertion that the notice was "prepared and sent by Defendants, working in concert," 965 Compl. ¶ 32; 3109 Compl. ¶ 25; 3579 Compl. ¶ 25, is wholly conclusory.  In *Klayman III*, the D.C. Superior Court rejected Plaintiff's assertion in that case that Ms. Porter deviated from her official duties by notifying the Bar of the Northern District of Texas of Plaintiff's suspension, observing that Plaintiff had presented no evidence in support of that assertion.  *Klayman III*, slip op. at 10.

---

[3] Judge Moss dismissed Plaintiff's claims for injunctive relief based on *Younger* abstention, *Klayman I*, 2019 WL 2396538, at *10, *Klayman II*, 2019 WL 2396539, at *3, and the D.C. Circuit affirmed, *Klayman I and II*, 2020 WL 6038713, at *2.  Plaintiff's request for injunctive relief in this action likewise should be dismissed under *Younger* as explained in section V, *infra*.

Plaintiff's contention that the D.C. Rules of Professional Conduct do not expressly authorize notification of his suspension to other courts, as Plaintiff contends is inapposite.   965 Compl. ¶ 30; 3109 Compl. ¶ 22; 3579 Compl. ¶ 22.   As the D.C. Circuit recognized, "absolute immunity, unlike 'qualified or good-faith immunity,' provides Disciplinary Counsel attorneys prosecuting misconduct charges with 'complete protection from suit.'"   *Klayman I and II*, 2020 WL 6038713, at *1 (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 807 (1982)).   Moreover, the Office of Disciplinary Counsel followed the American Bar Association (ABA) Model Rules for Lawyer Disciplinary Enforcement in sending the notice of Plaintiff's suspension.   ABA Model Rule for Lawyer Disciplinary Enforcement 22 cmt., https://www.americanbar.org/groups/professional_responsibility/resources/lawyer_ethics_regulation/model_rules_for_lawyer_disciplinary_enforcement/rule_22/ (last accessed May 3, 2021).[4]   Like in *Klayman I* and *Klayman II*, notifying other courts of the D.C. Court of Appeals' decision to suspend Plaintiff "'was plainly within the general matters . . . committed to [their]

---

[4] The comments to ABA Model Rule 22 provide:

If a lawyer suspended or disbarred in one jurisdiction is also admitted in another jurisdiction and no action can be taken against the lawyer until a new disciplinary proceeding is instituted, tried, and concluded, the public in the second jurisdiction is left unprotected against a lawyer who has been judicially determined to be unfit. Any procedure which so exposes innocent clients to harm cannot be justified. The spectacle of a lawyer disbarred in one jurisdiction yet permitted to practice elsewhere exposes the profession to criticism and undermines public confidence in the administration of justice.

*Disciplinary counsel in the forum jurisdiction should be notified by disciplinary counsel of the jurisdiction where the original discipline or disability inactive status was imposed.*

ABA Model Rule for Lawyer Disciplinary Enforcement 22 cmt. (emphasis added).

10

discretion' under D.C. law." *Klayman I and II*, 2020 WL 6038713, at *1. (quoting *Simons*, 643. F.2d at 786) (alterations and ellipsis in original).

As the courts concluded in *Klayman I*, *Klayman II*, and *Klayman III*, Defendants here are absolutely immune from Plaintiff's claims under both D.C. Bar Rule XI, § 19(a) and judicial immunity principles.

## II.     Plaintiff's Claim for Injunctive Relief Should Be Dismissed

The complaints include an unspecified request for injunctive relief.  965 Compl. § VII, Prayer for Relief (a); 3109 Compl. § VII, Prayer for Relief (a); 3579 Compl. § VII, Prayer for Relief (a).  To the extent Plaintiff seeks to enjoin any of Defendants' actions with regard to Plaintiff's disciplinary proceedings, including any in connection with his pending challenge to the D.C. Court of Appeals' order of suspension, the request should be dismissed based on doctrine of abstention recognized in *Younger v. Harris*, 401 U.S. 37 (1971)[5], for the same reasons recognized by the D.C. Circuit in Plaintiff's previous collateral challenges to his disciplinary proceedings.

In affirming this Court's the dismissal of Plaintiff's claims for injunctive relief in *Klayman I* and *Klayman II* based on *Younger* abstention, the D.C. Circuit recognized that "[f]ederal-court abstention from interference with pending state proceedings (including D.C. proceedings) is appropriate 'so long as there is no showing of bad faith, harassment, or some other extraordinary circumstance' on the part of the state 'that would make abstention inappropriate.'"  *Klayman I* and

---

[5] In *Younger v. Harris*, 401 U.S. 37, 54 (1971), the Supreme Court held that the abstention doctrine precludes enforcement of a state criminal statute by a federal court when state-court enforcement proceedings are pending in state court.  The Supreme Court extended the doctrine to state civil enforcement proceedings that (1) constitute ongoing judicial proceedings, (2) implicate important state interests, and (3) afford an adequate opportunity to raise federal claims.  *See Middlesex Cty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982).  This Court has repeatedly concluded that ongoing disciplinary proceedings under the jurisdiction of the D.C. Court of Appeals are the exact type of state proceeding that requires dismissal under *Younger*.

*II*, 2020 WL 6038713, at *2 (quoting *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 435 (1982)).  Plaintiff there failed to allege any facts amounting to "extraordinary circumstances" that would justify federal intervention.  *Id.*; *Kugler v. Helfant*, 421 U.S. 117, 126 n.6 (1975) (explaining bad faith requires "that a prosecution has been brought without a reasonable expectation of obtaining a valid conviction").

The same is true here.  The complaints present only conclusory assertions, unsupported by facts, of political motivation, that are comparable to the assertions Judge Moss and the D.C. Circuit rejected as insufficient in Plaintiff's other collateral challenges to his disciplinary proceedings. *Compare* 965 Compl. ¶¶ 10, 13–17 (alleging Defendants engaged in "a partisan politically and gender based agenda…to have Mr. Klayman removed from the practice of law"); 3109 Compl. ¶¶ 12–16 (); 3579 Compl. ¶¶ 12–16 (attempting to support "politically based selective prosecution[]" argument by alleging one of the Defendants "contributed heavily to Democratic presidential campaigns as well as other leftist Democrats") *with Klayman I*, 2019 WL 2396538, at *4 (quoting Plaintiff's amended complaint in that action), *Klayman II*, 2019 WL 2396539, at *3 (quoting Plaintiff's opposition to the motion to dismiss in that action), and *Klayman I and II*, 2020 WL 6038713, at *2 (observing that Plaintiff failed to offer "'substantial,' nonconclusory allegations") (quoting *Younger*, 401 U.S. at 48).  Plaintiff alleges that Defendants initiated disciplinary proceedings because they "loathe his conservative/libertarian political philosophy." 965 Compl. ¶ 14; *see also* 3109 Compl. ¶ 13–14; 3579 Compl. ¶ 13–14.  Like in *Klayman I and Klayman II*, the complaints do not allege facts that would amount to the "extraordinary circumstances" that would justify federal intervention.

Accordingly, insofar as Plaintiff seeks injunctive relief concerning Defendants' actions with regard to Plaintiff's disciplinary proceedings before the D.C. Court of Appeals, the request should be dismissed based on *Younger* abstention.

### III.    The Complaints Should Be Dismissed on *Res Judicata* Grounds

Further, multiple issues raised by these cases are barred from reconsideration by the doctrine of issue preclusion. Issue preclusion, also known as collateral estoppel, applies and bars successive litigation of an issue when "(1) the same issue was contested by the parties and submitted for judicial determination in a prior case, (2) the issue was actually and necessarily determined by a court of competent jurisdiction in that prior case, and (3) preclusion does not result in basic unfairness to the party bound by the first determination." *UMC Dev., LLC v. District of Columbia*, 401 F. Supp. 3d 140, 155–56 (D.D.C. 2019). This doctrine "serves to 'protect against the expense and vexation attending multiple lawsuits, conserve judicial resources, and foster reliance on judicial action by minimizing the possibility of inconsistent decisions.'" *Nat'l Ass'n of Home Builders v. EPA*, 786 F.3d 34, 41 (D.C. Cir. 2015) (quoting *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008)). Issue preclusion applies even where an earlier case was dismissed without prejudice. *See UMC Dev.*, 401 F. Supp. 3d at 156–57.

All three elements are satisfied here. Plaintiff's allegations in these actions, like the prior two dismissed actions, all relate to the D.C. Bar disciplinary proceedings against him, and an alleged ongoing effort by the defendant Office of Disciplinary Counsel and Board on Professional Responsibility personnel to conspire against Plaintiff because of his political views. *Compare* 965 Compl. ¶¶ 16–18; 3109, Compl. ¶¶ 13–15; 3759, Compl. ¶¶ 13–15 *with Klayman I*, 2019 WL 2396538, at *1 (dismissing claims in which Plaintiff alleged ODC defendants "are conspiring to disbar him or to force him to resign from the D.C. Bar…because they disagree with his 'political

beliefs [and] public interest activism'"); *Klayman II*, 2019 WL 2396539, at *2 (dismissing "the same causes of action against the same defendants" in which Plaintiff alleged defendants sought "to prevent Mr. Klayman from being able to practice law because they do not agree with his political and other beliefs"). Judge Moss ruled that the defendants with judicial immunity for their official duties are immune from these claims, and that Plaintiffs' requests for injunctive relief are barred by *Younger* abstention. *See Klayman I*, 2019 WL 2396538, at * 6, *Klayman II*, 2019 WL 2396539, at *1. The parties in the earlier cases therefore contested the immunity and *Younger* issues, and a court of competent jurisdiction considered and ruled on them. There can be no "basic unfairness" to Plaintiff here, as there is no reason to doubt he was "fully incentivized to litigate" this issue in the earlier proceedings. *UMC Dev*, 401 F. Supp. 3d at 155 n.1.

For these reasons, Plaintiff should be precluded from disputing that Defendants have judicial immunity from his claims for damages, or that his claims for unspecified injunctive relief are precluded by *Younger* abstention.

## IV.    District of Columbia Substantive Law Governs This Action

Because these cases were transferred to this Court from other states, an initial step is to determine the substantive law that governs Plaintiff's claims by applying the choice-of-law rules of California and Texas, the states where the cases were filed. *See* Order, *Klayman v. Kaiser*, No. 20-cv-09490 (N.D. Cal. Feb. 22, 2021), ECF 31 (noting "[b]efore the plaintiff filed this lawsuit, he filed five similar lawsuits, two in the District of Columbia, one in D.C. Superior court, and two in district courts in Texas. The D.C. courts ruled against him, and the Texas courts transferred the lawsuits to the District of Columbia."). Both states' choice of law rules necessitate the application of District of Columba law.

### A.  **California Choice-of-Law Rules Provide for D.C. Law to Apply**

With respect to the case transferred from the Northern District of California (Case No. 21-cv-00965), California choice-of-law rules direct which jurisdiction's substantive law governs the merits of Plaintiff's claims.  *In re APA Assessment Fee Litig*., 766 F.3d 39, 51 (D.C. Cir. 2014) ("A federal court sitting in diversity must apply the choice-of-law rules of the forum state"); *see also Van Dusen v. Barrack*, 376 U.S. 612, 639 (1964).  California choice-of-law rules apply a three-step "governmental interests" analysis.  *See In re Yagman*, 796 F.2d 1165, 1170 (9th Cir. 1986); *Marsh v. Burrell*, 850 F. Supp. 1493, 1497 (N.D. Cal. 1992).

California law evaluates three factors to determine which state's law applies: (1) whether the substantive laws of each jurisdiction conflict, (2) whether a conflict implicates legitimate policy interests of the competing jurisdictions, and (3) which state's policy interest would be more impaired if its law were displaced by that of the other jurisdiction.  *See eDrop-Off Chi. LLC v. Burke*, No. CV 12-4095 GW (FMOX), 2013 WL 12131186, at *7 (C.D. Cal. Aug. 9, 2013) (citing *Love v. Associated Newspapers, Ltd.*, 611 F.3d 601, 610 (9th Cir. 2010)); *cf. Competitive Techs. v. Fujitsu Ltd.*, 286 F. Supp. 2d 1118, 1159 (N.D. Cal. 2003).

Here, these choice-of-law factors point to the District of Columbia, which is considered a state for choice-of-law purposes.  *A.I. Trade Fin., Inc. v. Petra Int'l Banking Corp*., 62 F.3d 1454, 1458 (D.C. Cir. 1995).  With respect to the first factor, California and D.C. law arguably conflicts as it relates to immunity.  Although California recognizes judicial immunity for state bar officials, it does not extend immunity to bar prosecutors and investigators for "acts committed in their investigative functions."  *Khanna v. State Bar of Cal.*, 505 F. Supp. 2d 633, 647 (N.D. Cal. 2007).  However, as the United States District Court for the District of Columbia previously held, Plaintiff's case concerns judicial, not prosecutorial, immunity, and the crux of Plaintiff's

complaints is not that he has been subject to an investigation—it is that he has been unfairly charged with disciplinary violations.  *Klayman v. Fox*, No. CV 18-1579 (RDM), 2019 WL 2396538, at *12. Thus, there is no true conflict and California's interests in this action are minimal at best.

The second factor evaluates what interest, if any, the competing jurisdictions have in the application of their respective laws, and clearly weighs in favor the District of Columbia.  *See eDrop-Off Chi. LLC*, 2013 WL 12131186, at *7.  The state of plaintiff's residency is normally the state where the greatest injury occurs, and generally has a greater interest in providing redress for its residents.  *Motschenbacher v. R.J. Reynolds Tobacco Co.*, 498 F. 2d 821, 823 n.4 (9th Cir.) 1974; *Matter of Vagman*, 796 F.2d 1165, 1171 (9th Cir. 1986) (applying California law, the state of plaintiff's domicile, even though defendants were residents of New York and made the defamatory statements there).  While Plaintiff alleges injury in California, each of the other factors implicates the District of Columbia.  *See Gifford v. Nat'l Enquirer, Inc.*, 23 Media L. Rep. 1016 (C.D. Cal 1993) (denying New York residents allegation that California law should apply despite the fact that the defendants distributed the infringing publication in California).  There are no California residents in this case.   Defendants' place of business is the District of Columbia, 965 Compl. at 1 (caption), and Plaintiff maintains a place of business in the District of Columbia.  D.C. Bar   member   look-up   tool,   https://join.dcbar.org/eWeb/DynamicPage.aspx?Site=dcbar &webcode=findmember (last accessed May 6, 2021); *see also Cooper v. Tokyo Elec. Power Co. Holdings, Inc.*, 960 F.3d 549, 565 (9th Cir. 2020).  Additionally, Plaintiff's D.C. Bar license lists his District of Columbia business address.  *Id.*  To the extent that there exists a relationship between Plaintiff and Defendants, it is centered on the proceeding concerning Plaintiff's suspension in the

16

District of Columbia.  965 Compl. ¶ 20; *see also Klayman I*, 2019 WL 2396538, *Klayman II*, 2019 WL 2396539, *Klayman III,* slip op.

The third factor (which state's policy interests would be more impaired) is particularly, significant in light of the D.C. Bar Rules' immunity conferred on Defendants for their officials' actions as members of the Office of Disciplinary Counsel, D.C. Bar. Rule XI, § 19(a), as discussed in more detail in section I, *infra*.; *see also Waggoner v. Snow, Becker, Kroll, Klaris & Krauss*, 991 F.2d 1501, 1508 (9th Cir. 1993) (applying New York substantive law, noting "New York has a clear interest in seeing that an attorney practicing in its jurisdiction…is covered by New York's policy…"); *Matter of Yagman*, 796 F.2d at 1171 (citation omitted) ("New York has 'absolutely no interest in the reputation of a California citizen.'").  Defendants' alleged actions causing Plaintiff's claimed injury—transmission of the notice of Plaintiff's suspension – occurred in the District of Columbia.  *See* 965 Compl., Ex. ¶ 23.  Further, the suspension was ordered in the District of Columbia by the D.C. Court of Appeals.  *Id*. ¶ 20.  Plaintiff's previous collateral challenges to his suspension have been litigated in courts in the District of Columbia.  *Klayman I*, 2019 WL 2396538, *Klayman II*, 2019 WL 2396539, *Klayman III*, slip op.  Indeed, the Northern District of California, the Western District of Texas, and the Northern District of Texas all recognized that the connections of the parties and subject matter of Plaintiff's claims to the District of Columbia, and the relative lack of significant connection to Texas and California, warranted transferring Plaintiff's cases against Defendants filed in those courts to this Court.  Order, *Klayman v. Kaiser*, No. 20-cv-09490 (N.D. Cal. Feb. 22, 2021); Order, *Klayman v. Porter*, No. 20-cv-1014 (W.D. Tex. Oct. 29, 2020), ECF No. 13; Transfer Order, *Klayman v. Porter*, No. 20-cv-2526 (N.D. Tex. Dec. 7, 2020), ECF No. 22.

D.C.'s interests in having its laws applied in this case are far greater:  the incident giving rise to disciplinary action occurred in D.C.; the underlying investigation occurred in D.C.; Plaintiff is a D.C. licensed attorney, with an office in D.C.; and the letters provided by the Defendants to the other courts (which forms the basis of Plaintiff's claims) were written in D.C. and relate to actions taken in D.C.  In light of the legal questions at issue and the relevant state interests at stake, D.C. law should apply.

### B.  **Texas Choice-of-Law Analysis**

With respect to the actions transferred from the Western District and Northern District of Texas (Case Nos. 20-cv-3109 and 20-cv-3579), Texas choice-of-law rules direct which jurisdiction's substantive law governs the merits of Plaintiff's claims.  *In re APA Assessment Fee Litig.*, 766 F.3d 39, 51 (D.C. Cir. 2014) ("A federal court sitting in diversity must apply the choice-of-law rules of the forum state"); *see also Van Dusen v. Barrack*, 376 U.S. 612, 639 (1964).  Texas choice-of-law rules follow the *Restatement (Second) of Conflict of Laws* (hereinafter "*Restatement*") and, for tort claims like Plaintiff asserts, direct that the state with "the most significant relationship" to the occurrence and the parties provides the substantive law. *Hammervold v. Blank*, No. 4:20-CV-165, 2020 WL 4535914, at *3 (E.D. Tex. Aug. 6, 2020) (quoting *Henry Schein, Inc. v. Stromboe*, 102 S.W.3d 675, 696 (Tex. 2002)); *see also Restatement* § 145(1) ("The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6.").

Texas law applies the four factors outlined in the *Restatement* to determine which state's law applies: (1) where the alleged injury occurred, (2) where the conduct causing the alleged injury occurred, (3) "the domicil[e], residence, nationality, place of incorporation and place of business

of the parties, and" (4) the place where any relationship between the parties is centered.  *Stromboe*, 102 S.W.3d at 696 (quoting *Gutierrez v. Collins*, 583 S.W.2d 312, 319 (Tex. 1979), and *Restatement* § 145(2)); *Hammervold*, 2020 WL 4535914, at *3.  Importantly for this action, if conduct is "privileged by the local law of the state where it took place," the place where the conduct occurred "has peculiar significance."  *Restatement* § 145 cmt. e (citing *Restatement* § 163 cmt. a); *see also id.* § 145 cmt. c ("A rule which exempts the actor from liability for harmful conduct is entitled to the same consideration in the choice-of-law process as is a rule which imposes liability," *i.e.*, as an "important factor[] to be considered in determining the state of most significant relationship."); *see also id.* § 163 cmt. a ("Clearly, the interest of the state of conduct would be furthered by application of its rule of non-liability").

Here, these choice-of-law factors point to the District of Columbia, which is considered a state for choice-of-law purposes, *A.I. Trade Fin., Inc. v. Petra Int'l Banking Corp.*, 62 F.3d 1454, 1458 (D.C. Cir. 1995), as it has the "most significant relationship to the occurrence and the parties." While Plaintiff alleges injury in Texas (the first factor), each of the other factors implicates the District of Columbia.  The second factor (where the conduct causing the alleged injury occurred) is particularly, or "peculiar[ly]," significant in light of the D.C. Bar Rules' immunity conferred on Defendants for their officials actions as members of the Office of Disciplinary Counsel, D.C. Bar. Rule XI, § 19(a), as discussed in more detail in section I, *infra*.  *Restatement* § 145 cmt. c. Defendants' alleged actions causing Plaintiff's claimed injury—transmission of the notice of Plaintiff's suspension—occurred in the District of Columbia.  *See* 3109 Compl., Ex. 5; 3579 Compl., Ex. 5 (notice from Office of Disciplinary Counsel in Washington, D.C.).  Further, the suspension was ordered in the District of Columbia by the D.C. Court of Appeals.  *Id.* ¶ 17.  As to the third factor (location of the parties), Defendants' place of business is the District of Columbia,

*id*. at 1 (caption), and Plaintiff maintains a place of business in the District of Columbia.  D.C. Bar member look-up tool, https://join.dcbar.org/eWeb/DynamicPage.aspx?Site=dcbar&webcode=findmember (last accessed Dec. 8, 2020).  Additionally, Plaintiff's D.C. Bar license lists his District of Columbia business address.  *Id.*  Regarding the fourth factor (where any relationship of the parties is centered), to the extent that there exists a relationship between Plaintiff and Defendants, it is centered on the proceeding concerning Plaintiff's suspension in the District of Columbia.  3109 Compl. ¶ 17; *see also Klayman I*, 2019 WL 2396538, *Klayman II*, 2019 WL 2396539, *Klayman III,* slip op.  Plaintiff's previous collateral challenges to his suspension have been litigated in courts in the District of Columbia.  *Klayman I*, 2019 WL 2396538, *Klayman II*, 2019 WL 2396539, *Klayman III*, slip op.  Indeed, both the Western District of Texas and the Northern District of Texas recognized that the connections of the parties and subject matter of Plaintiff's claims to the District of Columbia, and the relative lack of significant connection to Texas, warranted transferring Plaintiff's cases against Defendants filed in those courts to this Court.  Order, *Klayman v. Porter*, No. 20-cv-1014 (W.D. Tex. Oct. 29, 2020), ECF No. 13; Transfer Order, *Klayman v. Porter*, No. 20-cv-2526 (N.D. Tex. Dec. 7, 2020), ECF No. 22.

The majority of the choice-of-law factors, including the "peculiar[ly] significan[t]" factor of where the conduct causing the alleged injury occurred, weigh in favor of the application of District of Columbia law.  Accordingly, the District's law governs this action.  *Stromboe*, 102 S.W.3d at 696; Restatement § 145.

## V.    Failure to State a Claim for Relief

Even if Plaintiff's claims were not barred by Defendants' absolute immunity, they would fail under Rule 12(b)(6) because neither states a claim upon which relief can be granted.

20

### A.  The Complaints Fail to State a Claim for Tortious Interference

To make a *prima facie* case of tortious interference with contractual relationship, a claimant must demonstrate: "(1) the existence of a valid contractual or other business relationship; (2) the defendant's knowledge of the relationship; (3) the defendant's intentional interference with that relationship; and (4) resulting damages." *Robert Half Int'l Inc. v. Billingham*, 315 F. Supp. 3d 419, 436 (D.D.C. 2018) (citing *Newmyer v. Sidwell Friends Sch.*, 128 A.3d 1023, 1038–39 (D.C. 2015)). The elements of a claim for tortious interference with prospective economic advantage claim are identical, except that instead of the existence of a contract the claimant must demonstrate "the existence, knowledge, and intentional procurement of a breach of a prospective advantageous business transaction." *Teltschik v. Williams & Jensen, PLLC*, 683 F. Supp. 2d 33, 56 (D.D.C. 2010) (citing *Casco Marina Dev., LLC v. District of Columbia Redevelopment Land Agency*, 834 A.2d 77, 84 (D.C. 2003), and *Brown v. Carr*, 503 A.2d 1241, 1247 (D.C. 1986)).  "Interference is actionable where it 'induc[es] or otherwise caus[es] the third person…not to perform.'" *Newmyer*, 128 A.2d at 1039 (quoting *Onyeoziri v. Spivok*, 44 A.3d 279, 286 (D.C. 2012)) (alterations in original).  Plaintiff "bears the burden to establish a 'substantial and direct causal link' between [Defendants'] alleged interference and the damages suffered." *Id.* at 1039 (quoting *Connors, Fiscina, Swartz & Zimmerly v. Rees*, 599 A.2d 47, 51 (D.C. 1991)).  If a claimant establishes a *prima facie* case of tortious interference, the burden shifts to the defendants to show that their conduct was justified or privileged. *Id.* (citing *Onyeoziri*, 44 A.3d at 286–87).

In this case, the complaints fail to allege facts that would satisfy Plaintiff's burden of establishing the elements of a *prima facie* case of tortious interference with any existing client relationships or any prospective client relationships.  With regard to existing client relationships, the complaints do not allege that he has pending or prospective cases before the Northern District

21

of California or the Ninth Circuit, nor does he allege that any of the litigants have failed to perform a contract with Plaintiff.  Plaintiff alleges that he represents litigants in two cases before the Northern District of Texas, but does not allege that any of the litigants have failed to perform on a contract with Plaintiff.  3109 Compl. ¶ 24.  Further, Plaintiff's conclusory statements that the defendants were "working jointly in concert" and had "intent and design" to harm Plaintiff fall far short of the facts that he would need to plausibly plead Defendants' intentional interference. 965 Compl. ¶¶ 24, 32; 3109 Compl. ¶¶ 25, 43; 3579 Compl. ¶¶ 25, 43.  The complaints simply lack specific allegations regarding the defendants' actions that constitute the elements of tortious interference.  Apart from this reference to the defendants supposedly "working jointly in concert," Mr. Kaiser – who is only named as a defendant in Case No. 21-00965 – is not alleged to have had *any* involvement with any contacts with other courts or state bars.  The complaints thus fail to allege that Defendants "induced[ed] or otherwise caus[ed]" any third party not to perform, as is necessary for an "actionable" claim of interference, and fails to establish the fourth element of a *prima facie* case – damages.  *Newmyer*, 128 A.2d at 1039.  The claim, therefore, should be dismissed under Rule 12(b)(6) for failure to establish a *prima facie* case.  *Id.*[6]

---

[6] As discussed in Part V *infra*, the court should apply the law of the District of Columbia to this claim. However, if the court applies California or Texas law, Plaintiff has still not stated a claim. In California, a claim for intentional interference with contractual relations requires the plaintiff allege "(1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage." *Innovatel Servs. Inc. v. First Bridge Merch. Sols., LLC*, No. 220CV07681SBAGRX, 2021 WL 3415218, at *7 (C.D. Cal. Mar. 19, 2021) (quoting *Pac. Gas & Elec. Co. v. Bear Stearns & Co.*, 50 Cal. 3d 1118, 1126 (1990)).  In Texas, to prove tortious interference with contractual relations requires "(1) the existence of a contract subject to interference, (2) a willful and intentional act of interference, (3) such act was a proximate cause of damage, and (4) actual damage or loss occurred." *MGE UPS Sys., Inc. v. Fakouri Elec. Eng'g, Inc.*, 422 F. Supp. 2d 724, 740 (N.D. Tex. 2006).  As discussed regarding D.C. law, Plaintiff has not alleged facts supporting the assertion that the defendants intended to induce the breach of any contracts, nor the actual breach of any contracts.

With respect to Plaintiff's claim for intentional interference with prospective economic advantage, the complaints do not allege any facts that suggest the existence of any prospective advantageous business transaction, let alone that Defendants knew of such a transaction, that they interfered with it, or that they caused any damage to it. This Court rejected a similarly unsupported claim in *Teltschik*. 683 F. Supp. 2d at 56 (granting defendants summary judgment on tortious interference with prospective economic advantage claim where the plaintiff "d[id] not present evidence or even allege any facts that would support the existence of a prospective advantageous business transaction, that defendants knew of the transaction, or that defendants interfered with the transaction"). Plaintiff's claim for tortious interference with prospective economic advantage likewise should be rejected under Rule 12(b)(6). *Id.*

Lastly, even if Plaintiff somehow could meet his burden of establishing the elements of a *prima facie* case of tortious interference (which he cannot) and the burden were to shift to Defendants, Defendants' transmission of the notice would be justified. As previously set forth, the Office of Disciplinary Counsel followed the ABA Model Rules for Lawyer Disciplinary Enforcement in transmitting the notice. ABA Model Rule for Lawyer Disciplinary Enforcement 22 cmt.

For all of these reasons, the complaints fail to state a claim for tortious interference and that count should be dismissed.

## B.   The Complaints Fail to State a Claim for Abuse of Process

Plaintiff's abuse of process charge fails to state a claim because it is not grounded in any "process." While legal process may be interpreted expansively, it refers to legal proceedings. *Zuza v. Off. of the High Representative*, 857 F.3d 935, 938 (D.C. Cir. 2017) ("Legal process is an

expansive term.  It refers broadly to '[t]he proceedings in any action.'") (alteration in original)

(quoting BLACK'S LAW DICTIONARY 1399 (10th ed. 2014)).  The notice of suspension allegedly

sent to other courts is part of Defendants' official functions, namely "investigat[ing] all matters

involving alleged misconduct by an attorney subject to the disciplinary jurisdiction of this Court,"

"prosecut[ing] all disciplinary proceedings before the Hearing Committees, the Board, and the

[D.C. Court of Appeals]," and "*disclos[ing]* information pertaining to proceedings resulting in

informal admonitions to [other] court[s]."  D.C. Bar R. XI, §§ 6(a)(1), 4, & § 17(c) (emphasis

added).  The complaints allege no facts to support its assertion that Defendants engaged in other

*ex parte* contacts with the Northern District of California, 965 Compl. ¶ 24, or with the Western

District of Texas or the Northern District of Texas, 3109 Compl. ¶ 35; 3579 Compl. ¶ 35, let alone

to support a conclusion that such contacts would constitute a form of process.  Those conclusory

allegations of *ex parte* contacts cannot save the abuse of process claim.  *Iqbal*, 556 U.S. at 678.

Even if the notice could be considered a form of process, Plaintiff would fail to state a

claim for abuse of process because the complaints do not allege facts to establish the elements of

the claim.  "The essence of the tort of abuse of process is the use of the legal system 'to accomplish

some end which is without the regular purview of the process, or which compels the party against

whom it is used to do some collateral thing which he could not legally and regularly be required

to do.'"  *Scott v. District of Columbia*, 101 F.3d 748, 755 (D.C. Cir. 1996) (quoting *Bown v.

Hamilton*, 601 A.2d 1074, 1079 (D.C. 1992)); *accord, e.g.*, *Michaels v. NCO Fin. Sys., Inc.*, No.

CV 16-01339 (TFH), 2020 WL 2800664, at *8–*9 (D.D.C. May 29, 2020).  The two "essential"

elements of the claim are: "(1) the existence of an ulterior motive; and (2) an *act* in the use of

process other than such as would be proper in the regular prosecution of the charge."  *Houlahan v.

World Wide Ass'n of Specialty Programs and Schools*, 677 F. Supp. 2d 195, 199 (D.D.C. 2010)

(quoting *Hall v. Hollywood Credit Clothing Co.*, 147 A.2d 866, 868 (D.C. 1959)); *see also Morowitz v. Marvel*, 423 A.2d 196, 198 (D.C. 1980) ("in addition to ulterior motive, one must allege and prove that there has been a perversion of the judicial process and achievement of some end not contemplated in the regular prosecution of the charge").

Rather than establish the elements of a claim for abuse of process, the facts as alleged direct the conclusion that Defendants issued the notice of Plaintiff's suspension for the purpose intended by such a notice, *viz.*, to notify other jurisdictions that the D.C. Court of Appeals had suspended Plaintiff.  "[T]here is no action for abuse of process when the process is used for the purpose for which it is intended."  *Scott*, 101 F.3d at 755 (alteration in original) (quoting RESTATEMENT (SECOND) OF TORTS § 682 cmt. b (1977)).  Plaintiff acknowledges that he was in fact suspended. 965 Compl. ¶ 20; 3109 Compl. ¶ 17; 3579 Compl. ¶ 17.  And as previously stated, the notice to other jurisdictions followed the ABA Model Rules for Lawyer Disciplinary Enforcement.  ABA Model Rule for Lawyer Disciplinary Enforcement 22 cmt.  The propriety of the notice is underscored by the typical practice of jurisdictions to consider an attorney's suspension in another jurisdiction to be relevant to the attorney's practice in their jurisdiction.  *E.g.*, D.C. Bar R. XI § 11(b) ("It shall be the duty of Disciplinary Counsel to obtain copies of all orders of discipline from other disciplining courts."); 9th Cir. Local R. 46(c) ("A member of this court's bar is subject to suspension or disbarment by the court if the member…has been suspended or disbarred from practice in any other court…").  In fact, Plaintiff was required to self-report his suspension to the Ninth Circuit, as well as the Western District and Northern District of Texas under their respective Local Rules.  9th Cir. Local R.46-2(c) ("An attorney who practices before this Court shall provide the Clerk of this Court with a copy of any order or other official notification that the attorney has been subjected to suspension or disbarment in another jurisdiction"); W.D. Tex. Local R. AT-7(e);

N.D. Tex. Local Civ. R. 83.8(d).  Additionally, the Florida Bar requires members to self-report "a disciplinary resignation, disciplinary revocation, disbarment, or suspension or any other surrender of the member's license to practice law" from another jurisdiction. *See* R. Reg. Fla. Bar 3-7.2(l)(1).

Beyond the complaints' failure to allege facts establishing any improper use of the notice of suspension, they allege no facts that would support a reasonable inference that any Defendant harbored an ulterior motive.  The allegation that Ms. Porter stated during a Board of Professional Responsibility hearing that Plaintiff "should not continue to have the privilege of being a lawyer," 965 Compl. ¶ 14; 3109 Compl. ¶ 11; 3579 Compl. ¶ 11 is, on its face, consistent with her role as a prosecutor pursuing the misconduct charges against Plaintiff.  It is plainly advocacy in connection with a disciplinary proceeding.  Plaintiff's allegations are limited to conclusory statements that Defendants worked "together in concert," *see*, *e.g.*, 965 Compl. ¶ 32, and are short on actual specific allegations of fact regarding specific defendants.   The conclusory assertions that Defendants sought to harass Plaintiff and harm him financially because of his politics and advocacy, 965 Compl. ¶¶ 14–19; 3109 Compl. ¶¶ 13–15; 3579 Compl. ¶¶ 13–15, cannot support the abuse of process claim.  *Iqbal*, 556 U.S. at 678.  Notably, Judge Moss and the D.C. Circuit rejected similar conclusory assertions of political motivation as insufficient to support the bad-faith exception to *Younger* abstention in *Klayman I* and *Klayman II*.  *Klayman I*, 2019 WL 2396538, at *9; *Klayman II*, 2019 WL 2396539, at *4; *Klayman I and II*, 2020 WL 6038713, at *2.[7]

---

[7] An application of California and Texas law should also result in the abuse of process claim being dismissed. California requires the plaintiff allege two elements to state a claim for this tort:  "(1) an ulterior purpose; and (2) a willful act in the use of the process not proper in the regular conduct of the proceeding."  *IMP Int'l, Inc. v. Zibo Zhongshi Green Biotech Co.*, No. EDCV141339JGBDTBX, 2015 WL 13357602, at *6 (C.D. Cal. Mar. 20, 2015).  Courts interpreting California law recognize that "'[t]he essence of the tort of abuse of process is the perversion of legal proceedings properly set in motion to a purpose for which it was not

In the event this Court were to consider the notice at issue here to be a form of process (which it should not), it should dismiss Plaintiff's abuse of process claim as unsupported.

## **CONCLUSION**

For the foregoing reasons, the Court should dismiss these actions.  Because they are so plainly improper, the dismissal should be with prejudice.  *See Klayman III*, slip op. at 10.

Dated: November 19, 2021

Respectfully submitted,

*/s/ Mark J. MacDougall*
Mark J. MacDougall (D.C. Bar No. 398118)
Caroline L. Wolverton (D.C. Bar No. 496433)
Samantha J. Block (D.C. Bar No. 1617240)
AKIN GUMP STRAUSS HAUER & FELD
2001 K Street, NW
Washington, DC 20006-1037
Tel: (202) 887-4000
Fax: (202) 887-4288
mmacdougall@akingump.com
cwolverton@akingump.com
samantha.block@akingump.com

*Counsel for Defendants Julia Porter, Hamilton Fox, III, Lawrence K. Bloom*

*/s/ Preston Burton*
Benjamin B. Klubes (Bar No. 428842)

---

intended.'"  *Boyd v. Pacifica Found.*, No. 13-CV-03672-JCS, 2013 WL 5979180, at *6 (N.D. Cal. Nov. 8, 2013) (quoting *Blue Goose Growers, Inc. v. Yuma Groves, Inc.,* 641 F.2d 695, 696 (9th Cir. 1981)).  Under Texas law, an abuse of process claim requires a plaintiff to demonstrate that:  "(1) the defendant made an illegal, improper or perverted use of the process, a use neither warranted nor authorized by the process; (2) the defendant had an ulterior motive or purpose in exercising such illegal, perverted or improper use of the process; and (3) damage resulted to the plaintiff as a result of such illegal act."  *Matter of Dallas Roadster, Ltd.*, 846 F.3d 112, 124 (5th Cir. 2017) (quotation and citation omitted).  For the same reasons that this claim does sufficiently allege these elements under D.C. law, it likewise does not in California or Texas.

27

Preston Burton (Bar No. 426378)
BUCKLEY LLP
2001 M Street, NW, Suite 500
Washington, DC 20036
(202) 349-8000
bklubes@buckleyfirm.com
pburton@buckleyfirm.com

*Counsel for Defendant Matthew Kaiser*