IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| LARRY KLAYMAN<br><br>　　　　　Plaintiff,<br><br>v.<br><br>JULIA PORTER,  HAMILTON FOX III, and LAWRENCE BLOOM<br><br>　　　　　Defendants. | CASE NOS: 20-cv-3109, 21-3579, 21-965 |

**PLAINTIFF LARRY KLAYMAN'S RESPONSE TO DEFENDANTS' SUBMISSION IN RESPONSE TO QUESTIONS RAISED BY THE COURT DURING TELEPHONIC HEARING OF JUNE 29, 2022 AND MOTION FOR SANCTIONS AND REFERRAL**

Plaintiff Larry Klayman ("Mr. Klayman") hereby submits the following in response to the Defendants' Submission in response to Questions Raised by the Court During Telephonic Hearing of June 29, 2022 and respectfully moves for sanctions and referral to an independent authority overseeing the politically compromised District of Columbia Office of Bar Disciplinary Counsel Hamilton Fox and his equally partisan superior, Chairman Mathew Kaiser of the Board on Professional Responsibility, for investigation and review of the patently false, misleading, and otherwise untrue statements made by counsel for the Defendants addressed herein.

At the non-evidentiary hearing of June 29, 2022, this Honorable Court took umbrage at Plaintiff Klayman's statement that counsel for Bar Disciplinary Counsel Fox and his comrades had not acted ethically. In response, Mr. Klayman pointed out that he should be able to talk

directly and clearly with the Court and not mince words, as the Court has the same prerogative with counsel who appear before it.

As set forth below, counsel for the Defendants have not just attempted to unethically misrepresent facts to prejudice Plaintiff, they have now succeeded in this regard by obtaining an unconstitutional preliminary injunction against Mr. Klayman exercising his rights to file lawsuits to protect his proper and legitimate interests. In this regard, this Court also took umbrage when Mr. Klayman urged it to review the pleadings carefully before making any rulings that could harm him, and while Plaintiff meant no disrespect, it would appear to a reasonable person that this Court did not thoroughly review the pleadings before it rushed to enjoin Mr. Klayman from exercising his constitutional rights to file lawsuits to seek redress for Defendants literal crusade to remove him from the practice of law based on his conservative public interest advocacy in a town, the nation's capital to be precise, which has rightly become known as the swamp, based on its primarily leftist and Democrat dominated partisan and corrupt practices inimical to the legitimate interests of the American people.

## **False Statement #1**

> It's also absolutely clear that, that Mr. Fox and Ms. Porter will prevail on the merits given the fact that the DC Circuit has ruled on these facts, on these with these parties in U.S. v, in Klayman v. [Lim] in November of 2020. Exhibit 1 Transcript at: 4:23 – 5:1.

This statement by Mark MacDougall ("Mr. MacDougall"), counsel for Defendants Porter, Fox, and Bloom is completely and utterly false. The D.C. Circuit has absolutely never ruled on the facts at issue in this instant case, which involves the Defendants covertly sending *ex parte* secret letters to other jurisdictions where Mr. Klayman practices in order to try to

maliciously harm and damage his ability to practice law and represent clients in these other jurisdictions.

To the contrary, *Klayman v. Lim*, 19-7099 (D.C. Cir.) was centered around an entirely frivolous bar complaint brought by Office of Bar Disciplinary Counsel ("ODC") regarding Mr. Klayman's efforts to obtain *pro hac vice* admission in the criminal trial of Cliven Bundy in Nevada. The *Lim* case had absolutely zero (0) to do with illegally sending out *ex parte* letters, and, since it was originally filed in the U.S. District Court for the District of Columbia in 2018, could not possibly have involved these *ex parte* letters which were sent out in 2020.

Although not expressly listed as an example by Mr. MacDougall, *Klayman v. Fox*, 19-7100 (D.C. Cir.), which was filed around the same time as *Lim*, was centered around another entirely frivolous bar complaint brought by ODC regarding Mr. Klayman's representation of Elham Sataki in 2010. This entirely frivolous bar complaint was brought by a disgruntled ex-client who actually abandoned her complaint against Mr. Klayman, before ODC literally hired a private investigator to hunt her down years later in order to get her to revive her complaint so that they could use it to viciously attack and attempt to destroy Mr. Klayman. Importantly, Ms. Sataki's identical complaints were summarily dismissed by The Florida Bar and the Pennsylvania Bar as completely frivolous and meritless, but ODC has seized on this opportunity to use it to try to destroy Mr. Klayman despite knowing that it is completely meritless and frivolous. Importantly, this case—the operative facts of which occurred in 2010 and 2011—had absolutely nothing to do with *ex parte* letters being sent by the Defendants.

Thus, it was absolutely false for Mr. MacDougall to say that the D.C. Circuit "has ruled on these facts." To put it simply, Mr. MacDougall's actions are unethical, period. And, this is

not the first time that he has lied to this Court. *See* ECF No. 48, 52, 67. Yet, one should not hold one's breath on the District of Columbia Bar Office of Disciplinary Counsel and its superior Board on Professional Responsibility taking any disciplinary action, since he represents them, he claims, pro bono. The quid pro quo apparently for this representation is to be immune from bar disciplinary proceedings and indeed when Mr. Klayman filed a complaint in this regard, it was ignored with not even a response from bar disciplinary authorities.

### False Statement # 2

> [The Court] And as I understand all of these actions that have been filed arise out of the same factual situation? Tr. 6:7-9
>
> [Mr. MacDougall] They do, Your Honor. And as the pleadings will show and the attachments show these all arise out of Mr. Klayman's unhappiness with the proceedings that have brought against him, some of which have been concluded by the DC Bar Office of Disciplinary Council. And most importantly, the conduct of these lawyers acting entirely within the scope of their duties as employees and as officers of the ODC. And I would point out to the Court that the DC Circuit addressed this issue when Mr. Klayman raised it in his appeal and clearly pointed out that the immunity that they enjoy is absolute. And it can't be tinkered with by trying to find, you know, minor factual differences. The conduct that Mr. Klayman complains of is all related to and arises out of his disciplinary proceedings. And all of it is conduct that was engaged in in the performance of their duties by the defendants. Tr. 6:18 – 7:9.

Again Mr. MacDougall doubles down on the lie that the prior cases, *Lim* and *Fox* involved the same "factual situation" as this instant case—which is completely untrue, as set forth above—but also now brings into question to issue of absolute immunity. Defendants cannot hide behind the shield of their self-anointed "absolute immunity" for numerous reasons.

*First and foremost*, the source of the "absolute immunity" cited by this Court, as well as the District Court, is the District of Columbia Bar Rules ("Bar Rules"). *See* D.C. Bar R. XI §

4

19(a). However, the Preamble of the Bar Rules sets forth that (1) the District of Columbia Bar is created by the District of Columbia Court of Appeals as an "official arm of the Court" and (2) the District of Columbia Court of Appeals promulgated the Bar Rules itself. Thus, the District of Columbia Court of Appeals has granted itself "absolute immunity."

This flies in the face of well-established precedent that it is not a court's duty much less right to create law, but only to interpret it. "To begin with, it is inappropriate to give weight to Congress' unenacted opinion when construing judge-made doctrines, because doing so allows the Court to create law and then effectively codif[y] it based only on Congress' failure to address it. **Our Constitution, however, demands that laws be passed by Congress and signed by the President**. Art. I, §7." *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 299 (2014) (emphasis added) (internal citation and quotations omitted). *See also Wilder-Mann v. United States*, 1993 U.S. Dist. LEXIS 9166, at *3 (June 27, 1993) ("The Court doubts that it has the power to create law for the District of Columbia and thereby create jurisdiction for itself under the FTCA.").

Here, the District of Columbia Court of Appeals has simply conveniently decided without basis that it's disciplinary officialdom and apparatus enjoys absolute immunity on its own, that is they are above legal ethics and the law and can do as they please. This "absolute immunity" was not legislated by Congress or District of Columbia legislators. This is not the function of a court and is wholly improper.

Indeed, this is actually the express role of the District of Columbia City Council, as set forth on their website:

> As the central and chief policy-making body for the District of Columbia, the Council's mission is to provide strong, innovative and effective leadership for the benefit of residents across the city. **The Council's central role as a legislative body is to make laws**. However, its responsibilities also include oversight of multiple agencies, commissions, boards and other instruments of District government. Led by the Council Chairman, the members of the Council are working to improve the quality of life in District neighborhoods by ensuring safer streets, furthering education reform, developing a vibrant economy, and implementing groundbreaking programs. Working with the Mayor and the executive branch, the Council also plays a critical role in maintaining a balanced budget and the fiscal health of the District of Columbia government. (emphasis added).[1]

Thus, by in effect "legislating" absolute immunity for its disciplinary officialdom and apparatus, the D.C Court of Appeals, through the Office of Disciplinary Counsel and the D.C. Bar., have usurped the role of the D.C. City Council.

*Secondly,* even if the District of Columbia Court of Appeals' self-granted "absolute immunity" for its officialdom and disciplinary apparatus were proper – again, it is not, as set forth above – it does not apply to the allegations set forth in the Complaint. The Court in *Richardson v. District of Columbia*, 711 F. Supp. 2d 115 (D.D.C. 2010), expressly found this grant of immunity only applies to conduct taken "in the course of [Bar officials'] official duties." Here, the sending of *ex parte* letters to other Courts in other jurisdictions, where Defendants have no jurisdiction, for the sole obvious purpose of tortuously interfering with Mr. Klayman's legal practice in Texas courts, not within the jurisdiction or authority of the Defendants, is clearly outside the scope of any of Defendants' duties as District of Columbia ODC prosecutors. Mr. Klayman's claims against Defendants do not invoke their investigative or prosecutorial duties at all. To the extent that Defendants cite ABA Model Rule for Lawyer Disciplinary Enforcement 22

---

[1] https://dccouncil.us/about-the-council/

as evidence of their "duty" to provide notice to other courts, it is important to note that Defendants cited a non-binding <u>model</u> rule, only meant as a guide, to justify their conduct. Furthermore, an important distinction is the fact that Defendants sent out *ex parte* letters despite knowing that Mr. Klayman was still challenging the DCCA order at the tie through Petitions for Rehearing En Banc. Thus, they were notifying other courts of what in effect was a non-final order, which is evidence that Defendants were intending to tortuously interfere with Mr. Klayman, and not following any model rule, as they now assert *ex post facto* as justification. This occurred not only in the Western District of Texas and the Northern District of Texas, but also the U.S. Court of Appeals for the Ninth Circuit, where Defendants also sent out *ex parte* communications to the Ninth Circuit, going so far as to inform them about confidential ongoing disciplinary proceedings which are still pending before the DCCA. This is a clear violation of Mr. Klayman's constitutional due process rights, as he has been deprived of any meaningful opportunity to defend himself before these jurisdictions due to the secret *ex parte* nature of Defendants' conduct.

*Third*, it is clear that even judicial immunity, much like prosecutorial immunity, does not apply to claims for injunctive relief. Numerous courts have made this finding, including the Lower Court. "…[J]udicial immunity is not a bar to prospective injunctive relief against a judicial officer acting in her judicial capacity," *Moten v. Hatch*, 2011 U.S. Dist. LEXIS 97661, at *3 (D.D.C. Aug. 25, 2011). *See also Livingston v. Guice*, 1995 U.S. App. LEXIS 29238 (4th Cir. Oct. 18, 1995) ("Equally clear, however, is the principle that (even) judges are not absolutely immune from suits for prospective injunctive relief. *Pulliam v. Allen*, 466 U.S. 522, 536-543, 80 L. Ed. 2d 565, 104 S. Ct. 1970 (1984). "Absolute" immunity, therefore, is only

absolute insofar as it limits claims for *damages* brought against judges.") *Id*. at 10. Mr. Klayman has asked for injunctive relief in his Complaint, and accordingly, it is clear that any grant of "absolute immunity," at a bare minimum, should not have applied to those claims. Mr. Klayman hereby renews his request for injunctive relief against Defendants to enjoin them from continuing to vexatiously harass him in hopes of bankrupting him, and thereby silencing his public interest and private advocacy in violation of his sacrosanct First Amendment rights.

**False Statement #3**

> I join Mr. MacDougall's position that these are all collateral attacks due to adverse findings by the DC Bar disciplinary authorities and the DC Court of Appeals. They're all variations on the same, arising from the same conduct, substantially similar facts, essentially the same matter. Judge Moss addressed this in the cases that we've cited, the D.C. Circuit affirmed his dismissal of the cases based on the immunity and Younger extension grounds. Tr. 8:14 – 21

> The members of the Board of Professional Responsibility are rightly immunized from these actions because of this very type of behavior. And they, the disciplinary staff, the courts should not be forced to relitigate this time and again the very same issues because a disciplined lawyer wishes to persist his serial filings. And it's not going to stop unless, until and unless a court takes control and puts an end to this. Tr. 9: 7 – 14.

Counsel for Defendant Kaiser, Preston Burton ("Mr. Burton") joins in on the false statements of Mr. MacDougall that this instant case involves the same facts as *Lim* and *Fox*, and that Mr. Kaiser enjoys self-anointed "absolute immunity." This is completely false, as set forth above.

**False Statement # 4**

> There's no allegation with respect to Mr. Kaiser that he actually either played any role in notifying the other courts other than conclusory assertions of acting in concert. Tr. 9:1 – 4

8

Mr. Burton makes another entirely false statement concerning Mr. Kaiser, as the complaint styled *Klayman v. Kaiser et al*, 3:20-cv-9490 (N.D.Ca.) make detailed and specific allegations concerning Defendant Kaiser:

> Plaintiff Klayman has notified Defendant Kaiser, Chairman of the Board of Professional Responsibility of the District of Columbia Bar, who is the head of this highly partisan and compromised D.C. Bar disciplinary apparatus, as set forth in Exhibit 3, and he has failed to take remedial action, thus necessitating this complaint, as he has participated in and/or ratified the illegal and unethical acts alleged herein. Comp. ¶ 36

> This communication with Defendant Kaiser, who is a highly partisan advocate and whose activism opposes that of Mr. Klayman – underscores that he has written articles for his leftist publication "Above the Law", [2] extolling the "honesty" of Hillary Clinton and trashing President Donald Trump and has donated to those who Mr. Klayman in his public interest capacity has sued such as the Clintons, President Barack Obama and President-elect Biden, effectively admitted that his agents of the District of Columbia Bar have sent and are vindictively sending unsolicited letters to courts and bar associations concerning pending non-final disciplinary proceedings for which they have no authority to do under the District of Columbia Bar Rules of Professional Responsibility, in order to harm and prejudice Mr. Klayman's interests with his clients and otherwise and to damage his reputation and good will and standing in the legal profession. Exhibit 3. Defendant Kaiser has not coincidentally donated heavily to leftist Democrats and presidents and president elects such as Joe Biden, who Mr. Klayman has sued in his pubic interest and personal legal capacity. Comp. ¶ 37

> The December 16, 2020 letter of Defendant Kaiser admits, "**You do not identify any impropriety in Disciplinary Counsel's alleged sharing of the publicly-available Board Report in Board Docket No. 17-BD-063, with courts and other disciplinary authorities**." Exhibit 3. This response and dodge constituted an admission of wrongdoing as alleged herein. Comp. ¶ 38.

---

[2] https://abovethelaw.com/2016/08/hillary-clinton-truthfulness-and-bias-in-white-collar-cases/; https://abovethelaw.com/2016/07/trump-and-tyranny/

Thus, this was another completely false, and easily disproven, statement by Mr. Burton, who was apparently counting on the fact that the Court would not have reviewed the *Kaiser* Complaint prior to the hearing.

**False Statement # 5**

> Your Honor, I guess my response would be respectfully, and I must be candid, that that's an issue we haven't really dug in to. But I think the opposite analysis would be the correct one, which is what authority requires the DC Bar to provide that kind of notification. I have copies of those letters, I don't think there is such authority. Tr. 23:11 – 17.

This is a completely backwards, misleading, and fraudulent argument by Mr. MacDougall, as he essentially concedes that there is no authority for the Defendants to send out *ex parte* letters to other jurisdictions, but still contends that the absence of such express authority actually grants them this authority. As Mr. Klayman only half joked at the hearing, "[w]ell, there's nothing that says they can't kill me either, Your Honor." Tr. 34:14-15.

The logical and correct interpretation is that Defendants are bound by the Rules of the Board on Professional Responsibility and the D.C. Bar Rules, and cannot exceed the authority granted within those rules, lest they also concede that these rules are not applicable and therefore their precious self-anointed "absolute immunity" would also not apply. If the Board on Professional Responsibility rules and the D.C. Bar Rules do not permit Defendants to send out *ex parte* letters, then they must not do so.

In Defendants' Response to Questions Raised by the Court During Telephone hearing of June 29, 2022, they refer to D.C. Bar Rule XI § 17(c), which states that "("Disciplinary Counsel may disclose information pertaining to proceedings resulting in informal admonitions to any court, to any other judicial tribunal or disciplinary agency . . . ."), but conveniently ignore the

fact that this provision <u>does not give Defendants authority to send out *ex parte* letters</u>! The main problem, among other enumerated ethics and legal issues, with these letters sent by the Defendants is that they were done in secret, *ex parte* fashion, leaving Mr. Klayman without notice and therefore no opportunity to respond to the bogus claims contained therein. That is where the harm lies, and Defendants still fail to come up with an iota of authority permitting them to engage in this type of conduct designed to harm Mr. Klayman, his family and his colleagues.

**False Statement # 6**

> And it is also noteworthy as stated on page nine of the complaint alleges no facts supporting plaintiff's assertion that Mr. Fox, Mr. Porter or Mr. Kaiser had any role sending the notice that he complains about let alone that they acted outside their duties. Tr. 42: 6-10

Lastly, Mr. Burton shamelessly again doubles down on his false assertions regarding the level of specificity contained in the *Kaiser* Complaint, which are completely false, as set forth above. The *Kaiser* Complaint expressly sets forth that the Defendants were working together in concert:

> Defendants, each and every one of them, acting in concert, have ignored this requirement and have engaged in the equivalent of a partisan politically and gender based agenda and in effect a "jihad" to have Mr. Klayman removed from the practice of law, after Klayman's 40-year history of continuously been a member in good standing of the District of Columbia Bar. Mr. Klayman has been a member continuously in good standing of The Florida Bar for almost 43 years.

With regard to Defendant Porter, the Complaint details the fact that she openly admitted her and her ODC compatriots' unjustified leftist Democrat agenda is to have Mr. Klayman removed from the practice of law, when she incredibly proclaimed that Mr. Klayman "should not continue to have the privilege of being a lawyer." *Kaiser* Comp. Ex. 1. This mission and agenda have been

put into effect against other conservative and Republican lawyers ever since Messrs. Fox and his comrade Kaiser took control of the District of Columbia Bar disciplinary apparatus. Both rabid partisans they have gone and are going after conservative attorneys, while looking the other way on major ethics violations by those on their side of the leftist and Democrat ideological fence, most recently convicted felon Kevin Clinesmith, not to mention counsel to Hillary Clinton, David Kendall, to name just two of their protected species.

During the Trump years in particular, ethics complaints were filed, accepted and initiated against Trump White House Counsellor Kellyanne Conway[3] over remarks she made on cable news, against former Trump Attorney General William Barr[4] (the complaint was outrageously and incredibly filed by all prior presidents of the bar as well as a former senior bar counsel) for withdrawing the indictment of General Mike Flynn and for remarks he made on Fox News, Senators Ted Cruz[5] and Josh Hawley[6] over their role in advocating for President Trump in the last election, and of course former U.S. Attorney Rudy Giuliani[7] over his representation of President Trump, to name just a few. To the contrary, and as just one example of selective enforcement if not prosecution, when a complaint was filed against fellow leftist Democrat

---

[3] https://www.washingtonpost.com/politics/law-professors-file-misconduct-complaint-against-kellyanne-conway/2017/02/23/442b02c8-f9e3-11e6-bf01-d47f8cf9b643_story.html
[4] https://thehill.com/regulation/court-battles/508489-more-than-two-dozen-dc-bar-members-urge-disciplinary-probe-of-ag
[5] https://www.texasstandard.org/stories/lawyers-law-students-officially-file-grievances-seeking-to-disbar-senator-ted-cruz/
[6] https://thehill.com/homenews/state-watch/534783-attorneys-urge-missouri-supreme-court-to-probe-hawleys-actions
[7] https://www.law.com/newyorklawjournal/2021/03/03/nyc-bar-details-complaints-calling-for-full-attorney-discipline-investigation-of-giuliani/#:~:text=Under%20the%20New%20York%20state,censured%20or%20receive%20no%20punishment.

lawyer David Kendall of Williams & Connolly over his admitted involvement in the destruction of Hillary Clinton's 33,000 emails illegally retained on a private server, which complicity is not even in dispute, ODC summarily and quickly rejected a complaint filed by conservative lawyer and public interest advocate Ty Clevenger, who ODC has also attempted to disbar, until they drove him into submission due to the cost of defending himself, and he simply resigned.[8]

And now, the facts surrounding ODC's refusal to enforce its own rules on Kevin Clinesmith—the former senior Trump hating FBI lawyer who falsified a surveillance document in the Trump-Russia investigation and who pled guilty to felony charges—have been revealed.[9] <u>Exhibit 2</u>. The Court can take judicial notice of this, as matters of public record. Even though it is customary to seek disbarment for lawyers who are convicted of serious crimes, ODC did not even initiate disciplinary proceedings and temporarily suspend him until <u>five months</u> after Clinesmith pled guilty, and only after their inaction was uncovered and subjected to negative publicity. It is clear that ODC and the Board intended to simply sweep this under the rug until their duplicitous practice of selective prosecution was uncovered and revealed further. Then, even more incredibly, Clinesmith was reinstated as a member of the bar in good standing after the Court agreed with ODC's recommendation to let Clinesmith off with time served after just seven (7) months. Records show that ODC did not even check with Clinesmith's probation officer to see if he had violated terms or completed his community service requirement. ODC and the Board also did not seem to care that Clinesmith did not report his felony guilty plea to

---

[8] Ty Clevenger, State bar prosecutors are flouting the law, protecting Hillary Clinton and her lawyers, LawFlog, available at: https://lawflog.com/?p=1389

[9] *In Matter of Kevin E. Clinesmith,* 21-BG-018 (D.C. App.)

the bar within 10 days, as required by the rules, and instead failed to do so for five (5) months. Despite all of this, Clinesmith was allowed to negotiate his practically non-existent sanction with his ODC compatriots and sycophants led by Chairman Kaiser at the Board. The reason for this preferential treatment? Clinesmith's fraud was committed in order to destroy President Trump, and Clinesmith has himself publicly made virulent anti-Trump political messages. Defendants Fox and Kaiser orchestrated this "dive" in order to clearly favor Clinesmith, who they are ideologically akin to.  In stark contrast, an apparently ethical bar association which apparently dealt with facts and not political favors—the Michigan Bar—promptly automatically suspended Clinesmith on the day he pled guilty of a felony and suspended him for two years

And, it is more that clear that sending out these illegal *ex parte* secret letters, which to this day Defendants arrogantly refuse to disclose believing that this Court will favor them, as it already has, is outside the scope of the Defendants' duties, as apparently conceded by Mr. MacDougall, there is no authority that allows for them to do so, as set forth above.

## CONCLUSION

Based on the foregoing, the Court must not take the misrepresentations and false statements of Defendants counsel at face value without delving and digesting the real verifiable facts and carefully reviewing the case record, and immediately sanction Defendants and their counsel for repeatedly making false, misleading, and otherwise untrue statements during the June 29, 2022 hearing, and before that as set forth in prior motions and supplements. ECF No. 48, 52, 67.

This matter must also be referred to an independent authority, perhaps a special master if the Court lacks the resources and time to thoroughly review the record, for investigation and

review of the patently false, misleading, and otherwise untrue statements made by counsel for the Defendants, as they are simply not above the law and must be held accountable for their continued perversions of the truth.

Date: July 22, 2022                                             Respectfully submitted,

                                                                 */s/ Larry Klayman*
                                                                 Larry Klayman, Esq.
                                                                 7050 W. Palmetto Park Rd
                                                                 Boca Raton, FL, 33433
                                                                 Tel: (561)-558-5336
                                                                 Email: leklayman@gmail.com

                                                                 Plaintiff Pro Se


## CERTIFICATE OF SERVICE

I, Larry Klayman, hereby certify that on this day, July 22, 2022 a copy of the foregoing was filed using the Court's ECF system and served on counsel for all parties via the Court's ECF system.

                                                                 */s/ Larry Klayman*