# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| LARRY ELLIOT KLAYMAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 20-3109 (RBW) |
| | ) | |
| JULIA PORTER, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| LARRY ELLIOT KLAYMAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 20-3579 (RBW) |
| | ) | |
| JULIA PORTER, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| LARRY ELLIOT KLAYMAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 21-965 (RBW) |
| | ) | |
| MATTHEW KAISER, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

The plaintiff, Larry Klayman, an attorney proceeding pro se, brings these civil actions against the defendants, Julia Porter; Hamilton Fox, III; Lawrence Bloom; and Matthew Kaiser,[1] alleging claims of tortious interference, see Complaint ¶¶ 37–41, Klayman v. Porter, Civil Action No. 20-3109 ("Porter I Compl."); Complaint ¶¶ 36–40, Klayman v. Porter, Civil Action No. 20-3579 ("Porter II Compl."); Complaint ¶¶ 45–49, Klayman v. Kaiser, Civil Action No. 21-965 ("Kaiser Compl."), and abuse of process, see Porter I Compl. ¶¶ 42–47; Porter II Compl. ¶¶ 41–46; Kaiser Compl. ¶¶ 50–55.   Currently pending before the Court are: (1) the Defendants' Motion for an Injunction Against Vexatious Litigation by Plaintiff ("Defs.' Injunction Mot." or the "defendants' motion for an injunction"), ECF No. 21; (2) the Defendants' Joint Motion to Dismiss ("Defs.' 12(b)(1) Mot." or the "defendants' motion to dismiss"), ECF No. 58; (3) the Defendants' Motion for Interim Relief ("Defs.' Interim Relief Mot." or the "defendants' motion for interim relief"), ECF No. 64; (4) the plaintiff's Cross-Motion for Sanctions ("Pl.'s Sanctions Mot." or the "plaintiff's cross-motion for sanctions"), ECF No. 67; and (5) the defendants' Motion to Strike Plaintiff's "Reply to Defendants' Reply" and Plaintiff's Subsequent "Addition" to Plaintiff's Reply to Defendants' Reply ("Defs.' Strike Mot." or the "defendants' motion to strike"), ECF No. 73.   Upon careful consideration of the parties' submissions,[2] the Court

---

[1] Porter, Fox, and Bloom were all named as defendants in the two cases brought by the plaintiff that were later consolidated with the instant case, Civil Action Nos. 21-3579 and 21-965, see generally Order (Nov. 2, 2021), ECF No. 57 (consolidating cases); see also infra Part I.B, while Kaiser was named as a defendant only in Klayman v. Kaiser, Civil Action No. 21-965.

[2] In addition to the filings already identified, the Court considered the following submissions in rendering its decision: (1) the Plaintiff's Opposition to Defendants' Motion for Injunction Against Vexatious Litigation by Plaintiff, Request for Evidentiary Hearing or Trial, and Cross Motion for Sanctions Under 28 U.S.C. § 1927 and the Court's Inherent Authority ("Pl.'s Injunction Opp'n"), ECF No. 46; (2) the Defendants' Reply in Support of Their Motion for an Injunction Against Vexatious Litigation by Plaintiff ("Defs.' Injunction Reply"), ECF No. 49; (3) the Plaintiff's Opposition to Defendants' Joint Motion to Dismiss and Supplement to Defendants' Motion for Permanent Injunction Against Vexatious Litigation ("Pl.'s 12(b)(1) Opp'n"), ECF No. 60; (4) the Defendants' Reply in Support of Their Motion for an Injunction Against Vexatious Litigation by Plaintiff and Their Motion to Dismiss ("Defs.'
(continued . . .)

concludes for the following reasons that it must (1) grant the defendants' motion for an injunction, (2) grant the defendants' motion to dismiss, (3) deny as moot the defendants' motion for interim relief, (4) deny the plaintiff's cross-motion for sanctions, and (5) deny as moot the defendants' motion to strike.

## I.    BACKGROUND

### A.    Factual Background

#### 1.    The Plaintiff's Prior Lawsuits

Before filing the three cases currently before the Court, the plaintiff previously filed three other lawsuits, two in this Court and one in the Superior Court of the District of Columbia, all stemming from events involving the plaintiff's disciplinary proceedings conducted by the Office of Disciplinary Counsel in the District of Columbia ("ODC"), and all were dismissed. See generally Klayman v. Fox ("Klayman I"), No. 18-cv-1579 (RDM), 2019 WL 2396538 (D.D.C. June 5, 2019), aff'd, 830 F. App'x 660 (D.C. Cir. 2020); Klayman v. Lim ("Klayman II"), No.

---

(. . . continued)
12(b)(1) Reply"), ECF No. 62; (5) the Plaintiff's Supplement to Opposition to Defendants' Joint Motion to Dismiss and Supplement to Defendants' Motion for Permanent Injunction Against Vexatious Litigation and Request for Full Evidentiary Hearing ("Pl.'s Injunction Supp."), ECF No. 63; (6) the Plaintiff's Opposition to Motion for Interim Relief and Cross Motion for Sanctions and Other Relief ("Pl.'s Interim Relief Opp'n"), ECF No. 66; (7) the Defendants' Reply in Support of Their Motion for an Injunction Against Vexatious Litigation by Plaintiff and Opposition to Plaintiff's Cross Motion for Sanctions ("Defs.' Interim Relief Reply"), ECF No. 69; (8) the Defendants' Reply in Support of Their Motion for an Injunction Against Vexatious Litigation by Plaintiff and Opposition to Plaintiff's Cross Motion for Sanctions ("Defs.' Sanctions Opp'n"), ECF No. 70; (9) the Plaintiff's Reply to Defendants' Reply in Support of Their Motion for an Injunction Against Vexatious Litigation by Plaintiff and Opposition to Plaintiff's Cross Motion for Sanctions ("Pl.'s 1st Injunction Surreply"), ECF No. 71; (10) the Plaintiff's Addition to Reply to Defendants' Reply in Support of Their Motion for an Injunction Against Vexatious Litigation by Plaintiff and Opposition to Plaintiff's Cross Motion for Sanctions ("Pl.'s 2d Injunction Surreply"), ECF No. 72; (11) the Plaintiff's Opposition to Motion to Strike ("Pl.'s Strike Opp'n"), ECF No. 74; (12) the defendants' Submission in Response to Questions Raised by the Court During Telephonic Hearing of June 29, 2022 ("Defs.' Submission"), ECF No. 85; (13) Plaintiff Larry Klayman's Response to the Defendants' Submission in Response to Questions Raised by the Court During Telephonic Hearing of June 29, 2022 and Motion for Sanctions and Referral ("Pl.'s Resp. to Defs.' Submission"), ECF No. 89; (14) Plaintiff Larry Klayman's Addendum to His Response to Defendants' Submission in Response to Questions Raised by the Court During Telephonic Hearing of June 29, 2022 and Motion for Sanctions and Referral ("Pl.'s Resp. Addendum to Defs.' Submission"), ECF No. 90; (15) Plaintiff Larry Klayman's Amended Addendum to His Response to Defendants' Submission in Response to Questions Raised by the Court During Telephonic Hearing of June 29, 2022 and Motion for Sanctions and Referral ("Pl.'s Am. Resp. Addendum to Defs.' Submission"), ECF No. 91; and (16) the Defendants' Opposition to Plaintiff's Motion for Sanctions ("Defs.' 2d Sanctions Opp'n"), ECF No. 92.

18-cv-2209 (RDM), 2019 WL 2396539 (D.D.C. June 5, 2019), aff'd, 830 F. App'x 660 (D.C. Cir. 2020); Klayman v. Porter ("Klayman III"), No. 2020 CA 000756 B (D.C. Super. Ct. Oct. 1, 2020).

The first of the three prior cases was filed on July 3, 2018, in Klayman I, and the plaintiff asserted claims of abuse of process, see Complaint ¶¶ 94–97, Civil Action No. 18-1579 ("Klayman I Compl."), malicious prosecution, see id. ¶¶ 98–102, violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, see id. ¶¶ 103–08, and violation of the First Amendment to the United States Constitution, see id. ¶¶ 109–15. The plaintiff argued that the defendants—ODC officials, two of whom are included as defendants in the lawsuits currently before the Court—"conpir[ed] to disbar him or to force him to resign from the D.C. Bar (1) because they disagree with his 'political beliefs [and] public interest activism' and hope to silence him and (2) because of his gender." Klayman I, 2019 WL 2396538, at *1 (quoting Klayman I Compl. ¶ 1). The plaintiff requested both damages and injunctive relief. See Klayman I Compl. at 23. The Court in that case dismissed the plaintiff's claims, finding that "Younger abstention bars [the p]laintiff's claims for injunctive relief; the ODC is non suis juris; and [the p]laintiff's claims for damages are barred by the doctrine of absolute immunity." Klayman I, 2019 WL 2396538, at *1.

The plaintiff filed the second earlier case on September 24, 2018, in Klayman II, alleging claims of abuse of process, see Complaint ¶¶ 80–83, Civil Action No. 18-2209 ("Klayman II Compl."), malicious prosecution, see id. ¶¶ 84–87, violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, see id. ¶¶ 88–93, violation of the First Amendment to the United States Constitution, see id. ¶¶ 94–100, and fraud, see id. ¶¶ 101–04. The plaintiff "allege[d] that [the d]efendants [ ] violated the common law and the U.S.

Constitution by pursuing charges against him for attorney misconduct arising from his efforts to appear pro hac vice as counsel for Cliven Bundy, a criminal defendant, before the U.S. District Court for the District of Nevada." Klayman II, 2019 WL 2396539, at *1. Although the underlying factual allegations related to the plaintiff's ODC proceedings were slightly different from those alleged in Klayman I, the plaintiff lodged an identical argument that the defendants, "acting in concert and as joint tortfeasors, intentionally violated [his] statutory, constitutional, and other rights due to [his] political beliefs, public interest activism, and gender, pursuant to their own individual biases, prejudices, political views, loyalties, and allegiances." Klayman II Compl. ¶ 1; compare id. with Klayman I Compl. ¶ 1. The plaintiff also requested both damages and injunctive relief in Klayman II. See Klayman II Compl. at 21. The Court dismissed Klayman II, finding that "for the same reasons set forth in [Klayman I], [it would] grant the motion to dismiss [the p]laintiff's complaint against the ODC and its staff based on Younger abstention, the non sui juris status of the ODC, and absolute judicial immunity[.]" Klayman II, 2019 WL 2396539, at *1.

The plaintiff then appealed both Klayman I and Klayman II, and the D.C. Circuit issued an opinion affirming the district court's opinions in both cases. See Klayman, 830 F. App'x at 661. Specifically, the Circuit first held that the defendants were "immune from liability for damages on federal- or D.C.-law claims arising from their official actions of initiating and adjudicating disciplinary charges[,]" and to the extent the plaintiff alleged that they acted outside of the scope of their official duties, "[w]hether or not they had good reason to pursue charges, Disciplinary Counsel's inquiry into [the plaintiff]'s affairs and decision to seek disciplinary action 'was plainly within the general matters . . . committed to [their] discretion' under D.C. law[.]" Id. at 662 (quoting Simons v. Bellinger, 643 F.2d 774, 786 (D.C. Cir. 1980)) (last

alteration in original).  Second, in affirming the district court's abstention ruling pursuant to

Younger, the Circuit held that "[f]ederal-court abstention from interference with pending state

proceedings (including D.C. proceedings) is appropriate 'so long as there is no showing of bad

faith, harassment, or some other extraordinary circumstance' on the part of the state 'that would

make abstention inappropriate[,]'" id. (quoting Middlesex Cty. Ethics Comm. v. Garden State

Bar Ass'n, 457 U.S. 423, 435 (1982)), and that the plaintiff's allegations regarding extraordinary

circumstances and bad faith were insufficient to "make abstention inappropriate in this case[,]"

id.  See id. at 663 ("The facts [the plaintiff] alleged—that he and the ODC defendants had

diametrically opposed political affiliations, that he had several heated exchanges with some of

the defendants, and that the Florida and Pennsylvania bars independently decided not to pursue

[a particular] matter—do not amount to 'extraordinary circumstances' justifying federal

intervention."); id. (finding with respect to the bad faith determination that "[the plaintiff] has

made no 'substantial,' nonconclusory allegations that the Disciplinary Counsel defendants have

pursued the matters 'with[out] any expectation of' sustaining the charges against him" (quoting

Younger v. Harris, 401 U.S. 37, 48 (1971)).

     Finally, on January 31, 2020, the plaintiff filed his third prior complaint in the Superior

Court for the District of Columbia, alleging abuse of process against two ODC officials and the

ODC itself.  See Klayman III, No. 2020 CA 000756 B, at 1.  The plaintiff's arguments again

stemmed from the disciplinary bar proceedings brought against him, see id. at 6–12, and the

Superior Court addressed the issues of absolute immunity, referencing this Court's rulings in

Klayman I and Klayman II, see id. at 7–10.  The Superior Court dismissed the case, finding that

"there is both an explicit rule which shields liability for parties in exactly the same position as

[the defendants], as well as long followed legal precedent which instructs the [c]ourt to dismiss

the instant action[,]" id. at 8 (citing DC Bar Rule XI, § 19(a)), and that it "d[id] not find

persuasive [the p]laintiff's conclusory statements that [the defendants'] investigation and

prosecution [ ] is 'unethical conduct outside of the scope of their official duties[,]" id. at 9

(citation omitted).

### 2. The Pending Consolidated Cases

The plaintiff filed the three consolidated cases currently pending before the Court—Civil

Action Numbers 20-3109, 20-3579, and 21-965—on October 2, 2020; August 26, 2020; and

December 31, 2020, respectively.  See Porter I Compl. at 1; Porter II Compl. at 1; Kaiser Compl.

at 1; see also infra Section I.B (detailing the case transfer and reassignment history as to these

actions).  In each of these cases, the plaintiff alleges claims of tortious interference and abuse of

process against the defendants, see supra Preamble, and the following facts form the basis for the

plaintiff's claims in these consolidated cases.

The plaintiff is an attorney who, at the time relevant to the underlying facts associated

with these actions, was licensed to practice law in the District of Columbia and Florida, see

Porter I Compl. ¶ 10; and authorized to practice law in the United States District Court for the

Northern District of Texas, see id. ¶ 22; and the United States Court of Appeals for the Ninth

Circuit, see Kaiser Compl. ¶ 21.  The defendants are all employees or officials of the District of

Columbia Bar: Porter is "employed as Bar Deputy Disciplinary Counsel at [the] Office of Bar

Disciplinary Counsel ('ODC') in the District of Columbia[,]" Porter I Compl. ¶ 4; Fox is

"employed as Bar Disciplinary Counsel at ODC in the District of Columbia[,]" id. ¶ 5; Bloom is

"employed as a Staff Attorney at ODC in the District of Columbia[,]" id. ¶ 6; and Kaiser "serves

as the Chair of the District of Columbia Board on Professional Responsibility[ ("the Board"),]"

Kaiser Compl. ¶ 4. The ODC, which operates under the authority of the District of Columbia

Court of Appeals (the "D.C. Court of Appeals"), see Ford v. Tait, 163 F. Supp. 2d 57, 65

(D.D.C. 2001) ("[T]he D.C. Court of Appeals has authority over the D.C. Bar[.]"), has, inter alia,

the power to (1) "investigate all matters involving alleged misconduct by an attorney subject to

the disciplinary jurisdiction of th[e D.C. Court of Appeals,]" D.C. Bar Rule XI, § 6(a)(2); (2)

"dispose of all matters involving alleged misconduct by an attorney[,]" id. § 6(a)(3); (3)

"prosecute all disciplinary proceedings before Hearing Committees, the Board [on Professional

Responsibility], and the [District of Columbia] Court [of Appeals,]" id. § 6(a)(4); and (4)

"maintain permanent records of all matters processed and the disposition thereof," id. § 6(a)(6).

The Board has the power to "consider and investigate any alleged ground for discipline or

alleged incapacity of any attorney . . . and to take such action with respect thereto as shall be

appropriate[,]" id. § 4(e)(1), and to appoint various members of the ODC staff, see id. § 4(e)(2)–

(4).

On June 11, 2020, the D.C. Court of Appeals accepted the Board's recommendation that

the court "suspend [the plaintiff] from the practice of law for ninety days based on his

representation of three clients in violation of Rule 1.9 (conflict-of-interest) of the District of

Columbia Rules of Professional Conduct[,]" In re Klayman, 228 A.3d 713, 715 (D.C. 2020), and

"issued a [ninety]-day suspension order against [the plaintiff,]" Porter I Compl. ¶ 17; see In re

Klayman, 228 A.3d at 719–20.  The plaintiff then "challenge[d the D.C. Court of Appeals]'s

order via [a p]etition for [r]ehearing by the [p]anel[,] as well as a [p]etition for [r]ehearing [e]n

[b]anc[,]" Porter I Compl. ¶ 18, which were both denied, see Defs.' 12(b)(1) Mot. at 3–4.  While

the plaintiff's challenge to the panel decision was pending resolution, the defendants "sen[t] out

ex parte letters, [on] which [the plaintiff was] not copied[,] . . . to various courts [in which the

plaintiff] is admitted and/or licensed to practice" law—namely, the United States District Court

for the Northern District of Texas and the United States Court of Appeals for the Ninth Circuit—

"notifying them of the [suspension] order." Porter I Compl. ¶ 20; see id. ¶ 24 (alleging that the

letters "were directed to the [ ] the Northern District of Texas"); Kaiser Compl. ¶ 24 (alleging

that "the [d]efendants had ex parte communications with the Ninth Circuit"). The plaintiff

alleges that he "asked [the d]efendants to provide [him with] copies of these ex parte

communications, but [the d]efendants have flatly refused to do so[.]" Porter I Compl. ¶ 23. As a

result of these notifications, the plaintiff states that the Northern District of Texas "opened a

disciplinary case against [him] regarding reciprocal discipline[,]" id. ¶ 27; "ordered the clerk of

[the Northern District of Texas] to remove [the plaintiff's] electronic filing privilege[s],

preventing him from filing pleadings in [an] ongoing case[,]" id. ¶ 28; and "ordered [the

plaintiff] not to file any more cases in th[at c]ourt[,]" id. ¶ 29. With respect to the Ninth Circuit,

the plaintiff states that the court "issued an Order to Show Cause on August 3, 2020[,] as to why

reciprocal discipline should not be issued with regard to the [suspension] order[,]" Kaiser Compl.

¶ 22 (citation omitted), which was discharged in light of the plaintiff's subsequent eligibility for

readmittance to the D.C. Bar, see id. ¶ 23. In the cases that are the subject of this Memorandum

Opinion and as noted earlier have been consolidated, the plaintiff alleges that, by sending ex

parte notifications to other jurisdictions regarding the plaintiff's D.C. Bar status and the

disciplinary action taken against him, the defendants' "conduct amounted to tortious interference

and abuse of process." Porter I Compl. ¶ 30. The plaintiff seeks "general (non-economic),

special (economic), actual[,] and compensatory damages[,] . . . as well as injunctive relief." Id.

at 11.

## B.    Procedural Background

Eight motions were pending in these cases when they were reassigned to this Court's

docket.[3]   On September 24, 2021, the Court issued an Order, denying without prejudice the

motions pending a status conference, and the parties were instructed to "advise the Court as to

their respective priorities for resolution of the pending motions" and the Court would "reinstate

the motions as needed in the order in which they will be resolved."   Order at 5 (Sept. 24, 2021),

ECF No. 56.   After the status conference was conducted on October 29, 2021, the Court (1)

reinstated and granted the Defendants' Motion for Consolidation of Related Cases, ECF No. 45,

---

[3] On October 2, 2020, the plaintiff filed his Complaint in Civil Action No. 20-3109 in the United States District Court for the Western District of Texas, see Porter I Compl. at 1, alleging claims of tortious interference, see id. ¶¶ 37–41, and abuse of process, see id. ¶¶ 42–47.   On October 29, 2020, the case was transferred to this Court, see Order at 2 (Oct. 29, 2020), ECF No. 13, and assigned to Judge Randolph D. Moss, see Min. Order (Nov. 13, 2020) (reflecting a Minute Order issued by Judge Moss).   On December 22, 2020, the defendants filed a motion to consolidate this case with Klayman v. Porter, Civil Action No. 20-3579, which was pending before this Court at the time that Civil Action No. 20-3109 was transferred, because the two cases "involve the same parties, arise out of the same underlying events, seek the same relief, and involve substantively identical issues of law."   Defendants' Motion for Consolidation ("Defs.' Mot. for Consolidation") at 1, ECF No. 20.   The defendants' motion to consolidate was granted on March 22, 2021, and, in accordance with Local Civil Rule 40.5(c)(2), which states that "the judge having the later-numbered case may transfer that case to the Calendar and Case Management Committee for reassignment to the judge having the earlier case[,]" LCvR 40.5(c)(2), ordered that the consolidated cases be assigned to Judge Moss.   See Order at 2 (Mar. 23, 2021), ECF No. 29.

On April 28, 2021, after ordering briefing by the parties on "whether [Civil Action No. 20-3109] is related to Civil Action Nos. 18-cv-1579 and 18-cv-2209[,]" the two other cases assigned to Judge Moss, "under Local Rule 40.5(a)(4)[,]" see Min. Order (Apr. 9, 2021), Judge Moss issued a Memorandum Opinion and Order, directing that "the Clerk of the Court shall return this case [and Civil Action No. 20-3579] to the Calendar and Case Management Committee for random reassignment" because these cases were not related to Civil Action Nos. 18-1579 and 18-2209 "within the meaning of Local Rule 40.5(a)(4)[,]" Memorandum Opinion and Order at 7–8, ECF No. 41.   On April 29, 2021, Civil Action Numbers 20-3109 and 20-3579 were "randomly reassigned to Judge Dabney L. Friedrich."   Min. Entry (Apr. 29, 2021).

On July 23, 2021, Judge Friedrich issued a Minute Order, stating that, "[b]ecause [her] . . . 'impartiality might reasonably be questioned' due to . . . [her] participation in the disciplinary panel's proceedings[,]" she had "directed the Clerk of the Court to contact the parties . . . to determine whether all of the parties waive [her] disqualification."   Min. Order (July 23, 2021) (citing Canon 3D, Code of Conduct for U.S. Judges).   On July 26, 2021, the plaintiff filed a letter, in which he advised the Clerk of the Court that he "cannot consent to waive the conflict of interest pursuant to Canon 3D[.]"   Notice of Filing, ECF No. 53, Exhibit ("Ex.") 1 (Letter from Larry Klayman, Esq. to Angela D. Caesar, Clerk of Cts., U.S. District Ct. for the District of Columbia (July 26, 2021)) at 1.   Consequently, on July 27, 2021, this case was randomly reassigned to this Court's docket.   See Reassignment of Civil Case at 1, ECF No. 54.

and consolidated Civil Action Nos. 21-3579 and 21-965; (2) reinstated the Defendants' Motion

for an Injunction Against Vexatious Litigation by Plaintiff, ECF No. 21; and (3) ordered that the

defendants file a joint motion to dismiss, in light of the Court's consolidation of the related cases.

See Order at 2 (Nov. 2, 2021), ECF No. 57.

On November 19, 2021, the defendants filed their joint motion to dismiss, see generally

Defs.' Mot. to Dismiss, and the briefing on this motion concluded on December 16, 2021, see

Pl.'s Opp'n to Defs.' Mot. to Dismiss at 1; Defs.' Reply to Pl.'s Opp'n to Defs.' Mot. to Dismiss

at 1. This briefing also included further arguments from the parties regarding the defendants'

motion for an injunction. See Pl.'s Opp'n to Defs.' Mot. to Dismiss at 20–27; Defs.' Reply to

Pl.'s Opp'n to Defs.' Mot. to Dismiss at 1–3; see generally Pl.'s Supp.

On January 7, 2022, the defendants filed their Motion for Interim Relief, requesting that

the Court

> enjoin [the p]laintiff from filing or causing to be filed any civil claim in which
> one or any of . . . [the defendants], [or] any former or current employee of either
> body is named as a party, or any D.C. Bar official is named as a party, and from
> serving or causing to be served on one or any of . . . [the defendants] with a
> subpoena or any other instrumentality of civil discovery as a third party in any
> other legal proceeding in which [the plaintiff] is a party, until such time as the
> Court has ruled on [the defendants'] pending Motion for an Injunction Against
> Vexatious Litigation.

Defs.' Interim Relief Mot. at 1–2. The plaintiff filed his opposition to the defendants' motion for

interim relief on February 1, 2022, see generally Pl.'s Interim Relief Opp'n, along with a cross-

motion for sanctions, see id. at 28–32. The defendants filed their reply in support of their motion

for interim relief and opposition to the plaintiff's cross-motion for sanctions on February 8, 2022.

See Defs.' Interim Relief Reply at 7. On February 10, 2022, the plaintiff filed a surreply to the

defendants' reply in support of their motion for an injunction, see Pl.'s 1st Injunction Surreply at

26, and then filed an addition to his surreply on February 11, 2022, see Pl.'s 2d Injunction

Surreply at 3.  On February 11, 2022, the defendants filed a motion to strike the plaintiff's surreply and addition to his surreply.  See generally Defs.' Strike Mot.

On June 29, 2022, the Court held a hearing on the pending motions in this case and took the matter under advisement.  See Order at 1 (June 29, 2022), ECF No. 81.  Following this hearing, the Court ordered that "pending a final ruling by the Court on the pending motions in this case, the plaintiff is precluded from filing any additional lawsuits based upon the previous and pending D.C. Bar proceedings against him."  Id.  Subsequently, on June 30, 2022, the plaintiff filed a Notice of Request for Clarification and/or Correction, regarding whether the June 29, 2022 hearing constituted a motions hearing or evidentiary hearing for purpose of his appeal to the D.C. Circuit.  See Notice of Request for Clarification and/or Correction ("Pl.'s Notice") at 1–2, ECF No. 84.  On July 1, 2022, the defendants filed a submission in response to questions raised at the June 29, 2022 hearing.  See Defs.' Submission at 7.  The plaintiff filed a response to this submission on July 22, 2022, see Pl.'s Resp. to Defs.' Submission, an addendum to his response on July 25, 2022, see Pl.'s Resp. Addendum to Defs.' Submission, and an amended addendum to the response on that same date, see Pl.'s Am. Resp. Addendum to Defs.' Submission.

## II.      STANDARDS OF REVIEW

### A.      Pre-Filing Injunction

"[A] court may employ injunctive remedies to protect the integrity of the courts and the orderly and expeditious administration of justice."  Urban v. United Nations, 768 F.2d 1497, 1500 (D.C. Cir. 1985).  However, with respect to placing pre-filing limitations on a pro se litigant, "any such restrictions must be narrowly tailored to protect that interest 'without unduly impair[ing the] litigant's right of access to the courts[,]'" Smith v. Scalia, 44 F. Supp. 3d 28, 46

(D.D.C. 2014) (quoting In re Powell, 851 F.2d 427, 431 (D.C. Cir. 1988)), and "should 'remain very much the exception to the general rule of free access to the courts[,]'" In re Powell, 851 F.2d at 431 (quoting Pavilonis v. King, 626 F.2s 1075, 1079 (1st Cir. 1980)). In deciding whether to impose a pre-filing injunction, this Court employs a three-step process: "first, notice and the opportunity to be heard are provided; second, the court develops a record for review that considers 'both the number and content of the [plaintiff's] filings[;]' and third, the court 'make[s] substantive findings as to the frivolous or harassing nature of the litigant's actions.'" Smith, 44 F. Supp. 3d at 46 (internal citations omitted).

**B.      Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(1)**

"Federal [district] courts are courts of limited jurisdiction[,]" Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994), and therefore, "[a] motion for dismissal under [Rule] 12(b)(1) 'presents a threshold challenge to the [C]ourt's jurisdiction[,]'" Morrow v. United States, 723 F. Supp. 2d 71, 75 (D.D.C. 2010) (quoting Haase v. Sessions, 835 F.2d 902, 906 (D.C. Cir. 1987)). Thus, the Court is obligated to dismiss a claim if it "lack[s] [ ] subject-matter jurisdiction[.]" Fed. R. Civ. P. 12(b)(1). And, because "it is presumed that a cause lies outside [ ] [the Court's] limited jurisdiction," Kokkonen, 511 U.S. at 377, the plaintiff bears the burden of establishing by a preponderance of the evidence that a district court has subject matter jurisdiction, see Lujan v. Defs. of Wildlife, 504 U.S. 555, 561 (1992).

In deciding a motion to dismiss based upon lack of subject matter jurisdiction, the Court "need not limit itself to the allegations of the complaint." Grand Lodge of the Fraternal Order of Police v. Ashcroft, 185 F. Supp. 2d 9, 14 (D.D.C. 2001) (citation omitted). Rather, the "[C]ourt may consider such materials outside the pleadings as it deems appropriate to resolve the question [of] whether it has jurisdiction to hear the case." Scolaro v. D.C. Bd. of Elections & Ethics, 104

F. Supp. 2d 18, 22 (D.D.C. 2000) (citation omitted); see also Jerome Stevens Pharms., Inc. v. Food & Drug Admin., 402 F.3d 1249, 1253 (D.C. Cir. 2005).  Additionally, the Court must "assume the truth of all material factual allegations in the complaint and 'construe the complaint liberally, granting [the] plaintiff the benefit of all inferences that can be derived from the facts alleged[.]'" Am. Nat'l Ins. Co. v. Fed. Deposit Ins. Corp., 642 F.3d 1137, 1139 (D.C. Cir. 2011) (quoting Thomas v. Principi, 394 F.3d 970, 972 (D.C. Cir. 2005)).  However, "the [p]laintiff's factual allegations in the complaint . . . will bear closer scrutiny in resolving a [Rule] 12(b)(1) motion than in resolving a [Rule] 12(b)(6) motion for failure to state a claim." Grand Lodge, 185 F. Supp. 2d at 13–14 (alterations in original) (citation and internal quotation marks omitted).[4]

## III.    ANALYSIS

The Court will proceed by analyzing: (1) the defendants' motion for a pre-filing injunction; (2) the defendants' motion to dismiss; and (3) the remaining pending motions, in light of the Court's ultimate conclusion that the case must be dismissed.  For the following reasons, the Court concludes that it must grant the defendants' motion for a pre-filing injunction, grant the defendants' motion to dismiss, deny as moot the defendants' motion for interim relief, deny the plaintiff's cross-motion for sanctions, and deny as moot the defendants' motion to strike.

---

[4] The Court also notes that, although the plaintiff is proceeding pro se, as an attorney he "is not automatically subject to the very liberal standards afforded to a non-attorney pro se plaintiff because an attorney is presumed to have a knowledge of the legal system and need less protections from the [C]ourt." Richards v. Duke Univ., 480 F. Supp. 2d 222, 234 (D.D.C. 2007).  Therefore, the Court "will not give [him] all the benefits of the liberal standards that are afforded to pro se litigants and [the] plaintiff's pro se status will not weigh in favor of denying the defendants' motion to dismiss." Id. at 235; see also Klayman v. Zuckerberg, 910 F. Supp. 2d 314, 317 (D.D.C. 2012) (declining to afford the plaintiff Larry Klayman special consideration as a pro se plaintiff, because he is an attorney).

### A.      The Defendants' Motion for a Pre-Filing Injunction

On February 25, 2021, the defendants filed their motion for a permanent injunction, requesting that the Court

> enjoin [the plaintiff] from (1) filing any new action, complaint, or claim for relief against [the defendants], their employer, the Office of Disciplinary Counsel, and current and former employees of the Office of Disciplinary Counsel, the Board of Professional Responsibility, or any D.C. Bar officials in any federal court, state court, or any other forum and (2) serving or causing to be served one or any of the [defendants] with a subpoena or any other instrumentality of civil discovery as a third party in any other legal proceeding in which [the plaintiff] is a party, without first making application to and receiving the consent of this Court and any other court where the litigation is proposed to be filed.

Defs.' Injunction Mot. at 2. The defendants argue that the Court should grant the relief requested because the plaintiff's lawsuits "[u]nnecessarily [b]urden the [m]ovants and the Court[,]" id. at 13, as (1) the defendants have been "forced to expend tremendous time and resources to secure dismissals of [the plaintiff's] vexatious lawsuits[,]" id., which they argue "have no legal merit[,]" id.; (2) the plaintiff's "serial lawsuits extract a substantial personal toll on the [defendants] and their families[,]" id. at 14; see also id. ("On multiple occasions, [the plaintiff's] process server has harassed the [defendants] and ignored COVID-19 protocols."); (3) "[the plaintiff] has consistently filed meritless motions seeking recusal and disqualification of judges who dismiss his claims or otherwise disagree with his legal assertions[,]" id. at 15; and (4) "[the plaintiff] has demonstrated disrespect and contempt for this Court[,]" id. In response, the plaintiff argues that (1) the defendants should be sanctioned for the filing of their motion, see Pl.'s Opp'n to Defs.' Mot. for Injunction at 22–24, and (2) he is not a vexatious litigant, but rather, the defendants are

harassing him and treating him differently than other members of the D.C. Bar because of his political beliefs, see Pl.'s 12(b)(1) Opp'n at 22–23.[5]

Because the defendants request that the Court to enjoin the plaintiff from "filing any new action, complaint, or claim[,]" Defs.' Injunction Mot. at 2, against the defendants, or "serving . . . the [defendants] with a subpoena or any other instrumentality of civil discovery[,]" id., their requested relief is properly characterized as a pre-filing injunction, see Smith, 44 F. Supp. 3d at 45 (characterizing an "injunction that would bar [the plaintiff] from filing any further actions in this district without first seeking leave of court" a pre-filing injunction).  Accordingly, the Court will apply the standard routinely employed by this Court in cases seeking the imposition of pre-filing injunctions.  See, e.g., Crumpacker v. Ciraolo-Klepper, 288 F. Supp. 3d 201, 203–06 (D.D.C. 2018) (applying the standard specific to pre-filing injunctions in lieu of the general permanent injunction standard); Dougherty v. United States, 156 F. Supp. 3d 222, 236 (D.D.C. 2016) (same); Hall v. McAleenan, No. 18-cv-461 (JEB), 2019 WL 2569914, at *2–3 (D.D.C.

---

[5] The plaintiff also argues that "[a]n [e]videntiary [h]earing or at a [m]inimum [d]iscovery is [n]eeded [a]s a [m]atter of [d]ue [p]rocess[.]"  Pl.'s Injunction Opp'n at 24.  Specifically, the plaintiff argues that "Rule 65 of the Federal Rules of Civil Procedure contemplates an evidentiary hearing when substantial constitutional rights are implicated, such [as] abridging [the p]laintiff's right to file suit pro se under the Sixth Amendment to the Constitution."  Id. (underline added).  However, as the Court will discuss, infra Section III.A, the standard applied to the potential imposition of a pre-filing injunction contemplates the necessary "balance [of] the protection of due process rights with ending groundless, vexatious litigation[,]" Caldwell v. Obama, 6 F. Supp. 3d 31, 50 (D.D.C. 2013).  Namely, in this context, "[d]ue process requires notice and opportunity to be heard[,]" Rodriguez v. Shulman, 844 F. Supp. 2d 1, 15 (D.D.C. 2012), and "the [C]ourt must develop a record for review 'in order to further ensure that the filer's due process rights are not violated[,]" Caldwell, 6 F. Supp. 3d at 50 (quoting Rodriguez, 844 F. Supp. 2d at 15).  Furthermore, "[r]egarding the first step, the requirement of notice and opportunity to be heard can be satisfied without a hearing in court, so long as the affected litigants have an opportunity to contest the injunction in briefing."  Crumpacker v. Ciraolo-Klepper, 288 F. Supp. 3d 201, 204 (D.D.C. 2018).  And, the plaintiff has had ample opportunity to contest the injunction through initial and supplemental briefing.  See Pl.'s Injunction Opp'n; Pl.'s 12(b)(1) Opp'n (including supplemental briefing as to the defendants' injunction motion); Pl.'s Injunction Supp.; Pl.'s 1st Injunction Surreply; Pl.'s 2d Injunction Surreply.  As to the second step, the Court must "create a record for review and make findings 'as to any pattern constituting harassment' or frivolousness, [ ] [by] consider[ing] the number and content of the filings, the similarity of the filings to previous actions, and 'whether the litigant is attempting to harass a particular adversary.'"  Gharb v. Mitsubishi Elec. Corp., 148 F. Supp. 3d 44, 56 (D.D.C. 2015) (quoting In re Powell, 851 F.2d at 431).  The Court has done so, by considering the number and content of the consolidated cases currently before the Court, as well as previous substantively similar actions filed by the plaintiff, and making findings as to the frivolous and harassing nature of the plaintiff's filings.  See infra Section III.A. Accordingly, the Court has afforded the plaintiff the necessary due process safeguards in the context of a motion for a pre-filing injunction and, therefore, an evidentiary hearing is not required.

June 21, 2019) (same).  As noted earlier, in deciding whether to impose a pre-filing injunction, the Court must first ensure that "notice and the opportunity to be heard are provided[,]" Smith, 44 F. Supp. 3d at 46; second, "develop[] a record for review that considers 'both the number and content of the [plaintiff's] filings,'" id. (quoting Caldwell v. Obama, 6 F. Supp. 3d 31, 50 (D.D.C. 2013)); and third, "make substantive findings as to the frivolous or harassing nature of the litigant's actions[,]" Caldwell, 6 F. Supp. 3d at 50.  The Court will analyze these three factors in turn.

As to the first factor, the defendants' motion has provided the plaintiff with "ample notice that he may be enjoined from making future filings in this district[.]"  Smith, 44 F. Supp. 3d at 46; see id. (finding that the defendants' motion to dismiss provided sufficient notice to the plaintiff).  Furthermore, the plaintiff "also has had the opportunity to be heard on the matter of whether a prospective pre-filing injunction is appropriate" in the form of his opposition and supplemental briefing filed in response to the defendants' motion.  Id.; see also Hall, 2019 WL 2569914, at *3 ("Courts have likewise found that a plaintiff's filing of an opposition memorandum evidences notice.").  Accordingly, the plaintiff has been provided with sufficient notice and opportunity to be heard to satisfy the first factor.

Second, the Court will "develop[] a record for review[,]" and as to this requirement finds that "the number and content of [the plaintiff's] prior filings provide sufficient basis for consideration of a pre-filing injunction."  Smith, 44 F. Supp. 3d at 46.  In considering the second factor, the Court "look[s] to both the number and content of the filings[,]" In re Powell, 851 F.2d at 431, including the "total number of cases regarding the same general issue no matter the forum in which they have been filed[,]" Hall, 2019 WL 2569914, at *3; see id. (considering suits filed by the plaintiff in both federal and state court in determining that the "cumulative number

support[ed] granting an injunction"), and "review[s] the close similarities between and among

the instant suit and [the plaintiff's] previous [ ] lawsuits," <u>Caldwell</u>, 6 F. Supp. 3d at 50.  Here,

the plaintiff has filed six lawsuits—the three consolidated cases currently before this Court, in

addition to the three prior cases that were all dismissed, <u>see</u> <u>supra</u> Section I.A—"each with

substantially similar allegations that uniformly assert that the D.C. Bar and the [ODC] have

selectively prosecuted him because of his political ideology."  Defs.' Injunction Mot. at 16.  All

six complaints include essentially identical claims of abuse of process regarding the defendants'

conduct in relation to the plaintiff's disciplinary proceedings, <u>see</u> <u>Porter I</u> Compl. ¶¶ 42–47;

<u>Porter II</u> Compl. ¶¶ 41–46; <u>Kaiser</u> Compl. ¶¶ 50–55; <u>Klayman I</u> Compl. ¶¶ 94–97; <u>Klayman II</u>

Compl. ¶¶ 80–83; <u>Klayman III</u>, No. 2020 CA 000756 B, at 1, although the additional claims in

each vary slightly between the current consolidated cases and the previous lawsuits.   More

importantly, although, the plaintiff's suits all concern the "same general issue[,]" <u>Hall</u>, 2019 WL

2569914, at *3, namely, the plaintiff's allegations that the defendants' disciplinary actions

against him are improper and motivated by politically persecutory motives.  <u>Compare</u> <u>Porter I</u>

Compl. ¶ 13 ("It is apparent that [the d]efendants' attempts to remove [the p]laintiff [ ] from the

practice of law stem from his conservative, pro-Trump public and private advocacy as the

founder of both Judicial Watch and now Freedom Watch, which they abhor."); <u>Porter II</u> Compl.

¶ 12 (same); <u>Kaiser</u> Compl. ¶ 16 (same) <u>with</u> <u>Klayman I</u> Compl. ¶ 1 ("[The d]efendants, acting in

concert and as joint tortfeasors, intentionally violated [the plaintiff]'s statutory, constitutional

and other rights due to [the plaintiff]'s political beliefs, public interest activism, and gender,

pursuant to their own individual biases, prejudices, political views, loyalties, and allegiances.");

<u>Klayman II</u> Compl. ¶ 1 (same); <u>Klayman III</u>, No. 2020 CA 000756 B, at 10 (noting the plaintiff's

"continued conclusory statements that [d]efendant Porter's behavior is unethical, vindictive, and

is the result of a personal vendetta").  And, although the current consolidated cases include
additional factual allegations concerning the defendants' mailing of ex parte letters to notify
other jurisdictions of his disciplinary actions, the basis for the plaintiff's tortious interference
claims added in these cases is substantially similar to the allegations in his previous complaints.
Compare Porter I Compl. ¶ 20 ("[The d]efendants decided to tort[i]ously interfere with [the
plaintiff']'s profession as a conservative public interest attorney by sending out ex parte
letters[.]"); Porter II Compl. ¶ 19 (same); and Kaiser Compl. ¶ 28 (same) with Klayman I Compl.
¶ 76 ("[I]t is clear that [the plaintiff] is being selectively prosecuted by [the d]efendants based on
politics, activism, free speech, and gender."); Klayman II Compl. ¶ 16 (stating that the
defendants "intentionally violate[d] [the plaintiff']'s constitutional and other rights by selectively
prosecuting [him] because of his political activism, free speech, and gender"); and Klayman III,
No. 2020 CA 000756 B, at 10 (noting the plaintiff's "continued conclusory statements that
[d]efendant Porter's behavior is unethical, vindictive, and is the result of a personal vendetta").
Accordingly, the Court finds that the plaintiff has filed six substantially similar lawsuits, all of
which derive from the disciplinary proceedings and related actions regarding the plaintiff.

   Third and finally, the plaintiff's filings are appropriately characterized as "frivolous or
harassing."  Caldwell, 6 F. Supp. 3d at 50.  As to the issue of frivolity, the Court, "look[ing] to
both the number and content of the filings as indicia of frivolousness[,]" In re Powell, 851 F.2d
at 431, concludes that the plaintiff's filing of six essentially identical lawsuits is well within the
range that other members of this court have deemed sufficiently numerous and repetitive to
warrant a pre-filing injunction.  See Gharb v. Mitsubishi Elec. Corp., 148 F. Supp. 3d 44, 56
(D.D.C. 2015) (deeming three "overwhelmingly similar" complaints sufficiently numerous and
repetitive); Harbison v. U.S. Sen. Comm. on Foreign Rels., 839 F. Supp. 2d 99, 111 (D.D.C.

2012) (same); <u>Davis v. United States</u>, 569 F. Supp. 2d 91, 93, 98–99 (D.D.C. 2008) (same, as to

four identical lawsuits).  Regarding the harassing nature of the filings, courts in this district

"examine whether the filings aim to 'harass a particular adversary[,]'" <u>Hall</u>, 2019 WL 2569914,

at *4 (quoting <u>In re Powell</u>, 851 F.2d at 431), by considering "[t]he number and 'tone' of the

filings[,]" <u>id.</u> (quoting <u>Smith</u>, 44 F. Supp. 3d at 47), as well as "the effect of the filings on the

parties and the [C]ourt[,]" <u>Mikkilineni v. Penn Nat'l Mut. Cas. Ins. Co.</u>, 271 F. Supp. 2d 142,

148 (D.D.C. 2003).  Here, "[t]he number and 'tone' of the filings[,]" <u>id.</u>, support the

characterization of the plaintiff's filings as harassing.  The plaintiff has filed six, essentially

identical repetitive lawsuits against the same defendants who are currently before the Court in

this consolidated case,[6] <u>see Davis</u>, 569 F. Supp. 2d at 93 (instituting a pre-filing injunction

against the plaintiff because "repetitive presentation of essentially identical claims wastes limited

judicial resources"), despite having filed three previous suits that arose from essentially the same

allegations that were dismissed as meritless, <u>see Stich v. United States</u>, 773 F. Supp. 469, 470

(D.D.C. 1991) (noting that by filing an identical complaint to one previously dismissed, the

"[p]laintiff has shown an appalling lack of respect for the judicial branch").  Furthermore, as to

"the effect of the filings on the parties and the [C]ourt[,]" <u>Mikkilineni</u>, 271 F. Supp. 2d at 148,

the defendants state that they have been "forced to expend tremendous time and resources to

secure dismissals of [the plaintiff's] vexatious lawsuits[,]" Defs.' Injunction Mot. at 13; <u>see</u>

<u>Mikkilineni</u>, 271 F. Supp. 2d at 149 (finding that "forcing the defendants to spend resources

litigating previously-resolved claims" constitutes harassment), and that the plaintiff's "serial

---

[6] The Court notes that the plaintiff only named Kaiser as a defendant in one of the consolidated cases currently
before the Court.  <u>See supra</u> Section I.B.1.  However, "[a] plaintiff's decision to cycle between different defendants .
. . does not represent a sufficient rebuttal to arguments that the claims are harassing[,]" <u>Hall</u>, 2019 WL 2569914, at
*4, where the plaintiff's "legal theory hasn't changed[,]" <u>Powell v. Davis</u>, No. 18-cv-297, 2018 WL 5621491, at *4
(D.D.C. Oct. 30, 2018).

lawsuits extract a substantial personal toll on the [defendants] and their families[,]" Defs.'
Injunction Mot. at 14; see id. ("On multiple occasions, [the plaintiff]'s process server has
harassed the [defendants] and ignored COVID-19 protocols."); Mikkilineni, 271 F. Supp. 2d at
149 (considering whether the defendants "fe[lt] harassed" based on the allegations in their
motion for a pre-filing injunction).  Additionally, the plaintiff "has a demonstrated record of
filing baseless motions accusing judges, including [another member of] this [c]ourt, of 'bias and
prejudice' when they do not order the relief he seeks."  Defs.' Mot. for Injunction at 7 (citing
motions from Klayman I and Klayman II, as well as other unrelated cases filed by the plaintiff);
see Anderson v. D.C. Pub. Defender Serv., 881 F. Supp. 663, 665 (D.D.C. 1995) (noting, in
imposing a pre-filing injunction, that the plaintiff had repeatedly "s[ought] reassignment of his
cases or recusal of judges").  On at least two occasions, the plaintiff has also engaged in "abusive
language[,]" Smith, 44 F. Supp. 3d at 47 (quoting Smith v. Anderson, No. 09-1018, 2009 WL
4035902, at *4 (D. Colo. Nov. 19, 2009)), and "demonstrated disrespect and contempt for this
Court[,]" Defs.' Injunction Mot. at 15, by calling Judge Moss "clueless" during a hearing in
another identical case, see id., and lodging baseless accusations regarding the undersigned's
diligence in preparing for the June 29, 2022 motions hearing.  These findings warrant
characterization of the plaintiff's filings as being "frivolous [and] harassing" pursuant to the third
factor.  Caldwell, 6 F. Supp. 3d at 50.

   Based upon the Court's findings with respect to the three factors the Court considers
necessary in assessing whether to impose a pre-filing injunction, the Court concludes that it must
grant the defendants' motion for an injunction and enjoin the plaintiff from filing any new
actions against, or serving any additional subpoenas on, the defendants, without "first making

application to and receiving the consent of this Court [or] any other court where [additional] litigation is proposed to be filed."  Defs.' Injunction Mot. at 2.

## B.     The Defendants' Motion to Dismiss

Having concluded that it will grant the defendants' motion for a pre-filing injunction, the Court will next consider the defendants' motion to dismiss.  On November 19, 2021, the defendants filed their joint motion to dismiss, arguing that: (1) "each [d]efendant is entitled to absolute immunity from [the p]laintiff's claims[,]" Defs.' 12(b)(1) Mot. at 7; and (2) "[t]o the extent [that the p]laintiff seeks to enjoin any of [the d]efendants' actions with regard to [the p]laintiff's disciplinary proceedings, . . . the request should be dismissed based on the doctrine of abstention in Younger v. Harris[ ]," id. at 11.[7]   In response, the plaintiff argues that the defendants are not entitled to absolute immunity because: (1) the D.C. Bar has unconstitutionally "'legislat[ed]' absolute immunity for itself[,]" Pl.'s 12(b)(1) Opp'n at 13,  and (2) the defendants were acting outside their scope of their official duties with regard to the conduct the plaintiff alleges, see id. at 13–14.[8]  The plaintiff does not, however, provide a response to the defendants'

---

[7] The defendants also argue that (1) "[the p]laintiff should be precluded from disputing that [the d]efendants have judicial immunity from his claims for damages, or that his claims for unspecified injunctive relief are precluded by Younger abstention[,]" Defs.' 12(b)(1) Mot. at 14; (2) "[b]oth [California and Texas's] choice of law rules necessitate the application of District of Columbia law[,]" id.; and (3) "[e]ven if [the p]laintiff's claims were not barred by [the d]efendants' absolute immunity, they would fail under Rule 12(b)(6) because neither states a claim upon which relief can be granted[,]" id. at 20.  Because the Court ultimately concludes that absolute immunity and the Younger abstention doctrine preclude the Court from exercising subject-matter jurisdiction, the Court need not reach the defendants' other arguments based on either Rule 12(b)(1), see Ruhrgas AG v. Marathon Oil Co., 526 U.S. 574, 585 (1999) ("It is hardly novel for a federal court to choose among threshold grounds for denying audience to a case on the merits."), or Rule 12(b)(6), see Sledge v. United States, 723 F. Supp. 2d 87, 91 (D.D.C. 2010) ("Once a court 'determines that it lacks subject matter jurisdiction, it can proceed no further.'" (quoting Simpkins v. D.C. Gov't, 108 F.3d 366, 371 (D.C. Cir. 1997)); see also Green v. Stuyvesant, 505 F. Supp. 2d 176, 177 n.2 (D.D.C. 2007) (Walton, J.) ("[D]ue to the resolution of the defendants' Rule 12(b)(1) request, the Court does not need to address [ ] alternative grounds for dismissal at this time.").

[8] The plaintiff also argues correctly that "judicial immunity . . . does not apply to claims for injunctive relief[,]" Pl.'s 12(b)(1) Opp'n at 14.  "The Supreme Court has held that 'judicial immunity is not a bar to prospective [injunctive] relief against a judicial officer acting in [his or] her judicial capacity[.]'"  Smith, 44 F. Supp. 3d at 43 (quoting Pulliam v. Allen, 466 U.S. 522, 541–42 (1984)) (first alteration in original).  Although this common-law rule has been abrogated in the § 1983 context, see Klayman v. Blackburne-Rigsby, No. 21-cv-409, 2021 WL 2652335, at

(continued . . .)

argument regarding the applicability of the <u>Younger</u> abstention doctrine.  <u>See generally</u> <u>id.</u>  The

Court will address each of the defendants' arguments—their entitlement to absolute immunity

and the applicability of <u>Younger</u> abstention—in turn.[9]

---

(. . . continued)

*2–3 (D.D.C. June 28, 2021), it still applies to common-law claims, such as those lodged by the plaintiff in this case, <u>see</u> <u>Pulliam</u>, 466 U.S. at 541 ("Congress intended § 1983 to be an independent protection for federal rights and [found] nothing to suggest that Congress intended to expand the common-law doctrine of judicial immunity to insulate state judges completely from federal collateral review.").  However, because the defendants "perform[] 'quasi-judicial functions[,]'" <u>Klayman I</u>, 2019 WL 2396538, at *11 (citation omitted), they "are entitled to quasi-judicial immunity[,]" <u>Rodriguez</u>, 844 F. Supp. 2d at 12; <u>see</u> <u>id.</u> ("[Quasi-judicial] immunity has traditionally been extended to members of boards of law examiners or of boards that have the power to revoke attorneys' licenses.").  Therefore, they are "entitled to absolute judicial immunity against <u>damages</u> claims when [acting] within [their] jurisdiction[,]" <u>Rodriguez v. Editor in Chief, Legal Times</u>, No. 07-cv-5234, 2007 WL 5239004, at *1 (D.D.C. Dec. 19, 2007) (emphasis added), but not against claims for injunctive relief, <u>see</u> <u>Smith</u>, 44 F. Supp. 3d at 43.  Accordingly, the Court will analyze the defendants' argument that they are properly subject to immunity regarding the plaintiff's claims for damages only, <u>see</u> <u>infra</u> Section III.B.1, and then analyze whether the plaintiff's claims for injunctive relief are precluded under the <u>Younger</u> abstention doctrine, <u>see</u> <u>infra</u> Section III.B.2.

[9] The Court will briefly address in this footnote the plaintiff's choice-of-law arguments, given that which state law applies affects the Court's analysis regarding absolute immunity, <u>infra</u> Section III.B.1.

Pursuant to California's "governmental interests" choice-of-law analysis,

> (1) the court examines the substantive laws of each jurisdiction to determine whether the laws differ as applied to the relevant transaction, (2) if the laws do differ, the court must determine whether a true conflict exists in that each of the relevant jurisdictions has an interest in having its law applied, and (3) if more than one jurisdiction has a legitimate interest . . . the court [must] identify and apply the law of the [jurisdiction] whose interest would be more impaired if its law were not applied. Only if both [jurisdictions] have a legitimate but conflicting interest in applying its own law will the court be confronted with a "true conflict" case.

<u>Love v. Associated Newspapers, Ltd.</u>, 611 F.3d 601, 610 (9th Cir. 2010).  As to the first consideration, the defendant concedes that there is a conflict between California and District of Columbia law regarding judicial immunity, in that California does not extend judicial immunity to bar officials "with respect to claims asserted against them in their individual capacities for acts committed in their investigative functions[,]" <u>Khanna v. State Bar of Cal.</u>, 505 F. Supp. 2d 633, 647 (N.D. Cal. 2007).  However, the defendants argue that "there is no true conflict[,]" Defs.' 12(b)(1) Mot. at 15, because "[the p]laintiff's case concerns judicial, not prosecutorial, immunity, and the crux of [the p]laintiff's complaints is not that he has been subject to an investigation—it is that he has been unfairly charged with disciplinary violations[,]" <u>id.</u> at 15–16.  The plaintiff argues that there is a conflict because "what [the d]efendants were doing was clearly not part of their jobs actually prosecuting complaints against [the plaintiff]." Pl.'s 12(b)(1) Opp'n at 11.  However, the Court concludes that the conduct being challenged—namely, the defendants' mailing notifications of the plaintiff's disciplinary determinations to other jurisdictions—was well within the scope of the defendants' official duties.  <u>See</u> <u>infra</u> Section III.B.1.  The defendants' conduct is also not properly characterized as "investigative[,]" <u>Khanna</u>, 505 F. Supp. 2d at 647, but instead is more accurately characterized as "quasi-judicial[,]" <u>see</u> <u>infra</u> Section III.B.1, because the mailing of notification letters <u>after</u> a disciplinary disposition was reached involves no investigatory function on the part of the defendants, <u>see</u> <u>Porter I</u> Compl. ¶ 20 (describing the notification letters as being mailed after the issuance of the plaintiff's suspension order).  Accordingly, because California affords judicial immunity to quasi-judicial actors that do not fall within their investigative functions, <u>see</u> <u>Hirsh v. Justices of Supreme Ct. of State of Cal.</u>, 67 F.3d 708, 715 (9th Cir. 1995)

(continued . . .)

1.   **Whether the Defendants are Entitled to Absolute Immunity**

The defendants first argue that, "[a]s members of the [ODC] and [the Board], [they are]

entitled to absolute immunity from [the p]laintiff's [damages] claims."  Defs.' 12(b)(1) Mot. at 7.

In support of this argument, the defendants cite the opinions in <u>Klayman I</u>, <u>Klayman II</u>, and

---

(. . . continued)
holding that California State Bar judges and prosecutors are entitled to "quasi-judicial immunity from monetary damages" to the extent that "they perform functions similar to judges and prosecutors in a setting like that of a court"), there is no conflict of law "as applied to the relevant transaction," <u>Love</u>, 611 F.3d at 610, in this case and, therefore, District of Columbia law applies.

Pursuant to Texas's four-pronged "most significant relationship" choice-of-law test, which it applies to tort claims, the Court must weigh the following factors: "(a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicil[e], residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered." <u>Gutierrez v. Collins</u>, 583 S.W.2d 312, 319 (Tex. 1979) (quoting Restatement (Second) of Conflict of Laws § 145(2)).

As to the first factor, the parties agree that the alleged injury occurred in Texas.  <u>See</u> Defs.' 12(b)(1) Mot. at 19; Pl.'s 12(b)(1) Opp'n at 9.  Therefore, this factor weighs in favor of applying Texas law.

As to the second factor, the defendants argue that "[the d]efendants' alleged actions causing [the p]laintiff's claimed injury—transmission of the notice of [the p]laintiff's suspension—occurred in the District of Columbia."  Defs.' 12(b)(1) Mot. at 19.  The plaintiff responds that the conduct causing the injury occurred in Texas because "the secret <u>ex parte</u> letters that were sent by [the d]efendants were not tortious or injurious to [the defendant] until they were received and read by Texas courts."  Pl.'s 12(b)(1) Opp'n at 9.  However, the plaintiff's position is an unreasonable interpretation of this factor.  As the defendants aptly state, the plaintiff's argument "conflates this factor—where the conduct <u>causing</u> the alleged injury occurred—with the first factor[,]" because "[w]hile [the p]laintiff alleges he was injured in Texas, he cannot dispute that [the d]efendants' alleged actions—mailing purportedly tortious letters to the federal judicial districts in Texas—took place in the District of Columbia."  Defs.' 12(b)(1) Reply at 8 (emphasis in original).  Accordingly, this factor weighs in favor of applying District of Columbia law.

As to the third factor, although the defendant attempts to argue against applying District of Columbia law by disclaiming District of Columbia residency, <u>see</u> Pl.'s 12(b)(1) Opp'n at 9–10, none of the parties in this case have any of the qualifying connections to Texas described in the choice-of-law standard, <u>see</u> Porter I Compl. ¶ 3 (stating that the plaintiff is a "citizen of Florida").  Furthermore, the plaintiff had a business address and did business in the District of Columbia when these consolidated cases were initiated, <u>see</u> Kaiser Compl. at 18 (reflecting the plaintiff's District of Columbia business address in a signature block), and the defendants have business addresses in the District of Columbia, <u>see</u> Defs.' 12(b)(1) Mot. at 16.  Therefore, this factor weighs in favor of applying D.C. law.

Finally, as to the fourth factor, although the plaintiff states that "there is no relationship between the parties[,]" Pl.'s 12(b)(1) Opp'n at 10, there clearly is a relationship, even if it only constitutes the relationship between District of Columbia Bar official and member of the District of Columbia Bar.  Furthermore, as the defendants state, "to the extent that there exists a relationship between [the p]laintiff and [the d]efendants, it is centered on the proceeding concerning [the p]laintiff's suspension in the District of Columbia."  Defs.' 12(b)(1) Mot. at 20.  Therefore, this factor weighs in favor of applying D.C. law.  Accordingly, because three of the four Texas choice-of-law factors weigh in favor of applying District of Columbia law, District of Columbia law controls.  Accordingly, because both California's and Texas's choice of law analyses favor applying District of Columbia law, the Court will apply District of Columbia law in assessing the defendants' assertion that they are entitled to absolute immunity.

<u>Klayman III</u>, which found that "D.C. Bar Rule XI, § 19(a) expressly confers absolute immunity from suit on the Disciplinary Counsel and members of that office for actions taken in the course of their official duties."  <u>Id.</u> at 8; <u>see</u> <u>Klayman I</u>, 2019 WL 2396538, at *11 n.3; <u>Klayman III</u>, No. 2020 CA 000756 B.  In response, the plaintiff contends that the defendants are not entitled to absolute immunity because (1) the D.C. Bar has unconstitutionally "'legislat[ed]' absolute immunity for itself[,]" Pl.'s 12(b)(1) Opp'n at 13; and (2) the conduct at issue is "clearly outside the scope of any of [the d]efendants' duties as [ ] ODC prosecutors[,]" <u>id.</u> at 14.

> The relevant D.C. Bar Rule states:
>
> Complaints submitted to the Board or [the ODC] shall be absolutely privileged, and no claim or action predicated thereon may be instituted or maintained. Members of the Board, its employees, members of Hearing Committees, Disciplinary Counsel, and all assistants and employees of Disciplinary Counsel, all persons engaged in counseling, evaluating or monitoring other attorneys pursuant to a Board or Court order or a diversion agreement, and all assistants or employees of persons engaged in such counseling, evaluating or monitoring shall be immune from disciplinary complaint under this rule and from civil suit for any conduct in the course of their official duties.

D.C. Bar Rule XI, § 19(a).  Furthermore, members of the ODC and the Board "perform[] 'quasi-judicial functions[,]'" <u>Klayman I</u>, 2019 WL 2396538, at *11 (citation omitted), and "the D.C. Circuit [has] held . . . that D.C. Bar disciplinary proceedings are judicial proceedings and that officials who participate in those proceedings are engaged in judicial acts that are entitled to absolute immunity[,]" <u>id.</u> (citing <u>Simons v. Bellinger</u>, 643 F.2d 774, 779–82 (D.C. Cir. 1980)). <u>See</u> <u>Rodriguez v. Shulman</u>, 844 F. Supp. 2d 1, 12 (D.D.C. 2012) (finding that judicial immunity applied to "the [d]efendants who served on the Virginia State Bar Disciplinary Board and the D.C. Committee on Admissions").  Thus, D.C. Bar Rule XI and D.C. Circuit precedent confer absolute immunity on the defendants as "officials who act in a quasi-judicial capacity[,]"

Rodriguez, 844 F. Supp. 2d at 12.  See Simons, 643 F.2d at 778–79 (applying absolute immunity to Bar Committee members acting in their official capacities).

As to the plaintiff's first argument that "the D.C. Court of Appeals . . . [has] illegally and unconstitutionally usurped the role of the D.C. City Council[,]" Pl.'s 12(b)(1) Opp'n at 13, by "promulgat[ing] the Bar Rules[, including the granting of absolute immunity,] itself[,]" id. at 12, it is well-established that "the D.C. Court of Appeals has authority over the D.C. Bar[,]" Ford, 163 F. Supp. 2d at 65 (citing In re Williams, 513 A.2d 793, 794 (D.C. Super. Ct. 1986) ("[T]he D.C. Court of Appeals created the Board . . . in the exercise of [its] inherent power over members of the legal profession.")), and therefore, may promulgate rules governing legal professionals practicing in the District of Columbia, see Nwachukwu v. Rooney, 362 F. Supp. 2d 183, 191 (D.D.C. 2005).  Indeed, the D.C. Code states that "[t]he [D.C.] Court of Appeals [ ] is authorized 'to make such rules as it deems proper respecting the examination, qualification, and admission of persons to membership in its bar and their censure, suspension, and expulsion.'" Id. (quoting D.C. Code § 11-2501(a)).  Thus, the plaintiff's contention that the D.C. Court of Appeals has somehow "usurped the role of the D.C. City Council" in "legislating absolute immunity for itself[,]" Pl.'s 12(b)(1) Opp'n at 13, does not comport with the authority expressly vested to the Court by the Council.[10]

---

[10] Furthermore, to the extent that the plaintiff attempts to lodge a constitutional argument regarding the authority of the D.C. Court of Appeals, the Court must refrain from considering such a claim under the doctrine of abstention, which prohibits "federal-court interference with pending state judicial proceedings absent extraordinary circumstances[,]" Middlesex Cty. Ethics Comm., 457 U.S. at 431 (citing Younger, 401 U.S. 37 (1971)).  See infra Section III.B.2.  Bar disciplinary proceedings "are of a character to warrant federal-court deference" pursuant to Younger, id. at 424 (internal quotation marks omitted), and consequently, federal courts must "abstain[] from hearing [a] claim against [a] D.C. Bar rule itself under Younger v. Harris," Richardson v. D.C. Ct. of Appeals, 83 F.3d 1513, 1514 (D.C. Cir. 1996) (affirming the district court's decision to abstain from considering the plaintiff's constitutional claims regarding a D.C. Bar Rule).  Thus, the Court may not address any constitutional claims put forth by the plaintiff, pertaining to the D.C. Bar Rules governing this action.

The plaintiff's second argument, that the defendants are not entitled to absolute immunity because their actions were "outside [of] the scope of any of [their] duties as . . . ODC prosecutors[,]" Pl.'s 12(b)(1) Opp'n at 14, is also unavailing.  The plaintiff argues that

> the sending of ex parte letters to other [c]ourts in other jurisdictions, where [the d]efendants have no jurisdiction, for the sole obvious purpose of tort[i]ously interfering with [the plaintiff's] legal practice in Texas courts . . . is clearly outside the scope of any of [the d]efendants' duties as . . . ODC prosecutors.

Id. (emphasis omitted).  However, as the defendants correctly argue, see Defs.' Submission at 5, the D.C. Bar Rules permit disciplinary counsel to "disclose information pertaining to proceedings resulting in informal admonitions to any court, [or] to any other judicial tribunal or disciplinary agency," D.C. Bar Rule XI, § 17(c).  Accordingly, if the D.C. Bar Rules explicitly permit the disclosure of informal admonitions, then it stands to reason that the ODC would be permitted to disclose "the fact of [the p]laintiff's suspension—a more serious sanction[,]" Defs.' Submission at 5.  Moreover, as the defendants also correctly argue, in sending these letters, the defendants were providing notice as "contemplated by the [American Bar Association's (']ABA[')] Model Rules for Lawyer Disciplinary Enforcement[,] as well as the rules of various jurisdictions." Defs.' 12(b)(1) Reply at 4 (citing ABA Model Rule for Lawyer Disciplinary Enforcement ("ABA Mode Rule"), Rule 22 Commentary (stating that, "[i]f a lawyer suspended or disbarred in one jurisdiction is also admitted in another jurisdiction[,] . . . [, d]isciplinary counsel in the forum jurisdiction should be notified by disciplinary counsel of the jurisdiction where the original discipline or disability inactive status was imposed"); D.C. Bar Rule XI § 11(b) ("It shall be the duty of Disciplinary Counsel to obtain copies of all orders of discipline from other disciplining courts.")).  Although the plaintiff argues that the ABA Model Rule is a "non-binding model rule which has no applicability to the District of Columbia Rules of Professional Conduct," Pl.'s 12(b)(1) Opp'n at 14 (emphasis omitted), the fact that the

defendants followed an ABA model rule, as opposed to an explicit D.C. Bar Rule, in providing notice to other jurisdictions regarding the plaintiff's Bar discipline does not require the conclusion that they were acting outside of the scope of their duties as ODC prosecutors.  Rather, providing notice to other jurisdictions regarding relevant disciplinary action is the type of activity that is "plainly within the general matters . . . committed to [the defendants'] discretion[,]" Klayman II, 830 F. App'x at 662 (citation omitted).

Accordingly, based upon D.C. Bar Rule XI, § 19(a), and the defendants' status as quasi-judicial officers, the Court concludes that the defendants are entitled to absolute immunity from the plaintiff's damages claims.

## 2.  Whether Younger v. Harris Abstention Applies

Having concluded that the defendants are entitled to absolute immunity from plaintiff's damages claims, see supra Section III.B.1, the Court will next consider whether the Court must abstain from considering the plaintiff's claims for injunctive relief.  The defendants argue that, "[t]o the extent [that the p]laintiff seeks to enjoin any of [the d]efendants' actions with regard to [the p]laintiff's disciplinary proceedings, . . . the request should be dismissed based on [the] doctrine of abstention recognized in Younger[.]"  Defs.' 12(b)(1) Mot. at 11.  The plaintiff does not appear to respond to this argument.  See generally Pl.'s 12(b)(1) Opp'n; Pl.'s 12(b)(1) Reply.

In Younger, the Supreme Court held that a federal court may not enforce a state criminal statute when enforcement proceedings are pending in state court.  See 401 U.S. at 54.  This doctrine was later extended to include state civil proceedings where the proceedings "constitute an ongoing state judicial proceeding; . . . implicate important state interests; and . . . [provide] adequate opportunity . . . to raise constitutional challenges."  Middlesex Cty. Ethics Comm., 457 U.S. at 432.  Furthermore, "disciplinary proceedings, beginning with the filings of a complaint

with the local [e]thics [c]ommittee, [are] judicial in nature.  As such, the proceedings are of a character to warrant federal-court deference."  Id. at 424 (internal quotation marks omitted). Therefore, when presented with a claim involving state bar disciplinary proceedings, "so long as there is no showing of bad faith, harassment, or some other extraordinary circumstance that would make abstention inappropriate, the federal courts should abstain."  Id. at 435.

The plaintiff currently has at least four disciplinary proceedings pending in the District of Columbia.  See Defs.' Submission at 3–5 (listing and describing each of the four pending disciplinary proceedings against the plaintiff).  Furthermore, the plaintiff's claims of tortious interference and abuse of process in the current consolidated cases stem from what the plaintiff alleges are the defendants' political persecution of him in both the closed and pending disciplinary actions.  Specifically, the plaintiff argues that "[a]s part of their scheme to severely and irreparably harm and damage [him] by attempting to remove him from the practice of law[,]" Porter I Compl. ¶ 12; Porter II Compl. ¶ 11; Kaiser Compl. ¶ 15, which he claims is motivated by the defendants' "abhor[rence,]" Porter I Compl. ¶ 13; Porter II Compl. ¶ 12; Kaiser Compl. ¶ 16, of his "conservative, pro-Trump public and private advocacy[,]" Porter I Compl. ¶ 13; Porter II Compl. ¶ 12; Kaiser Compl. ¶ 16, the defendants have "harass[ed] and financially harmed [him,]" Porter I Compl. ¶ 12; Porter II Compl. ¶ 11; Kaiser Compl. ¶ 15.  The defendants' course of action, the plaintiff contends, also includes the mailing of ex parte letters of notification to other jurisdictions regarding the plaintiff's disciplinary decisions, see Porter I Compl. ¶ 35; Porter II Compl. ¶ 21; Kaiser Compl. ¶ 35, which he argues has "irreparably harmed [him] and more importantly his clients, including himself in a pro se capacity[,]" Porter I Compl. ¶ 36; see Porter II Compl. ¶ 35; Kaiser Compl. ¶ 44.  Thus, the cases currently pending before the Court concern allegations that stem from the disciplinary proceedings against the plaintiff, which

require abstention by this Court pursuant to Younger.  See Middlesex Cty. Ethics Comm., 457

U.S. at 424 ("[D]isciplinary proceedings . . . are of a character to warrant federal-court

deference." (internal quotation marks omitted)).

Furthermore, the plaintiff has not made a sufficient showing of "bad faith, harassment, or

some other extraordinary circumstance that would make abstention inappropriate[.]"  Id. at 435.

In affirming Judge's Moss's dismissal of the plaintiff's claims in Klayman I and Klayman II, the

D.C. Circuit found that "[t]he facts [that the plaintiff] alleged—that he and the ODC defendants

had diametrically opposed political affiliations, that he had several heated exchanges with some

of the defendants . . . —do not amount to 'extraordinary circumstances' justifying federal

intervention." Klayman, 830 F. App'x at 663 (citation omitted).  This, the D.C. Circuit reasoned,

is because the plaintiff "ha[d] made no 'substantial,' nonconclusory allegations [of bad faith.]"

Id. (citation omitted).  Here, although the facts underpinning the plaintiff's claims in the current

consolidated cases differ slightly from those in Klayman I and Klayman II—namely, the

allegations concerning the defendants' notification of other jurisdictions regarding the plaintiff's

disciplinary actions—the plaintiff's underlying allegations are substantively the same,

considering that the plaintiff "present[s] only conclusory assertions[—]unsupported by facts[—

]of political motivation, that are comparable to the assertions [that] Judge Moss and the D.C.

Circuit rejected as insufficient[.]"  Defs.' 12(b)(1) Mot. at 12 (comparing the complaints in

Klayman I and Klayman II with the plaintiff's Complaint in Civil Action No. 20-3109).  As to

whether the defendants acted in bad faith or if extraordinary circumstances exist, making

abstention inappropriate, the only allegations that could arguably qualify from what is alleged in

the plaintiff's complaints,[11] are nothing other than bald assertions concerning the defendants'

purported political motivations—allegations that have already been deemed insufficient in a

basically identical context by the D.C. Circuit.  Compare, e.g., Porter I Compl. ¶ 10 (stating that

the defendants "have engaged in the equivalent of a partisan[,] politically based agenda and in

effect a 'jihad' to have [the plaintiff] removed from the practice of law"); id. ¶ 13 ("It is apparent

that [the d]efendants' attempts to remove [the plaintiff] from the practice of law stem from his

conservative, pro-Trump public and private advocacy[.]"); and id. ¶ 14 ("It is clear that [the]

ODC has been systematically targeting conservatives and Republicans, including [the

plaintiff].") with Klayman I, 2019 WL 2396538, at *4 ("[The plaintiff] avers, for instance, . . .

'that [the d]efendants' goal is to prevent [the plaintiff] from being able to practice law because

they do not agree with his political and other beliefs' . . . [and] 'apparently see him as anti-

woman[.]'") (quoting Am. Compl. ¶¶ 43–44, Civil Action No. 18-cv-1579) and Klayman II,

2019 WL 2396539, at *3 (rejecting "[the p]laintiff's allegations of bad faith" because they

"ultimately turn[ed] on the notion that a prosecutor or someone performing a similar function,

who has made a political contribution, is invariably a partisan actor incapable of putting his or

her personal views aside when charged with the fair administration of justice").

Thus, the Court agrees with the defendants, see Defs.' 12(b)(1) Mot. at 12, that the

allegations asserted in this case are "far from sufficient to permit a 'plausible' inference of the

type of ubiquitous tribalism that [any potential] claim of bad faith [would] posit[,]"  Klayman II,

2019 WL 2396539, at *3 (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)), and that they

"do not amount to 'extraordinary circumstances' justifying federal intervention[,]" Klayman, 830

F. App'x at 663.  Therefore, consistent with with the D.C. Circuit's prior ruling, see id., the

---

[11] The Court notes again that the plaintiff has not proffered any arguments regarding the appropriateness of abstention in his responsive briefing.  See generally Pl.'s 12(b)(1) Opp'n; Pl.'s 12(b)(1) Reply.

plaintiff has made no showing of bad faith, harassment, or other extraordinary circumstances

sufficient to make abstention inappropriate in this case.  Accordingly, the Court concludes that,

pursuant to Younger, it must abstain from adjudicating the plaintiff's claims for injunctive

relief.[12]  Middlesex Cty. Ethics Comm., 457 U.S. at 424 ("[D]isciplinary proceedings, beginning

with the filings of a complaint with the local [e]thics [c]ommittee, . . . are of a character to

warrant federal-court deference.") (internal quotation marks omitted).  Because the defendants

are entitled to absolute immunity regarding the plaintiff's claims for damages and the Court must

abstain from ruling on the plaintiff's claims for injunctive relief in this case, the Court must grant

the defendants' motion to dismiss.

## C.       The Remaining Pending Motions

Having resolved the defendants' motion for an injunction, see supra Section III.A, and

their motion to dismiss, see supra Section III.B, the Court now turns to the three additional

motions requiring resolution by the Court: (1) the defendants' motion for interim relief, (2) the

plaintiff's cross-motion for sanctions, and (3) the defendants' motion to strike.

First, in their motion for interim relief, the defendants request that the Court "grant

interim injunctive relief while the Court considers [the d]efendants' pending [motion for

injunction] in light of [the p]laintiff's filing."  Defs.' Interim Relief Mot. at 1.  The injunctive

relief sought by the defendants in their motion for interim relief was substantively identical to the

pre-filing injunction requested in their motion for an injunction.  Compare id. at 1–2 with Defs.'

Injunction Mot. at 1.  Therefore, because the Court has concluded that it will grant the

---

[12] The plaintiff represented during the June 29, 2022 motions hearing, and alleged in his Complaint, see Porter I Compl. ¶ 23, that he has requested, and been denied by the defendants, copies of the letters sent by the defendants to other jurisdictions.  However, as the Court stated during the hearing, this Court does not have the authority to order the defendants to produce these letters.  Rather, it is "the D.C. Court of Appeals [that] has authority over the D.C. Bar."  Ford, 163 F. Supp. 2d at 65.  Therefore, in light of this Court's ruling regarding abstention, the plaintiff must seek the relief he requests—namely, production of the letters at issue in this case—from the D.C. Court of Appeals.

defendants' motion for the injunction and therefore acted on the pending motion referenced in their motion for interim relief, as well as grant identical injunctive relief, the defendants' motion for interim relief is now moot.  See J.B. Hunt Transp., Inc. v. BNSF Railway Co., No. 18-mc-16 (ABJ/RMM), 2021 WL 396426, at *3 (D.D.C. 2021) (denying as moot motions when "the exact same relief" had already been conferred).

Second, in his cross-motion for sanctions pursuant to 28 U.S.C. § 1927, the plaintiff argues that the defendants' motion for interim relief is "patently frivolous" and "the definition of a vexatious pleading, meant simply to try to drive up the costs for [the plaintiff], furthering [the defendants'] goal of bankrupting him simply by taking up all of his limited time and resources." Pl.'s Interim Relief Opp'n at 28.  A court may impose sanctions pursuant to 28 U.S.C. § 1927 against an attorney who "so multiplies the proceedings in any case unreasonably and vexatiously." 28 U.S.C. § 1927.  "The purpose of [§] 1927 is to allow the Court 'to assess attorney's fees against an attorney who frustrates the progress of judicial proceedings[,]'" Atkins v. Fischer, 232 F.R.D. 116, 127 (D.D.C. 2005) (quoting United States v. Wallace, 964 F.2d 1214, 1218 (D.C. Cir. 1992)), but "[b]efore imposing sanctions on an attorney, the court must evaluate whether the attorney's conduct was 'at least reckless[,]'" id. (quoting Wallace, 964 F.2d at 1217) (emphasis in original).  Given this standard of "at least [a showing of] reckless[ness,]" id. (quoting Wallace, 964 F.2d at 1217), the plaintiff has not met his burden to show the necessary conduct on the part of the defendants to merit the imposition of sanctions.  Furthermore, because the Court has found that the defendants are entitled to an injunction, see supra Section III.A, which is the identical relief requested by the defendants in their motion for interim relief, the Court concludes that the defendants have not "frustrate[d] the progress of judicial proceedings[,]" Wallace, 964 F.2d at 1218, by seeking that relief.  Accordingly, the Court cannot

deem the defendants' motion for interim relief frivolous or deserving of sanctions, and will thus deny the plaintiff's cross-motion for sanctions.

Finally, in their motion to strike, the defendants request that the Court strike (1) the plaintiff's surreply regarding the defendants' motion for interim relief, and (2) his subsequent addition to his surreply, see generally Defs.' Interim Relief Reply; Pl.'s 1st Injunction Surreply; Pl.'s 2d Injunction Surreply, arguing that "[n]o sur-reply is permitted under the Local Rules of this Court or the scheduling order in this case[,]" Defs.' Strike Mot. at 1.  However, in light of the fact that the Court has denied as moot the defendants' motion for interim relief—the motion underlying the briefing at issue—the Court will also deny as moot the defendants' motion to strike.  See J.B. Hunt Transp., Inc., 2021 WL 396426, at *3 (denying as moot motions when "the exact same relief" had already been conferred).

## IV.    CONCLUSION

For the foregoing reasons, the Court concludes that it must (1) grant the defendants' motion for injunction, (2) grant the defendants' motion to dismiss, (3) deny as moot the defendants' motion for interim relief, (4) deny the plaintiff's cross-motion for sanctions, and (5) deny as moot the defendants' motion to strike.

**SO ORDERED** this 29th day of August, 2022.[13]

REGGIE B. WALTON
United States District Judge

---

[13] The Court will contemporaneously issue an Order consistent with this Memorandum Opinion.